EXHIBIT 1

**Payment Service Interruption, 08/22/2020**
Online payment processing will be unavailable on Saturday, August 22, 2020, from 6-10 p.m. ET due to scheduled maintenance of the U.S. Treasury's payment processing system.



## Party Search Results

**Search Criteria:** Party Search; Jurisdiction Type: [Civil]; Last Name: [strojnik]; First Name: [peter]; Party Role: [PLA]
**Result Count:** 174 (4 pages)
**Current Page:** 1

| Party Name | Case Number | Case Title | Court | NOS | Date Filed | Date Closed |
|---|---|---|---|---|---|---|
| Strojnik, Peter (pla) | 2:2008cv00344 | Strojnik v. Edalat, et al | Arizona District Court | 190 | 02/22/2008 | 03/20/2009 |
| Strojnik, Peter (pla) | 2:2008cv01116 | Peter Strojnik, P.C., et al. v. Signalife, Inc., et al. | Arizona District Court | 890 | 06/16/2008 | 12/22/2009 |
| Strojnik, Peter (pla) | 2:2008cv01276 | Strojnik v. Costar Realty Information, Inc. et al | Arizona District Court | 890 | 07/10/2008 | 12/23/2008 |
| Strojnik, Peter (pla) | 2:2008cv01355 | Strojnik v. Vertrue Incorporated | Arizona District Court | 890 | 07/23/2008 | 08/01/2008 |
| Strojnik, Peter (pla) | 2:2009cv00128 | Peter Strojnik, P.C., et al v. Heart Tronics, Inc., et al | Arizona District Court | 360 | 01/21/2009 | 05/27/2009 |
| Strojnik, Peter (pla) | 2:2009cv00143 | Strojnik v. STATS ChipPAC, Inc. et al | Arizona District Court | 440 | 01/23/2009 | 04/02/2009 |
| Strojnik, Peter (pla) | 2:2013cv02032 | Strojnik v. Pereira et al | Arizona District Court | 320 | 10/07/2013 | 11/22/2013 |
| Strojnik, Peter (pla) | 2:2019cv02704 | Strojnik v. State Bar of Arizona | Arizona District Court | 440 | 04/29/2019 | 03/17/2020 |
| Strojnik, Peter (pla) | 2:2020cv00343 | Strojnik v. New Crescent Investments LLC | Arizona District Court | 446 | 02/14/2020 | |
| Strojnik, Peter (pla) | 2:2020cv01434 | Strojnik v. Xenia Hotels and Resorts Incorporated et al | Arizona District Court | 446 | 07/21/2020 | |
| Strojnik, Peter (pla) | 3:2020cv08194 | Strojnik v. Ogle et al | Arizona District Court | 446 | 07/30/2020 | |
| Strojnik, Peter (pla) | 4:2020cv00331 | Strojnik v. Choice Hotels International Incorporated et al | Arizona District Court | 446 | 08/03/2020 | |

PACER Case Locator Search Results

| Party Name | Case Number | Case Title | Court | NOS | Date Filed | Date Closed |
|---|---|---|---|---|---|---|
| Strojnik, Peter (pla) | 2:2020cv01532 | Strojnik v. Driftwood Hospitality Management LLC et al | Arizona District Court | 446 | 08/03/2020 | |
| Strojnik, Peter (pla) | 2:2020cv01566 | Strojnik v. Patel et al | Arizona District Court | 446 | 08/06/2020 | |
| Strojnik, Peter (pla) | 2:2009cv04096 | Peter Strojnik, P.C., et al v. Heart Tronics, Inc., et al | California Central District Court | 360 | 06/09/2009 | 01/26/2010 |
| Strojnik, Peter (pla) | 2:2018cv10237 | Peter Strojnik v. Marriott International, Inc. | California Central District Court | 446 | 12/10/2018 | 03/18/2019 |
| Strojnik, Peter (pla) | 2:2018cv10493 | Peter Strojnik Sr. v. Best Western Hotels and Resorts | California Central District Court | 446 | 12/18/2018 | 04/03/2019 |
| Strojnik, Peter (pla) | 2:2018cv10494 | Peter Strojnik Sr. v. Zislis Boutique Hotels, LLC | California Central District Court | 446 | 12/18/2018 | 02/06/2019 |
| Strojnik, Peter (pla) | 2:2018cv10495 | Peter Strojnik Sr. v. Second Street Corporation | California Central District Court | 446 | 12/18/2018 | 01/02/2019 |
| Strojnik, Peter (pla) | 2:2019cv00066 | Peter Strojnik Sr. v. Singpoli Group, LLC | California Central District Court | 446 | 01/03/2019 | 02/14/2019 |
| Strojnik, Peter (pla) | 2:2019cv01148 | Peter Strojnik Sr. v. Hyatt Hotels Corp. | California Central District Court | 446 | 02/14/2019 | 04/29/2019 |
| Strojnik, Peter (pla) | 2:2019cv01199 | Peter Strojnik, Sr. v. Burton Way Hotels LLC | California Central District Court | 446 | 02/15/2019 | 11/02/2019 |
| Strojnik, Peter (pla) | 2:2019cv01146 | Peter Strojnik, Sr. v. Georgian Hotel, Inc. | California Central District Court | 446 | 02/14/2019 | 06/25/2019 |
| Strojnik, Peter (pla) | 2:2019cv01174 | Peter Strojnik v. Dole Food Company, Inc. | California Central District Court | 446 | 02/15/2019 | 08/02/2019 |
| Strojnik, Peter (pla) | 2:2019cv02078 | Peter Strojnik v. Urban Commons Cordova, LLC | California Central District Court | 446 | 03/20/2019 | 01/15/2020 |
| Strojnik, Peter (pla) | 2:2019cv02067 | Peter Strojnik Sr v. Pasadena Robles Acquisition, LLC | California Central District Court | 446 | 03/20/2019 | 08/14/2019 |
| Strojnik, Peter (pla) | 8:2019cv00930 | Peter Strojnik v. Ayres-Orange, L.P. | California Central District Court | 446 | 05/16/2019 | 09/24/2019 |
| Strojnik, Peter (pla) | 8:2019cv00946 | Peter Strojnik Sr. v. Orangewood LLC | California Central District Court | 446 | 05/17/2019 | 01/22/2020 |

| Party Name | Case Number | Case Title | Court | NOS | Date Filed | Date Closed |
|---|---|---|---|---|---|---|
| Strojnik, Peter (pla) | 2:2019cv02533 | Peter Strojnik v. Aung Solvang LLC | California Central District Court | 446 | 04/03/2019 | 08/14/2019 |
| Strojnik, Peter (pla) | 2:2019cv02743 | Peter Strojnik v. Pacifica Hotel Company, Inc. | California Central District Court | 446 | 04/10/2019 | 01/31/2020 |
| Strojnik, Peter (pla) | 2:2019cv02991 | Peter Strojnik v. Four Sisters Inns, Inc | California Central District Court | 446 | 04/18/2019 | 12/09/2019 |
| Strojnik, Peter (pla) | 8:2019cv00944 | Peter Strojnik v. Landmark Marriott Suites LLC | California Central District Court | 446 | 05/17/2019 | 12/18/2019 |
| Strojnik, Peter (pla) | 2:2019cv04614 | Peter Strojnik, Sr. v. Bent Olsen et al | California Central District Court | 446 | 05/28/2019 | 07/29/2019 |
| Strojnik, Peter (pla) | 2:2019cv04615 | Peter Strojnik Sr. v. King Frederick Motel, LLC | California Central District Court | 446 | 05/28/2019 | 08/05/2019 |
| Strojnik, Peter (pla) | 8:2019cv01045 | Peter Strojnik Sr. v. Khanna Enterprises, LTD | California Central District Court | 446 | 05/30/2019 | 08/09/2019 |
| Strojnik, Peter (pla) | 8:2019cv01560 | Peter Strojnik, Sr. v. SCG America Construction Inc. | California Central District Court | 446 | 08/13/2019 | 08/05/2020 |
| Strojnik, Peter (pla) | 8:2020cv00021 | Peter Strojnik Sr. v. Salone Development Corporation | California Central District Court | 446 | 01/06/2020 | 06/08/2020 |
| Strojnik, Peter (pla) | 8:2020cv00062 | Peter Strojnik Sr. v. Interstate Hotels and Resorts Inc. | California Central District Court | 446 | 01/13/2020 | 03/18/2020 |
| Strojnik, Peter (pla) | 8:2020cv00063 | Peter Strojnik Sr. v. Interstate Hotels and Resorts, Inc. | California Central District Court | 446 | 01/13/2020 | 04/30/2020 |
| Strojnik, Peter (pla) | 8:2020cv00064 | Peter Strojnik Sr. v. DMD Lodging Inc | California Central District Court | 446 | 01/13/2020 | 04/01/2020 |
| Strojnik, Peter (pla) | 8:2020cv00065 | Peter Strojnik Sr. v. CMP 1 Santa Ana Owner LP | California Central District Court | 446 | 01/13/2020 | 03/02/2020 |
| Strojnik, Peter (pla) | 8:2020cv00254 | Peter Strojnik Sr. v. Shandilya, Inc. | California Central District Court | 446 | 02/10/2020 | 05/28/2020 |
| Strojnik, Peter (pla) | 8:2020cv00257 | Peter Strojnik Sr. v. Lee Family Trust | California Central District Court | 446 | 02/10/2020 | 05/28/2020 |
| Strojnik, Peter (pla) | 8:2020cv00258 | Peter Strojnik Sr. v. President Hotel Investment, LLC | California Central District Court | 446 | 02/10/2020 | 05/28/2020 |

| Party Name | Case Number | Case Title | Court | NOS | Date Filed | Date Closed |
|---|---|---|---|---|---|---|
| Strojnik, Peter (pla) | 8:2020cv00255 | Peter Strojnik Sr. v. SWK Properties, LLC | California Central District Court | 446 | 02/10/2020 | 05/28/2020 |
| Strojnik, Peter (pla) | 8:2020cv00256 | Peter Strojnik v. Shakti Investments, LLC | California Central District Court | 446 | 02/10/2020 | 05/28/2020 |
| Strojnik, Peter (pla) | 2:2020cv01871 | Peter Strojnik v. Dario Pini Trust | California Central District Court | 446 | 02/26/2020 | 05/04/2020 |
| Strojnik, Peter (pla) | 2:2020cv01925 | Peter Strojnik v. Ventura Seaward Hotel, LP | California Central District Court | 446 | 02/27/2020 | 05/27/2020 |
| Strojnik, Peter (pla) | 2:2020cv01862 | Peter Strojnik v. Ventura BV Inn, LLC | California Central District Court | 446 | 02/26/2020 | 06/15/2020 |
| Strojnik, Peter (pla) | 1:2018cv01522 | Strojnik v. Evergreen Destination Holdings, LLC | California Eastern District Court | 446 | 11/02/2018 | 01/07/2019 |
| Strojnik, Peter (pla) | 1:2018cv01520 | Strojnik v. 574 Escuela, LLC | California Eastern District Court | 446 | 11/02/2018 | 11/06/2018 |
| Strojnik, Peter (pla) | 1:2018cv01621 | Strojnik v. Ravensbrook Inn Yosemite | California Eastern District Court | 446 | 11/09/2018 | 06/14/2019 |
| Strojnik, Peter (pla) | 1:2018cv01619 | Strojnik v. Griffin et al | California Eastern District Court | 440 | 11/08/2018 | 12/02/2019 |
| Strojnik, Peter (pla) | 1:2018cv01620 | Strojnik v. The Victus Group, Inc. | California Eastern District Court | 440 | 11/08/2018 | |

**PACER Service Center**

**Receipt** 08/21/2020 12:03:07 1342867325

| | |
|---|---|
| **User** | jl3083 |
| **Client Code** | |
| **Description** | All Court Types Party Search |
| | All Courts; Name strojnik, peter; Role pla; All Courts; Jurisdiction CV; Page: 1 |
| **Billable Pages** | 1 ($0.10) |

**Payment Service Interruption, 08/22/2020**
Online payment processing will be unavailable on Saturday, August 22, 2020, from 6-10 p.m. ET due to scheduled maintenance of the U.S. Treasury's payment processing system.



## Party Search Results

**Search Criteria:** Party Search; Jurisdiction Type: [Civil]; Last Name: [strojnik]; First Name: [peter]; Party Role: [PLA]
**Result Count:** 174 (4 pages)
**Current Page:** 1

| Party Name | Case Number | Case Title | Court | NOS | Date Filed | Date Closed |
|---|---|---|---|---|---|---|
| Strojnik, Peter (pla) | 1:2019cv01097 | Strojnik v. BRE Newton Hotels Property Owner, LLC | California Eastern District Court | 446 | 08/12/2019 | 11/04/2019 |
| Strojnik, Peter (pla) | 1:2019cv01098 | Strojnik v. Bakersfield Convention Hotel I, LLC | California Eastern District Court | 446 | 08/12/2019 | |
| Strojnik, Peter (pla) | 1:2019cv01099 | Strojnik v. Integrated Capital, LLC | California Eastern District Court | 446 | 08/12/2019 | 01/28/2020 |
| Strojnik, Peter (pla) | 1:2019cv01096 | Peter Strojnik v. JW World Enterprises, Inc. Best Western Bakersfield North | California Eastern District Court | 446 | 08/12/2019 | |
| Strojnik, Peter (pla) | 2:2019cv01587 | (PS) Strojnik v. Capitol Regency, LLC | California Eastern District Court | 446 | 08/15/2019 | |
| Strojnik, Peter (pla) | 1:2019cv01192 | Strojnik v. Shivkrupa Investments, Inc. | California Eastern District Court | 446 | 08/30/2019 | 11/25/2019 |
| Strojnik, Peter (pla) | 1:2019cv01193 | Strojnik v. Uniwell Fresno Hotel, LLC | California Eastern District Court | 446 | 08/30/2019 | 01/02/2020 |
| Strojnik, Peter (pla) | 1:2019cv01196 | Peter Strojnik, Sr. v. 1309 West Shaw, LLC | California Eastern District Court | 446 | 08/30/2019 | 01/14/2020 |
| Strojnik, Peter (pla) | 1:2019cv01195 | Strojnik v. Hi Fresno Hotel Holdings, LLC | California Eastern District Court | 446 | 08/30/2019 | 03/19/2020 |
| Strojnik, Peter (pla) | 1:2019cv01194 | Strojnik v. Hotel Circle GL Holdings, LLC | California Eastern District Court | 446 | 08/30/2019 | 07/28/2020 |
| Strojnik, Peter (pla) | 1:2019cv01264 | Strojnik v. BRE SSP Property Owner, LLC | California Eastern District Court | 446 | 09/11/2019 | 11/05/2019 |

| Party Name | Case Number | Case Title | Court | NOS | Date Filed | Date Closed |
|---|---|---|---|---|---|---|
| Strojnik, Peter (pla) | 1:2019cv01265 | Strojnik v. Stone Creek Lodging, L.P. | California Eastern District Court | 446 | 09/11/2019 | 04/06/2020 |
| Strojnik, Peter (pla) | 2:2019cv01877 | (PS) Strojnik v. Azul Hospitality Group, LLC et al | California Eastern District Court | 446 | 09/18/2019 | |
| Strojnik, Peter (pla) | 1:2019cv01321 | Strojnik v. Kanhaiya, LLC | California Eastern District Court | 446 | 09/20/2019 | 09/24/2019 |
| Strojnik, Peter (pla) | 1:2019cv01322 | Strojnik v. Weaver Enterprises, LP | California Eastern District Court | 446 | 09/20/2019 | 09/24/2019 |
| Strojnik, Peter (pla) | 2:2019cv01938 | (PS) Strojnik v. Weaver Enterprises, LP | California Eastern District Court | 446 | 09/20/2019 | 04/20/2020 |
| Strojnik, Peter (pla) | 2:2019cv01941 | (PS) Strojnik v. Kanhaiya, LLC | California Eastern District Court | 446 | 09/20/2019 | 03/12/2020 |
| Strojnik, Peter (pla) | 2:2019cv02041 | (PS) Strojnik v. Sacramento Hotel, LLC | California Eastern District Court | 446 | 10/11/2019 | |
| Strojnik, Peter (pla) | 2:2019cv02042 | (PS) Strojnik v. Vantage Pointe Inc. | California Eastern District Court | 446 | 10/11/2019 | 02/27/2020 |
| Strojnik, Peter (pla) | 2:2019cv02043 | (PS) Strojnik v. Wickstrom Hospitality, LLC | California Eastern District Court | 446 | 10/11/2019 | |
| Strojnik, Peter (pla) | 2:2019cv02044 | (PS) Strojnik v. Kaidan Hospitality LP | California Eastern District Court | 446 | 10/11/2019 | |
| Strojnik, Peter (pla) | 2:2019cv02326 | (PS) Strojnik v. Izabella Investment, LLC | California Eastern District Court | 446 | 11/18/2019 | 01/14/2020 |
| Strojnik, Peter (pla) | 3:2018cv06587 | Strojnik v. Joie de Vivre Hospitality LLC | California Northern District Court | 446 | 10/29/2018 | 10/03/2019 |
| Strojnik, Peter (pla) | 3:2018cv06586 | Strojnik v. Marriott International Inc | California Northern District Court | 446 | 10/29/2018 | 12/10/2018 |
| Strojnik, Peter (pla) | 3:2018cv06777 | Strojnik v. 574 Escuela, LLC | California Northern District Court | 446 | 11/08/2018 | |
| Strojnik, Peter (pla) | 5:2018cv07704 | Strojnik v. Benchmarck Conference Resorts of California, LLC | California Northern District Court | 446 | 12/24/2018 | 04/11/2019 |
| Strojnik, Peter (pla) | 5:2019cv00737 | Strojnik v. ML San Jose Holding LLC | California Northern District Court | 446 | 02/11/2019 | 05/20/2019 |
| Strojnik, Peter (pla) | 5:2019cv01844 | Strojnik v. Ensemble Hotel Partners, LLC | California Northern District Court | 446 | 04/05/2019 | 12/26/2019 |

| Party Name | Case Number | Case Title | Court | NOS | Date Filed | Date Closed |
|---|---|---|---|---|---|---|
| Strojnik, Peter (pla) | 5:2019cv01875 | Strojnik v. Bernardus LLC | California Northern District Court | 446 | 04/08/2019 | 12/27/2019 |
| Strojnik, Peter (pla) | 5:2019cv01876 | Strojnik v. JMA Ventures LLC | California Northern District Court | 446 | 04/08/2019 | 07/01/2019 |
| Strojnik, Peter (pla) | 5:2019cv02529 | Strojnik, Sr. v. Mirabel Hotel and Restaurant Group LLC | California Northern District Court | 446 | 05/10/2019 | 03/06/2020 |
| Strojnik, Peter (pla) | 3:2019cv02556 | Strojnik v. VY Verasa Commercial Company LLC et al | California Northern District Court | 446 | 05/15/2019 | |
| Strojnik, Peter (pla) | 5:2019cv03006 | Strojnik v. Hyatt International Corporation | California Northern District Court | 446 | 05/31/2019 | 12/27/2019 |
| Strojnik, Peter (pla) | 5:2019cv03082 | Strojnik v. Xenia Hotels & Resorts, Inc. | California Northern District Court | 446 | 06/04/2019 | |
| Strojnik, Peter (pla) | 5:2019cv03122 | Strojnik, Sr. v. First & Mission Properties LLC | California Northern District Court | 446 | 06/05/2019 | 09/10/2019 |
| Strojnik, Peter (pla) | 3:2019cv03377 | Strojnik v. Wilson | California Northern District Court | 446 | 06/13/2019 | 08/12/2019 |
| Strojnik, Peter (pla) | 3:2019cv03375 | Strojnik v. Madrona Manor Wine Country Inn & Restaurant Inc. | California Northern District Court | 446 | 06/13/2019 | 10/02/2019 |
| Strojnik, Peter (pla) | 3:2019cv03376 | Strojnik v. Fowler LLC | California Northern District Court | 446 | 06/13/2019 | 07/17/2019 |
| Strojnik, Peter (pla) | 3:2019cv03583 | Strojnik v GF Carneros Tenant, LLC | California Northern District Court | 446 | 06/20/2019 | 03/16/2020 |
| Strojnik, Peter (pla) | 4:2019cv03968 | Strojnik v. WCH Napa LLC | California Northern District Court | 446 | 07/10/2019 | 08/05/2019 |
| Strojnik, Peter (pla) | 4:2019cv03983 | Strojnik v. IA Lodging Napa First LLC | California Northern District Court | 446 | 07/10/2019 | 06/01/2020 |
| Strojnik, Peter (pla) | 3:2019cv03980 | Strojnik v. 539 Johnson Street, LLC | California Northern District Court | 446 | 07/10/2019 | 08/12/2019 |
| Strojnik, Peter (pla) | 5:2019cv04616 | Strojnik v. Resort at Indian Springs, LLC | California Northern District Court | 446 | 08/09/2019 | |
| Strojnik, Peter (pla) | 5:2019cv04619 | Strojnik v. Homestead Inn LLC | California Northern District Court | 446 | 08/09/2019 | 03/16/2020 |
| Strojnik, Peter (pla) | 5:2019cv05149 | Strojnik v. Classic Hotels & Resorts LLC et al | California Northern District Court | 446 | 08/19/2019 | 01/03/2020 |

| Party Name | Case Number | Case Title | Court | NOS | Date Filed | Date Closed |
|---|---|---|---|---|---|---|
| Strojnik, Peter (pla) | 3:2019cv05188 | Strojnik v. Mount View Hotel Partners, a California Limited Partnership | California Northern District Court | 446 | 08/20/2019 | 01/08/2020 |
| Strojnik, Peter (pla) | 5:2019cv07579 | Strojnik v. Portola Hotel, LLC | California Northern District Court | 446 | 11/18/2019 | |
| Strojnik, Peter (pla) | 5:2020cv00136 | Strojnik v. SWVP Monterey, LLC | California Northern District Court | 446 | 01/07/2020 | 03/23/2020 |
| Strojnik, Peter (pla) | 5:2020cv00354 | Strojnik v. R.F. Weichert V, Inc. | California Northern District Court | 446 | 01/16/2020 | |
| Strojnik, Peter (pla) | 4:2020cv01050 | Strojnik v. Napa Hotel and Restaurant LLC | California Northern District Court | 446 | 02/10/2020 | 04/06/2020 |
| Strojnik, Peter (pla) | 3:2020cv01051 | Strojnik v. Napa Discovery Inn, LLC | California Northern District Court | 446 | 02/10/2020 | 03/16/2020 |
| Strojnik, Peter (pla) | 5:2020cv01083 | Strojnik v. Pacifica Hotel, Pacific, L.P. | California Northern District Court | 446 | 02/11/2020 | |
| Strojnik, Peter (pla) | 4:2020cv01291 | Strojnik v. Moraya Investments, LLC | California Northern District Court | 446 | 02/20/2020 | |
| Strojnik, Peter (pla) | 3:2020cv01290 | Strojnik v. Seema Will Rogers, LLC | California Northern District Court | 446 | 02/20/2020 | 07/01/2020 |

**PACER Service Center**

**Receipt** 08/21/2020 12:03:07 1342867325

| | |
|---|---|
| User | jl3083 |
| Client Code | |
| Description | All Court Types Party Search |
| | All Courts; Name strojnik, peter; Role pla; All Courts; Jurisdiction CV; Page: 1 |
| Billable Pages | 1 ($0.10) |

Payment Service Interruption, 08/22/2020
Online payment processing will be unavailable on Saturday, August 22, 2020, from 6-10 p.m. ET due to scheduled
maintenance of the U.S. Treasury's payment processing system.

 Party Search Results

**Search Criteria:** Party Search; Jurisdiction Type: [Civil]; Last Name: [strojnik]; First Name: [peter]; Party Role: [PLA]
**Result Count:** 174 (4 pages)
**Current Page:** 1

| Party Name | Case Number | Case Title | Court | NOS | Date Filed | Date Closed |
|---|---|---|---|---|---|---|
| Strojnik, Peter (pla) | 4:2020cv01289 | Strojnik v. The Inn at Jack London Square, LLC | California Northern District Court | 446 | 02/20/2020 | |
| Strojnik, Peter (pla) | 5:2020cv03203 | Strojnik v. Call Family Trust | California Northern District Court | 446 | 05/11/2020 | |
| Strojnik, Peter (pla) | 5:2020cv03204 | Strojnik v. Woodside Hotel Group LTD | California Northern District Court | 446 | 05/11/2020 | |
| Strojnik, Peter (pla) | 5:2020cv03205 | Strojnik v. Inter-continental Hotels Group Resources, LLC | California Northern District Court | 446 | 05/11/2020 | 07/09/2020 |
| Strojnik, Peter (pla) | 4:2020cv03140 | Strojnik v. Terrapin 1250 Bayshore Property Owner, LLC | California Northern District Court | 446 | 05/07/2020 | 07/17/2020 |
| Strojnik, Peter (pla) | 3:2020cv03139 | Strojnik v. Butterfly Effect Hotels, LLC | California Northern District Court | 446 | 05/07/2020 | |
| Strojnik, Peter (pla) | 3:2020cv03142 | Strojnik v. BW RRI II, LLC | California Northern District Court | 446 | 05/07/2020 | |
| Strojnik, Peter (pla) | 4:2020mc80095 | Strojnik v. Sashi Group, LLC et al | California Northern District Court | 950 | 05/29/2020 | 06/11/2020 |
| Strojnik, Peter (pla) | 4:2020mc80103 | Strojnik v. Sashi Group, LLC et al | California Northern District Court | 950 | 06/12/2020 | 06/17/2020 |
| Strojnik, Peter (pla) | 3:2019cv00305 | Strojnik v. Pendry San Diego, LLC | California Southern District Court | 446 | 02/12/2019 | 05/21/2019 |
| Strojnik, Peter (pla) | 3:2019cv00650 | Strojnik v. Torrey Pines Club Corporation | California Southern District Court | 446 | 04/08/2019 | 07/14/2020 |

| Party Name | Case Number | Case Title | Court | NOS | Date Filed | Date Closed |
|---|---|---|---|---|---|---|
| Strojnik, Peter (pla) | 3:2019cv00909 | v. Strojnik et al | California Southern District Court | 446 | 05/14/2019 | 09/18/2019 |
| Strojnik, Peter (pla) | 3:2019cv01186 | Strojnik v. La Jolla Bed & Breakfast Inc. | California Southern District Court | 446 | 06/24/2019 | 01/09/2020 |
| Strojnik, Peter (pla) | 3:2019cv01187 | Strojnik v. GHALP Parnership, L.P. | California Southern District Court | 446 | 06/24/2019 | 02/06/2020 |
| Strojnik, Peter (pla) | 3:2019cv01381 | Strojnik v. CWI 2 La Jolla Hotel, LP | California Southern District Court | 446 | 07/24/2019 | |
| Strojnik, Peter (pla) | 3:2019cv01390 | Strojnik v. Lizerbram | California Southern District Court | 446 | 07/24/2019 | 04/02/2020 |
| Strojnik, Peter (pla) | 3:2019cv01386 | Strojnik v. Prospect Hospitality, LP. | California Southern District Court | 446 | 07/24/2019 | 01/02/2020 |
| Strojnik, Peter (pla) | 3:2019cv01391 | Strojnik v. Bartell Hotels Management Company | California Southern District Court | 446 | 07/24/2019 | 08/06/2020 |
| Strojnik, Peter (pla) | 3:2019cv01445 | Strojnik v. RNM Hospitality, Inc et al | California Southern District Court | 446 | 08/01/2019 | 09/24/2019 |
| Strojnik, Peter (pla) | 3:2019cv01446 | Strojnik v. Marla K Hicks Trust | California Southern District Court | 446 | 08/01/2019 | 07/14/2020 |
| Strojnik, Peter (pla) | 3:2019cv01991 | Strojnik v. 1315 Orange LLC | California Southern District Court | 446 | 10/16/2019 | 06/04/2020 |
| Strojnik, Peter (pla) | 3:2019cv02147 | Strojnik v. Barrigon Inc | California Southern District Court | 446 | 11/07/2019 | 01/27/2020 |
| Strojnik, Peter (pla) | 3:2019cv02148 | Strojnik v. Cherokee Lodge, LLC | California Southern District Court | 446 | 11/07/2019 | 01/23/2020 |
| Strojnik, Peter (pla) | 3:2019cv02211 | Strojnik v. Indoc Partners, LLC | California Southern District Court | 446 | 11/20/2019 | 08/17/2020 |
| Strojnik, Peter (pla) | 3:2019cv02210 | Strojnik v. Village 1017 Coronado, Inc. | California Southern District Court | 446 | 11/20/2019 | 06/16/2020 |
| Strojnik, Peter (pla) | 3:2019cv02212 | Strojnik v. Kamla Hotels, Inc. | California Southern District Court | 446 | 11/20/2019 | |
| Strojnik, Peter (pla) | 3:2020cv00358 | Strojnik v. San Diego Farah Partners, L.P. | California Southern District Court | 446 | 02/26/2020 | |
| Strojnik, Peter (pla) | 3:2020cv00359 | Strojnik v. Souldriver Lessee, Inc. | California Southern District Court | 446 | 02/26/2020 | 05/22/2020 |
| Strojnik, Peter (pla) | 3:2020cv00360 | Strojnik v. RBI Investors L.P. | California Southern District Court | 446 | 02/26/2020 | 05/28/2020 |
| Strojnik, Peter (pla) | 3:2020cv00387 | Strojnik v. Lafayette Landlord, LLC | California Southern District Court | 446 | 02/28/2020 | |

| Party Name | Case Number | Case Title | Court | NOS | Date Filed | Date Closed |
|---|---|---|---|---|---|---|
| Strojnik, Peter (pla) | 3:2020cv00384 | Strojnik v. 8757 Rio San Diego Mission Valley Owner, LLC | California Southern District Court | 446 | 02/28/2020 | |
| Strojnik, Peter (pla) | 3:2020cv00868 | Strojnik v. Pacifica Stratford Three, LLC | California Southern District Court | 446 | 05/07/2020 | |
| Strojnik, Peter (pla) | 1:2020cv00034 | Strojnik v. Christiania Lodge at Vail, LTD | Colorado District Court | 446 | 01/06/2020 | |
| Strojnik, Peter (pla) | 1:2020cv00035 | Strojnik v. Lodge Properties Inc. | Colorado District Court | 446 | 01/06/2020 | 03/13/2020 |
| Strojnik, Peter (pla) | 1:2020cv00087 | Strojnik v. Lazier Tivoli, LLC | Colorado District Court | 446 | 01/10/2020 | |
| Strojnik, Peter (pla) | 1:2020cv00085 | Strojnik v. Sonnenalp Properties, Inc. | Colorado District Court | 446 | 01/10/2020 | 02/18/2020 |
| Strojnik, Peter (pla) | 1:2020cv00086 | Strojnik v. Mountain Haus Condominium Association | Colorado District Court | 446 | 01/10/2020 | 07/23/2020 |
| Strojnik, Peter (pla) | 1:2020cv00570 | Strojnik v. Vail/Beaver Creek Resort Properties, Inc. | Colorado District Court | 446 | 02/28/2020 | 05/15/2020 |
| Strojnik, Peter (pla) | 1:2019cv00135 | Strojnik v. Granite Fund IV LLC | Hawaii District Court | 446 | 03/14/2019 | 04/08/2019 |
| Strojnik, Peter (pla) | 1:2018cv00409 | Strojnik v. Island Acquisitions Kapalua LLC | Hawaii District Court | 446 | 10/24/2018 | 12/06/2018 |
| Strojnik, Peter (pla) | 1:2019cv00136 | Strojnik v. Host Hotels & Resorts, Inc. | Hawaii District Court | 446 | 03/14/2019 | 05/26/2020 |
| Strojnik, Peter (pla) | 1:2018cv00403 | Strojnik v. Green Tea. LLC | Hawaii District Court | 446 | 10/22/2018 | 01/03/2019 |
| Strojnik, Peter (pla) | 1:2019cv00077 | Strojnik v. Kapalua Land Company LTD et al | Hawaii District Court | 446 | 02/13/2019 | 09/25/2019 |
| Strojnik, Peter (pla) | 1:2018cv00556 | Strojnik v. Block 22 LLC | Idaho District Court | 446 | 12/17/2018 | 01/03/2020 |
| Strojnik, Peter (pla) | 1:2019cv00515 | Strojnik v. Heritage Hotels and Resorts, Inc. | New Mexico District Court | 446 | 06/05/2019 | 12/02/2019 |
| Strojnik, Peter (pla) | 3:2018cv01869 | Strojnik v. Provenance Fund Acquisition, LLC | Oregon District Court | 446 | 10/24/2018 | 12/11/2018 |
| Strojnik, Peter (pla) | 3:2018cv02171 | Strojnik v. Elmer | Oregon District Court | 446 | 12/17/2018 | 04/18/2019 |

| Party Name | Case Number | Case Title | Court | NOS | Date Filed | Date Closed |
|---|---|---|---|---|---|---|
| Strojnik, Peter (pla) | 3:2018cv02172 | Strojnik v. Live McMinnville, LLC | Oregon District Court | 446 | 12/17/2018 | 04/18/2019 |
| Strojnik, Peter (pla) | 3:2018cv02173 | Strojnik v. Park Avenue Fine Wines LLC | Oregon District Court | 446 | 12/17/2018 | 02/27/2019 |
| Strojnik, Peter (pla) | 6:2019cv00041 | Strojnik v. VIP's Hotels, Inc. | Oregon District Court | 446 | 01/10/2019 | 04/17/2019 |
| Strojnik, Peter (pla) | 3:2019cv01714 | Strojnik v. Paulson & Co. Inc. et al | Puerto Rico District Court | 446 | 07/25/2019 | |
| Strojnik, Peter (pla) | 3:2019cv01712 | Strojnik v. International Hospitality Enterprises, Inc. | Puerto Rico District Court | 446 | 07/25/2019 | |
| Strojnik, Peter (pla) | 3:2019cv01713 | Strojnik v. Herger et al | Puerto Rico District Court | 446 | 07/25/2019 | 01/09/2020 |
| Strojnik, Peter (pla) | 3:2019cv00870 | Strojnik v. Extel Development Company | Texas Northern District Court | 446 | 04/09/2019 | 11/12/2019 |

**PACER Service Center**

| | | **Receipt** 08/21/2020 12:06:28 1342867503 |
|---|---|---|
| User | jl3083 | |
| Client Code | | |
| Description | All Court Types Party Search | |
| | All Courts; Name strojnik, peter; Role pla; All Courts; Jurisdiction CV; Page: 3 | |
| Billable Pages | 1 ($0.10) | |

PACER Case Locator - Search Results

**Payment Service Interruption, 08/22/2020**
Online payment processing will be unavailable on Saturday, August 22, 2020, from 6-10 p.m. ET due to scheduled maintenance of the U.S. Treasury's payment processing system.

 Party Search Results

**Search Criteria:** Party Search; Jurisdiction Type: [Civil]; Last Name: [strojnik]; First Name: [peter]; Party Role: [PLA]
**Result Count:** 174 (4 pages)
**Current Page:** 3

Refine the current search

| Party Name | Case Number | Case Title | Court | NOS | Date Filed | Date Closed |
|---|---|---|---|---|---|---|
| Strojnik, Peter (pla) | 3:2019cv01326 | Strojnik v. Dunhill 1530 Main GP Inc | Texas Northern District Court | 446 | 06/03/2019 | |
| Strojnik, Peter (pla) | 3:2019cv01325 | Strojnik v. Dallas Convention Center Hotel Development Corporation | Texas Northern District Court | 446 | 06/03/2019 | 10/09/2019 |
| Strojnik, Peter (pla) | 3:2019cv01336 | Strojnik v. Hamilton Properties Corporation Inc | Texas Northern District Court | 446 | 06/04/2019 | |
| Strojnik, Peter (pla) | 3:2019cv01369 | Strojnik v. HRI Lodging Inc | Texas Northern District Court | 446 | 06/07/2019 | 06/25/2020 |
| Strojnik, Peter (pla) | 4:2019cv01169 | Strojnik v. Granduca Territorial Houston LP | Texas Southern District Court | 446 | 03/29/2019 | 04/14/2020 |
| Strojnik, Peter (pla) | 4:2019cv01170 | Strojnik v. Landry's | Texas Southern District Court | 446 | 03/29/2019 | 01/03/2020 |
| Strojnik, Peter (pla) | 3:2018cv05912 | Strojnik v. Geiger Victoria, Inc | Washington Western District Court | 446 | 11/07/2018 | 03/06/2019 |
| Strojnik, Peter (pla) | 2:2018cv01831 | Strojnik v. Swantown Inn & Spa LLC | Washington Western District Court | 446 | 12/18/2018 | 03/12/2019 |
| Strojnik, Peter (pla) | 2:2018cv01832 | Strojnik v. Seattle Hotel Group LLC | Washington Western District Court | 446 | 12/18/2018 | 01/22/2019 |
| Strojnik, Peter Kristofer (pla) | 2:2017cv01205 | Strojnik v. Dollar Rent A Car Incorporated | Arizona District Court | 190 | 04/23/2017 | 05/04/2017 |
| Strojnik, Peter Kristofer (pla) | 2:2011cv02263 | Strojnik v. Client Services Incorporated | Arizona District Court | 480 | 11/17/2011 | 02/29/2012 |

| Party Name | Case Number | Case Title | Court | NOS | Date Filed | Date Closed |
|------------|-------------|-----------|-------|-----|-----------|------------|
| Strojnik, Sr, Peter (pla) | 3:2019cv03981 | Strojnik, Sr v. Cypress Inn Investors | California Northern District Court | 446 | 07/11/2019 | 08/14/2019 |

### PACER Service Center

**Receipt** 08/21/2020 12:06:49 1342867538

| | |
|---|---|
| **User** | jl3083 |
| **Client Code** | |
| **Description** | All Court Types Party Search |
| | All Courts; Name strojnik, peter; Role pla; All Courts; Jurisdiction CV; Page: 4 |
| **Billable Pages** | 1 ($0.10) |

EXHIBIT 2

**BEFORE THE PRESIDING DISCIPLINARY JUDGE**

| | |
|---|---|
| IN THE MATTER OF A MEMBER OF THE STATE BAR OF ARIZONA, | **PDJ-2018-9018** |
| | **ORDER OF INTERIM SUSPENSION** |
| **PETER STROJNIK,** **Bar No. 006464** | [State Bar No. 18-0615] |
| Respondent. | **FILED JULY 11, 2018** |

## PROCEDURAL HISTORY

On March 6, 2018, the State Bar of Arizona moved for Interim Suspension (Motion) of Respondent, Peter Strojnik, Bar No. 006464 under Rule 61, Ariz. R. Sup. Ct.[1] The allegations were verified and additionally supported by attached Exhibits 1-14. On March 27, 2018, Mr. Strojnik filed his response, arguing among other things that there was no emergency because "the state and federal courts in which Mr. Strojnik has made those filings are fully capable of dealing with them according to law." [Respondent Response 1:22-24.] See also 6:7-12. The response concludes that there is no risk of injury to the public when compared to the damage Mr. Strojnik would suffer from an interim suspension. This Court disagrees. The

---

[1] Unless stated otherwise, all Rule references are to the Ariz. R. Sup. Ct.

testimony of Mr. Strojnik gives this judge little assurance that he will not continue to file or make claims against members of the public.

In conceding that interim suspension is warranted for "egregious" misconduct, Mr. Strojnik cited an article by Francis M. Dougherty (citations omitted). He also claims that interim suspension is also warranted for conduct "which cannot be easily corrected by other courts." Similarly, the response supports that interim suspension should be reserved for "the most extreme cases of lawyer misconduct" citing the West Virginia Supreme Court, (citations omitted). An evidentiary hearing was scheduled for April 11, 2018.

On April 3, 2018, Mr. Strojnik moved to continue the hearing because his health was greatly imperiled, and he would be unable to proceed. He was to undergo arterial embolization for kidney cancer which was scheduled for April 11, 2018 and would be unable to reasonably participate in the hearing due to his health. The hearing was continued.

On May 3, 2018, a hearing on the State Bar's Motion for Interim Suspension was held. Shauna Miller appeared on behalf of the State Bar of Arizona. Mr. Strojnik appeared, represented by Geoffrey Sturr and Joshua Bendor, *Osborn Maledon, P.A.*

## <u>GENERAL FINDINGS</u>

Any lawyer admitted to practice law in Arizona is subject to the disciplinary jurisdiction of the Arizona Supreme Court. Rule 46(a). Discipline proceedings are

*sui generis*, neither civil nor criminal. Rule 48(a). An attorney may be disciplined for any of the grounds stated in Rule 54. A discipline proceeding commences upon receipt by the State Bar of a charge against a respondent. Rule 55(a). Bar counsel conducts an initial evaluation of the information that comes to the State Bar's attention alleging lawyer lack of professionalism or misconduct. It is undisputed that the State Bar has received multiple charges from members of the public regarding the conduct of Mr. Strojnik.

If "the alleged conduct may warrant the imposition of a sanction" the matter is referred for a screening investigation. Rule 55(a)(2)(C).  Mr. Strojnik has acknowledged various charges have been in a screening investigation and thereby that the State Bar has long held the view that the conduct of Mr. Strojnik may warrant the imposition of a sanction. [Respondent Closing Argument 3:5-7.]

Rule 61 is the governing rule regarding interim suspension. The State Bar may move for interim suspension at any time after a charge is received. Under Rule 61(a), an interim suspension may be entered upon a showing of probable cause that a lawyer "is engaging in conduct that has caused or is likely to cause immediate and substantial harm to clients, the public, or the administration of justice."

Rule 61(c)(2) sets forth the required procedural grounds by which an interim suspension may be sought. The procedural requirements were followed. The 339-page motion with attachments was supported by separate affidavits which were

based upon personal knowledge. The motion was timely served upon Mr. Strojnik. He timely filed a 112-page response to the motion.

Under Rule 61(c)(2)(B), "The State Bar shall have the burden of establishing probable cause that the basis of the requested relief exists and that interim suspension is appropriate." In conducting the hearing, "The presiding disciplinary judge is not bound by common law or rules of evidence or by technical or formal rules of procedure and may conduct the hearing in any manner that will achieve substantial justice." Probable cause exists.

## FINDINGS OF FACTS

Mr. Strojnik has filed over 1,700 complaints in State Court and over 160 complaints in District Court alleging violations of the Americans with Disabilities Act (ADA) and the Arizonans with Disabilities Act (AzDA). The cases filed were all very similar, alleging vague and non-specific violations. In cases brought in District Court, Mr. Strojnik represented plaintiff Fernando Gastelum where they targeted hotels. Mr. Strojnik represented the plaintiffs, generally referred to as AID (Advocates of Individuals with Disabilities, LLC) and David Ritzenthaler in the State Court cases which involved parking lot violations.

In each case, Mr. Strojnik would demand $5,000 in attorney's fees, regardless if the business had remedied the violation. [SBA Exhibits 4-6.] Mr. Strojnik testified that he has collected, in the parking lot cases, approximately $1.2 million in

settlements, which mainly consisted of attorney's fees. [Tr. 186:18-187:10.] In the Gastelum cases, as of the date of the hearing, Mr. Strojnik swore he had received "$384,000 net to me." [Id. 186:1-5.] After reflection that number increased by another $288,000. [Id. 187:8-10.] He plans to continue his pattern of conduct as he has always done. [Id. 188:25-189:10.]

Beau Roysden, an attorney with the Attorney General's office Civil Litigation Division, testified that the Attorney General's office became involved in these matters because of complaints by the public of the lawsuits being filed by Mr. Strojnik. In each suit, large attorney fees were claimed "and in some cases, potentially suing things like dirt lots or businesses that were not subject to the ADA." [Transcript, p. 73:13-23.] He also testified the suits were "copy and paste" and that some of the suits claimed they involved public lodging when it did not. Regardless, demands for $5,000 in attorney's fees and "some complaints claimed $5000 in damages as well." [Id. 76:8-20.]

Early in his testimony Mr. Strojnik acknowledged that with his method of "review" of the "investigative reports" he made errors and brought suit against dirt lots. [Id. 160:16-19.] Later when asked about the testimony of Mr. Roysden, Mr. Strojnik conceded that this had happened but claimed "rarely." He then claimed there was only one situation where this occurred as referred to by Mr. Roysden and

agreed it had occurred despite what he claimed to be a thorough investigation. [Tr. p. 196:9-14.]

Mr. Strojnik acknowledged he had a direct hand in this thorough investigation. He swore that he personally supervised the "investigators" that would go to the properties and ultimately their photographs would be delivered to him for review. [Id. 146:11-14.] Relying upon those "investigative reports" he personally determined if there were ADA violations. However, he later conceded he "did not know who the people were who actually went out to work." [Id. 148:10-11.] He testified he did not know how the instruments they used to take the photographs worked and that he had no expertise regarding this. He would rely on these "investigators" that he supervised, but never met, and for which he had no expertise of their methodology of the alleged violations in filing his lawsuits.

He also knew that this thorough investigation of the properties included simply hiring people from Craigslist to go take pictures of businesses that might be non-compliant. [Id. 144:11-17.] Throughout the hearing he called these individuals "investigators." They forwarded to him "approximately 10,000 violations filed on the businesses that were visited by these investigators." [Id. 145:1-6.] "Every case that was filed, I would review the investigative report given by the investigators." [Id 146:18-19.]

He swore he checked their work through the photographs that they provided to him. He swore he personally reviewed 10,000 of these "reports" by investigators certifying their accuracy to the court when suits were filed on any of them. Some days he would receive 150 such reports that he would look over to make sure they were accurate. [Id. 152:24-153:1.] Mr. Strojnik, in justifying this and his attorney fees, claimed he worked, at times, 24 hours a day.

Q: 24 hours a day?

A: Yeah.

Q. You wouldn't go to sleep?

A. No.

Q. Okay.

A. And I would, you know, for a year and a half, that's all I did. [164:16-22.]

He was later asked to verify these answers.

Q. You said you were doing the 24/7 for about a year, year and a half?

A. That's about a year and a half. 165:10-12.]

Mr. Roysden swore that a number of these suits involved "newer regulations" that altered the height for handicapped parking signs. These governmental changes caused once compliant businesses to fall out of compliance. Mr. Strojnik summarized his viewpoint that "non-compliance with disability law is rampant in

Arizona." It is apparent Mr. Strojnik believes these business owners violate the ADA without restraint. Even if there was no actual access issue, Mr. Strojnik claimed a violation that the 2010 standards were not in place at the time were "irrelevant under the ADA" even if a person had complete and unfettered access to the property. [Tr. 157:1-14.]

The time Mr. Strojnik spent on each case was minimal. For example, in the parking lot cases, Mr. Strojnik would review the investigative report prepared by the employees of AID. Then, if Mr. Strojnik determined that there was a violation, he might prepare a complaint, sign it, and file it. Mr. Strojnik would review photographs submitted. [Id. 192:21-194:5 and Ex. 31, vol. 1, Tab 5, Exhibit B, appendix B.] The preparation and review of the complains was under thirty minutes. He is a "one-man show" that does his own typing, has his investigators upload pictures of properties that he claims to review and charges $650 per hours for "everything I do that an attorney should do." [Id. p. 183:21-184:7.]

His state of mind was clarified by his response to questioning by his attorney. He was asked whether all his other cases had factual support. Mr. Strojnik attempted to testify about a hearing on standing. [Id. 199:24-25.] His attorney asked him, "Why are you so thorough and careful in the preparatory work for the lawsuits that you are filing on Mr. Gastelum's behalf?" He seethed, "I have learned in the last year and a half that there is a clear subliminal, just under the surface, dislike of society against

people with disabilities. If you drive off the freeway and there is a guy in a wheel chair asking for money, how many drivers actually look at him and make eye contact? Nobody. The reason why I didn't do that…"  The non-responsive answer was interrupted by the court. [Id. 208:13-21.]

In fact, Mr. Strojnik worked for free, under an arrangement with AID, he would demand attorney fees and those attorney fees were paid directly to AID and given to other individuals unknown to Mr. Strojnik. [158:7-18.] He swore he was never paid or given anything for attorney fees. Instead he testified, "The attorney fees were assigned to AID." He then added "I never saw the check." When pressed regarding this, he contradicted himself and swore the checks would either be written directly to his client or he would sign the check over. [167:6-168:12.]

In the hotel cases, Mr. Strojnik would pay Mr. Gastelum $350 per case to participate as the plaintiff.  As of November 17, 2017, Mr. Gastelum had been paid a total of $1,500 by Mr. Strojnik. The fee agreement between Mr. Gastelum and Mr. Strojnik gave Mr. Strojnik the authority to accept settlements and keep all money offered without Mr. Gastelum's approval. [SB Exhibit 19-28.]

In these fee applications filed by Mr. Strojnik in the Gastelum federal lawsuits, each had identical terms including: 1) Strojnik's hourly rate is $650.00 per hour, based on several factors; 2) Strojnik would represent Plaintiff pro bono, but can seek the recovery of attorney's fees from the Defendant at the rate of $650 per hour; 3)

Strojnik has the unfettered discretion in all settlements, but the client's consent is required if the settlement amount is less than $350; and 4) an expense under "client expenses" is paying Mr. Gastelum $350 for mileage, time effort, reviews, collection of evidence, and other expenses as required.

Mr. Strojnik testified that he never had an application for attorney fees denied where he had provided no pre-suit notification. [Id. 192:7-10.] This relevant testimony introduced by Mr. Strojnik was undermined by the recent denials of his attorney fees. Under examination by his attorney, Mr. Strojnik testified he had never had a lawsuit involuntarily dismissed. Such testimony was acknowledged as relevant and material by Mr. Strojnik. [Id. 210:20-23.] Recent rulings are likewise relevant, material and undermine his position.

The District Court has held that Strojnik's tactics are "extortionate" stating in part, "[no] fee is the reasonable fee for an unnecessary lawsuit that a demand letter would have taken care of. A demand for a fee beyond what is reasonable is a demand without legal basis under the ADA." *Advocates for Individuals With Disabilities LLC v. MidFirst Bank*, 279 F. Supp. 3d 891, 898 (D. Ariz. 2017). Although most of the lawsuits filed have been dismissed, Mr. Strojnik stated that he wanted to file 10,000 ADA compliance lawsuits, and then file a million nationwide.[2]

---

[2] Stated in meeting with Lyndsay Leavitt who represented many defendants in the ADA/AzDA lawsuits. [Tr 18:12-19:25]

On May 25, 2018, Judge G. Murray Snow ordered a consolidated hearing to consider Mr. Gastelum's standing in the hotel cases. Judge Snow stated that Mr. Gastelum failed to meet the requirements for standing in every case. The Court concluded that Mr. Gastelum and Mr. Strojnik are engaged in a joint enterprise to file suits against Phoenix area lodgings that they believe to be out of compliance with ADA standards. The suits are filed without reference to whether Mr. Gastelum actually had intended to make future visits to those facilities or even if he potentially might be deterred from future visits by the type of non-compliance. Based on the lack of standing, Judge Snow dismissed all of the consolidated cases before him. However, since this ruling, Mr. Strojnik has filed an additional four ADA lawsuits in District Court. [SB Notice Supplementing the Record Re: *Gastelum v. Canyon Hospitality*.]

Judge David M. Talamante consolidated additional cases for the purpose of addressing issues of standing and possible sanctions. Judge Talamante also dismissed the consolidated cases based on a lack of standing. [SB Motion for Interim Suspension, Exhibit 8.] Shortly thereafter, Mr. Strojnik began filing Rule 60 Ariz. Civ. R. Pro. Motions for Relief from the Judgment in the cases dismissed with a lack of standing. On April 9, 2017, Judge Talamante issued an order directing Mr. Strojnik not to file any additional Rule 60 motions. Judge Talamante found that Strojnik committed a "serious due process violation" by failing to provide notice or

copies of the Motions for Relief from Judgment to the State. Judge Talamante also denied all relief sought by Strojnik. [SB Notice Supplementing the Record Re: Judge Talamante.]

## ANALYSIS

Mr. Strojnik argues on one hand that Rule 61 mandates that a Respondent must be actively engaging in case-specific litigation because, "The Bar cannot rely on past, completed conduct to support its request for interim suspension." [Respondent Closing Argument, p. 1:22-26.] Yet on the other hand he argued in the hearing and in his response that interim suspension should not be sought because the cases "should be handled by the court with jurisdiction over those cases." [Respondent Response, p. 3:7-9.] Presumably he means until the case is concluded, at which time that cannot be relied upon in seeking interim suspension.

Mr. Strojnik argued interim suspension should not issue because some of the matters have been in screening too long. [Respondent Closing, p. 2:5-7.] He also seems to argue interim suspension should not issue because some of the matters have not been in screening long enough. [Respondent Closing, p. 6:23-7:2.] Such circular arguments appear disingenuous and ignore the language of Rule 61. It is a course of conduct, not whether case specific motions have been resolved, that are at issue.

He also claims that this judge must make a definitive ruling of which ethical rules(s) were violated. "To suspend Mr. Strojnik, this Court would have to determine

that the Rule 60 motions violate some rule of professional conduct." [Id. 6:12-13.] This court determines whether there is probable cause that a respondent "is engaging in conduct that has caused or is likely to cause immediate and substantial harm to clients, the public, or the administration of justice." If the State Bar meets its burden of proof of establishing probable cause that the basis of the requested relief exists and that interim suspension is appropriate, the PDJ may, but is not required to, order either interim suspension or interim probation.

The determination of probable cause for interim suspension is not substantially different from that of the Attorney Discipline Probable Cause Committee, ("ADPCC"). Under Rule 55, that Committee "shall first determine whether probable cause exists." Neither Rule 55 nor Rule 61 require a definitive finding regarding an ER.

Mr. Strojnik initially emphasized that this Court should defer to the State or Federal Court rulings as he expressed a concern that this Court "could reach inconsistent conclusions about the merits of the motions." [Id. 6:16-18.] The argument that the PDJ must specify which ERs were violated would do precisely what Respondent initially argued against regarding the other courts. It would preset the State Bar to prosecute specific ERs and preset the ADPCC to find probable cause regarding those ERs, potentially resulting in conflicting orders. Rule 61 does not

require findings of fact and conclusions of law. It requires that the PDJ determine, if probable cause is established, whether interim suspension "is appropriate."

The response criticized the State Bar for claiming future harm, as being based on unsupported speculation. "[I]t is not clear how the Bar came to this belief or satisfied its obligation to make a reasonable inquiry. It did not, for example, ask Mr. Strojnik what he intended to do." Regarding the multiple lawsuits filed, the response asserts that Mr. Strojnik and his client Mr. Gastelum, "engage in a rigorous investigative process" and often file lawsuits when infractions are discovered. This is questionable. The response also emphasizes that only Judge Wake was critical of Mr. Strojnik and that case involved his representation of a different client. That argument has been severely undercut.

Based on the foregoing facts, the State Bar contends Mr. Strojnik is engaging in conduct that is likely to cause immediate and substantial harm to clients, the public, or the administration of justice.

## **RULE 61 ANALYSIS**

### *Ethical Rules Violated*

Rule 61 does not explicitly state that violation of specific ethical rules must be found for an interim suspension.  However, the State Bar has the burden of establishing that there is a reasonable belief that the basis of the requested relief exists, and that interim suspension is appropriate, i.e. Mr. Strojnik must be engaging

in unethical conduct and that interim suspension is appropriate. Further, interim suspension is like a preliminary injunction in that it requires the State Bar to show that it is likely to obtain a serious sanction after a full hearing on the merits. *In re Discipline of Trujillo*, 24 P.3d 972 (Utah 2001).

In its closing argument, the State Bar alleges that Mr. Strojnik has violated ERs 1.2, 1.4, 1.5(a), 3.3(a), 8.4(c), and 8.4(d).[3] Violation of these Rules would result in a significant sanction at the conclusion of the disciplinary process. One of the applicable standards for imposing sanctions, *Standard 7.2*, provides that suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession and causes injury or potential injury to a client, the public, or the legal system.

Viewing Mr. Strojnik's conduct in its entirety, he has filed 1,700 complaints in State Court and over 160 complaints in District Court. Virtually all of the State Court lawsuits were dismissed.

### Immediate and Substantial Harm

Mr. Strojnik has demonstrated that without action by this Court, he will continue to file ADA/AzDA lawsuits. [SB's Supplement Re: *Gastelum v. Canyon*

---

[3] The alleged ethical violations are not necessarily inclusive of what will be charged in the disciplinary complaint but are at the least sufficient to show that Mr. Strojnik has violated the Rules of Professional Conduct, that at the least will result in a long-term suspension.

*Hospitality*.] US District Court Judge Neil V. Wake issued an order in *Advocates for Individuals With Disabilities LLC, and David Ritzenthaler, vs. MidFirst Bank,* 2:16-cv-01969-PHX-NVW suggesting that sanctions were appropriate and that Mr. Strojnik's "extortionate practice ha[d] become pervasive," [SB Motion for Interim Suspension, Exhibit 11.] The District Court stated that "it is certain that Arizona courts would not waive the standing requirement and empower [Respondent's] unethical extortion of unreasonable attorney's fees from defendants" when Mr. Strojnik requested to remand the case to state court. [Exhibit 11 at pg. 10.]

The evidence and testimony show that Mr. Strojnik is partaking in a scheme that will cause imminent and substantial harm to the public and administration of justice. The additional lawsuits Mr. Strojnik has filed since the State Bar's Motion for Interim Suspension show that his conduct will continue without immediate action by this Court. Any potential damage to Mr. Strojnik is outweighed by the harm to the public and to the profession.

## CONCLUSION

The State Bar has met its burden demonstrating Mr. Strojnik is engaging in conduct that has caused or is likely to cause immediate and substantial harm to clients, the public, or the administration of justice. Mr. Strojnik has demonstrated that he will continue filing lawsuits, and has filed lawsuits, irrespective of rulings by other Courts.

Therefore:

**IT IS ORDERED** finding probable cause Peter Strojnik has engaged in conduct that has caused or is likely to cause immediate and substantial harm to clients, the public, or the administration of justice.

**IT IS FURTHER ORDERED Peter Strojnik, Bar No. 006464**, is suspended from the practice of law effective immediately on an interim basis and until further order of this Court.

**IT IS FURTHER ORDERED** such suspension shall continue in force until final disposition of all pending disciplinary proceedings against Peter Strojnik, unless vacated or modified.

**IT IS FURTHER ORDERED** under Rule 72(a) Peter Strojnik shall notify all his clients of the terms of this order within ten (10) days and shall timely file with the Disciplinary Clerk and the Court, notice of compliance with this Order as provided by Rule 72(e).

**IT IS FURTHER ORDERED** that the State Bar shall promptly prosecute this matter and it is set for telephonic status review on **Tuesday, January 15, 2019 at 10:00 a.m.**

    **DATED** this 11th day of July, 2018.


                          *William J. O'Neil*
                          **William J. O'Neil, Presiding Disciplinary Judge**

17

Copies of the foregoing e-mailed
this 11th day of July, 2018, and
mailed July 12, 2018, to:

Shauna R. Miller
Senior Bar Counsel
*State Bar of Arizona*
4201 N. 24th Street, Suite 100
Phoenix, AZ  85016-6288
Email:  lro@staff.azbar.org

Geoffrey M.T. Sturr
Joshua D. Bendor
*Osborn Maledon, PA*
2929 N. Central Ave., Suite 2100
Phoenix, AZ 85012-2793
Emails: gsturr@omlaw.com,
 jbendor@omlaw.com
Respondent's Counsel

by: AMcQueen

EXHIBIT 3

Shauna R. Miller, Bar No. 015197
Senior Bar Counsel
State Bar of Arizona
4201 N. 24th Street, Suite 100
Phoenix, Arizona 85016-6266
Telephone (602)340-7386
Email: LRO@staff.azbar.org

OFFICE OF THE
PRESIDING DISCIPLINARY JUDGE
SUPREME COURT OF ARIZONA

NOV 1 6 2018

FILED

BY

## BEFORE THE PRESIDING DISCIPLINARY JUDGE

IN THE MATTER OF A SUSPENDED
MEMBER OF THE STATE BAR OF
ARIZONA,

**PETER STROJNIK,**
**Bar No. 006464,**

Respondent.

PDJ 2018-9105

**COMPLAINT**

[State Bar File Nos. 16-0334,
16-1309, 16-1987, 16-2069, 16-2209,
16-2346, 16-2595, 16-2602, 16-2604,
16-2667, 16-2741, 16-2788, 16-2793,
16-2800, 16-2919, 16-3689, 17-3925,
18-1751]

Complaint is made against Respondent as follows:

### GENERAL ALLEGATIONS

1. At all times relevant, Respondent was licensed to practice law in

Arizona, having been admitted on October 4, 1980.

2. On July 11, 2018, Respondent was suspended from the practice of

law on an interim basis and until further order of the Presiding Disciplinary Judge.

3.      Beginning in 2016, and continuing into 2018, Respondent filed thousands of lawsuits against small businesses alleging minor violations of the Americans with Disabilities Act (ADA) and the Arizonans with Disabilities Act (AzDA) in both state and federal courts, ("the parking lot cases" and "the hotel cases").

4.      In almost every state court parking-lot cases, Respondent represented plaintiffs Advocates for Individuals with Disabilities, LLC, ("AID") and David Ritzenthaler ("Mr. Ritzenthaler"). [1]

5.      The ADA allows plaintiffs to request reasonable attorneys' fees, and injunctive relief.

6.      The AzDA allows plaintiffs to request reasonable attorneys' fees, injunctive relief, and monetary damages, excluding punitive damages.

7.      In the state court parking-lot cases, the Attorney General's Office ("the AG or the AG's office") moved to intervene and consolidate the lawsuits for

---

[1] AKA, Advocates for American Disabled Individuals LLC, Advocates for Individuals with Disabilities Foundation.    In Count Four (A), Respondent represented plaintiff Vickie Barr.

the purpose of having them dismissed on procedural grounds ("the consolidated cases").

    8.    The state court parking-lot cases were virtually all the same:

        a.    they were filed against small business owners,

        b.    they lawsuits contained vague, non-specific allegations of ADA or AzDA parking sign violations,

        c.    most, if not all, of the lawsuits contained demands for attorney's fees in an amount of no less than $5,000, regardless of the amount of work Respondent had performed,

        d.    most, if not all, of the lawsuits contained demands for damages in an amount of no less than $5,000, regardless of the minimal amount of damages available,

        e.    all of the lawsuits requested the closure of the business until it fully complied with the ADA and/or the AzDA.

    9.    The state court granted the intervention, consolidated the cases, and eventually dismissed the majority of the cases for lack of standing.

10. During the proceedings described in 9 above, the court stayed the individual underlying cases.

11. The individual dismissed cases were then referred back to their original divisions to allow defendants to move for attorneys' fees and sanctions.

12. In the federal court parking-lot cases, the AG's office moved to intervene in one case for the purpose of having Respondent declared a vexatious litigant. *Advocates for Individuals with Disabilities, LLC v. MidFirst Bank*, 279 F. Supp. 3d 891, 898 (D. Ariz. 2017) ("*MidFirst Bank*").

13. The courts have referred to Respondent's actions in bringing the ADA and AzDA lawsuits as "extortionate" and "ethically suspect."

14. Respondent's actions in filing thousands of frivolous ADA lawsuits caused an enormous strain on the court system.

### COUNT ONE (File no. 16-2919/State Bar)

15. Paragraphs 3 through 14 are incorporated herein.

16. On March 27, 2017, the AG's office filed a Rule 11 motion in the state court parking-lot cases, alleging that Respondent perpetrated a fraud on the

court in claiming millions of dollars in attorney's fees and monetary damages as part of a scheme to make money.

17.    Respondent used false statements and deceptions in the parking-lot cases to extort money from defendants by telling them it would be cheaper to settle with him for thousands of dollars than to spend many thousands more defending a lawsuit.

<u>Respondent made false claims for attorney's fees</u>

18.    Respondent repeatedly certified to the court false claims for attorneys' fees of at least $5,000.

19.    Respondent had AID investigators conduct investigations before filing any of the parking-lot cases.

20.    The AID investigators had no expertise except the ability to take measurements with a yard stick, with a level, and with a slope measurement tool.

21.    The AID investigators would take photographs of the parking lots and make a notation on whether the photograph showed a particular violation ("the investigative report").

22.    On information and belief, the investigators were paid $2 for each investigative report.

23.    Respondent relied upon the investigative reports to determine if there were ADA or AzDA violations.

24.    Respondent did not know who the people were who actually took the photographs and flagged the ADA or AzDA violations.

25.    Respondent knew that some of the AID investigators were individuals hired from Craigslist.

26.    Respondent did not know how the instruments the AID investigator's used to take the photographs worked and he had no expertise regarding the instruments.

27.    Respondent reviewed the investigative report prepared by AID investigators.

28.    If Respondent determined there was a violation he would prepare a complaint, sign it, and file it after Mr. Ritzenthaler reviewed it.

29.    The process described in 27 and 28 above took Respondent approximately 30 minutes per complaint to complete.

30.    In some of the parking-lot cases where Respondent demanded $5,000 for attorney's fees, he sued dirt parking lots.

31.    In some of the parking-lot cases where Respondent demanded $5,000 for attorney's fees he alleged the businesses were public lodgings, when they were not.

32.    Respondent's fee agreements indicated that the sole source of any monetary payment would come from individual defendants.

33.    Respondent misrepresented that he charged his clients a flat fee of $5,000 in every case, when he actually worked for free under an arrangement with AID.

34.    Respondent paid most of the attorney's fees collected directly to AID.

35.    In the state court parking-lot cases alone, Respondent collected approximately $1.2 million dollars, mostly consisting of attorney's fees.

36.    Respondent sought attorney's fees of at least $5,000 under ARS § 41-1492.09(F), even though that section of the statute refers to reasonable attorney's fees.

37.    In some of the parking-lot cases that ended in default, Respondent would request the entire $5,000 fee despite not having performed work to justify the fee.

### Respondent made false claims for monetary damages

38.    Respondent perpetrated a fraud on the court by repeatedly certifying to the court false claims for monetary damages of at least $5,000.

39.    On every complaint Respondent signed, he falsely verified that the demand for monetary damages was well grounded in fact.

40.    Respondent knew that recovering damages under the ADA or AzDA was speculative.

41.    Respondent knew that any damage award would be largely nominal.

42.    Respondent knew that damages in the parking-lot cases were emotional rather than economical.

43.    Respondent knew that neither AID nor Mr. Ritzenthaler had ever personally visited any of the properties they sued.

44.    Respondent knew that he could extort funds from parking-lot defendants just by filing the lawsuit because they would be compelled to settle with him which would cost less than defending against the lawsuit.

### Respondent's attempts to "judge shop."

45.    *AID LLC, and Ritzenthaler vs. Gemini Business Park* (CV2016-090503) ("*Gemini*") was one of the state court parking-lot cases filed by Respondent.

46.    On March 30, 2016, attorney Clint Goodman ("Mr. Goodman") on behalf of *Gemini*, filed a motion to dismiss and request for sanctions ("motion to dismiss").

47.    Mr. Goodman argued in the motion to dismiss that Respondent's serial litigation was similar to the behavior in *Molski v. Evergreen Dynasty Corp*, 500 F.3d 1047 (9th Cir. 2007):

> We acknowledge that Molski's numerous suits were probably meritorious in part — many of the establishments he sued were likely not in compliance with the ADA. On the other hand, the district court had ample basis to conclude that Molski trumped up his claims of injury. The district court could permissibly conclude that Molski used these lawsuits and their false and exaggerated allegations as a harassing device to extract cash

settlements from the targeted defendants because of their noncompliance with the ADA. Id. at 1062.

48.    Attorney Lindsay Leavitt ("Mr. Leavitt") represented thirteen separate defendants in the state court parking-lot cases.

49.    On July 15, 2016, Mr. Leavitt moved to have the thirteen parking-lot cases "filed by Plaintiffs be deemed related and transferred to [Judge Talamante] for all further proceedings."

50.    The lead case of those Mr. Leavitt sought to have consolidated was *AID and Ritzenthaler vs. 1639 40th Street, LLC*, CV2016-090506 ("*1639 40th Street")*; Judge Talamante was the assigned judge.

51.    On August 12, 2016, Judge Talamante granted *Gemini's* motion to dismiss because plaintiffs had not alleged an actual injury in fact or an intent to return to the defendant's property.

52.    Also on August 12, 2016, Respondent filed two other court documents:

      a.    A notice of voluntary dismissal with prejudice in *1639 40th Street* which was assigned to Judge Talamante, and

      b.     Plaintiff's opposition to Mr. Leavitt's motion to deem cases related and request transfer in *AID and Ritzenthaler vs. Ranch Auto Center LLC*, CV2016-004548 ("*Ranch Auto*"), assigned to Judge Gerlach.

53.    Respondent argued that because he dismissed the complaint in *1639 40th Street*, that case was no longer the earliest case filed under the applicable rules, and Judge Talamante must decline to hear Mr. Leavitt's motion, effectively transferring the remaining cases to Judge Gerlach, the assigned judge on *Ranch Auto*.

54.    On August 22, 2016, Respondent filed a Rule 42(f)(1)(A) notice of change of judge as a matter of right in *1639 40th Street*.

55.    Judge Talamante set a telephonic status conference for August 25, 2016 to discuss the motions and the dismissal.

56.    On August 23, 2016, Judge Talamante entered a minute entry order "directing the parties not to file any additional Motions, Responses or Replies in this case until further order of the Court. All of the prior Motions will be discussed at the hearing and/or argued."

57.    On August 24, 2016, the AG's office filed its motion to intervene for a limited purpose ("motion to intervene") and motion to consolidate the cases for limited purpose ("motion to consolidate") in case *1639 40th Street*.

58.    The AG's motion to consolidate states in part: "If these cases are consolidated, and the State is permitted to intervene as a limited purpose defendant, the State intends to file a motion seeking dismissal of all consolidated cases on the basis of threshold questions of law and facts common to all consolidated cases, including, but not limited to, Plaintiffs' lack of standing."

59.    In an August 25, 2016 minute entry order, Judge Talamante granted consolidation of the files as requested by the AG.

60.    Judge Talamante also found that Respondent's notice of voluntary dismissal in *1639 40th Street* was null and void and denied Respondent's notice of change of judge as a matter of right ("notice of change of judge").

61.    On September 6, 2016, Dennis I. Wilenchik ("Mr. Wilenchik") filed a notice of limited appearance on behalf of AID/Ritzenthaler for the "purpose of responding to the State's intervention in this matter and related filings."

62.    On September 9, 2016, Judge Talamante granted the AG's motion to intervene.

63.    On September 9, 2016, Mr. Wilenchik filed a motion to stay in *1639 40th Street* because plaintiffs were appealing the denial of Respondent's notice of change of judge.

64.    On September 13, 2016, the AG's office filed its opposition to the motion to stay.

65.    In its opposition to the stay, the AG's office accused Respondent of judge shopping based on the prior unfavorable ruling by Judge Talamante in *Gemini*.

66.    Respondent had filed over a thousand cut-and-paste complaints and he was able to see which judges would dismiss the plaintiffs' claims; he could then move to change the judge as a matter of right, which is what he did in *1639 40th Street*.

67.    The *Gemini* complaint and the *1639 40th Street* complaint were filed the same day with exactly the same content other than Defendant's name and address.

68.    In a September 22, 2016 minute entry order, Judge Talamante stated

in part:

> As a preliminary matter, it should be noted that the Court did
> not rely on the holding in *Williams v Superior Court* 190 Ariz.
> 80 (App. 1997) in rejecting Plaintiffs' Rule 43(f) Notice of
> Change of Judge but the policy discussion in the opinion
> prohibiting judge-shopping after a party discovers the trial
> court's viewpoint on a significant issue. Plaintiffs' arguments
> to the contrary are disingenuous. In the Court's estimation, the
> so called "other actions" filed by Plaintiffs were identical in the
> legal issues raised and ruled on in this matter. (Errors in the
> original).

69.    On September 23, 2016, Judge Talamante granted the motion to

consolidate and, except as to Plaintiffs and the AG's office, stayed the underlying

consolidated cases (the "consolidated cases").

### Motion to Amend the Complaint/Notice of Errata

70.    On October 19, 2016, Respondent's co-counsel Mr. Wilenchik, filed

a motion for leave to file amended complaint in *1639 40th Street et al.*, the

consolidated cases ("motion for leave to amend"), seeking to add new plaintiffs

Jason Matthew Thomas and Danny Taylor Thomas.

71.    On October 27, 2016, Respondent filed a notice of errata ("the notice of errata") to purportedly correct the proposed amended complaint that was attached to the motion for leave to amend.

72.    Respondent filed the notice of errata to provide a "corrected version" of the proposed amended complaint, which substitutes the name of Fernando Gastelum ("Mr. Gastelum") for Danny Taylor Thomas and Jason Thomas as named plaintiffs.

73.    On October 28, 2016, the AG's office opposed the amendments that sought to add allegations about events post-dating the original complaints.

74.    The allegations relate to proposed new plaintiff Mr. Gastelum:

> Under the guise of "clarifying" their standing to bring the Consolidated Complaints, Plaintiffs were attempting to bring claims based largely on new inspections by a new plaintiff with a disability, performed months after the original complaints were filed and perhaps weeks after the UAC [universal amended complaint] was filed.  Under principles of standing, such an amendment would be improper.  If (as the State contends) Plaintiffs lacked standing to bring the original complaints, they also lack standing to bring an amended complaint based on events related to other Plaintiffs that occurred months after the original complaints were filed.

75.    Respondent improperly attempted to add Mr. Gastelum as a new plaintiff in the state court parking-lot cases through a notice of errata.

76.    Mr. Gastelum was hired to do re-inspections of the parking lots for AID in the parking-lot cases for the purpose of becoming the plaintiff in those cases.

77.    Mr. Gastelum was unaware that on October 27, 2016, Respondent had attempted to add him as a plaintiff in the AID cases.

78.    On November 28, 2016, the court denied Plaintiffs' motion for leave to amend because it sought to add a new party and to allege facts occurring subsequent to the facts alleged in the complaints against the consolidated Defendants.

79.    After the AID parking-lot cases were dismissed, Respondent started another scheme where he paid Mr. Gastelum $350 per case to participate as the plaintiff in the hotel cases, as discussed in Count Three.

### Failure to respond to the State Bar

80.    On June 26, 2018, the State Bar sent a letter to Respondent's counsel at the time, Messrs. Geoffrey Sturr and Josh Bendor, along with 20 documents;

Respondent was asked for responses to seven detailed questions relating to the 20 documents.

81.    Respondent was asked to provide the information no later than July 20, 2018; Respondent failed to provide the requested information by the deadline.

82.    On August 9, 2018, the State Bar sent Respondent's counsel another email asking for a response no later than August 16, 2018.

83.    On August 11, 2018, Messrs. Sturr and Bendor withdrew from all pending screening matters and told the State Bar that Respondent would be responding to the requests for information.

84.    On August 29, 2018, the State Bar asked Respondent if he had sent his response to the June 26, 2018 letter.

85.    On September 4, 2018, Respondent was informed that bar counsel and her secretary had not received any responses to the June 26, 2018 letter.

86.    Respondent was reminded that failure to cooperate in a State Bar investigation is separate grounds for discipline and cited to ER 8.1 and Rule 54.

87.    Respondent was given until September 7, 2018 to provide the requested information; Respondent failed to do so.

88.     Based upon the foregoing Respondent violated Rule 42, ERs 1.5(a), 3.1, 3.3(a), 4.1(a), 4.4(a), 8.1, 8.4(c) and (d), Rule 54(d)Ariz. R. Sup. Ct.

## COUNT TWO (File no. 17-3925/State Bar)

89.     Paragraphs 3 through 44 are incorporated herein.

90.     On December 8, 2016, the AG's Office filed a motion to dismiss and motion for judgment on the pleadings in the consolidated parking-lot cases.

91.     On March 27, 2017, the AG's Office filed a motion for Rule 11 sanctions, motion for non-Rule 11 sanctions, motion in limine and motion for evidentiary hearing.

92.     On April 17, 2017, attorney Thomas Horne entered his appearance on behalf of AID, Mr. Ritzenthaler, and Respondent.

93.     On April 27, 2017, the court dismissed all of the consolidated parking-lot cases for lack of standing.

94.     On May 25, 2017, Respondent appealed the dismissal of the consolidated parking-lot cases.

95.    On August 8, 2017, the court granted the AG's request for an evidentiary hearing on Rule 11 and non-Rule 11 sanctions and set the hearing for November 20 and 21, 2017.

96.    Mr. Horne, on behalf of Respondent, Mr. Ritzenthaler, and AID, engaged in settlement discussions with the AG's Office.

97.    On November 2, 2017, Mr. Horne sent an email to the Assistant Attorney General Brunn (Beau) W. Roysden III and attached a Ninth Circuit case; *Civil Rights Education and Enforcement Center v. Hospitality Properties Trust ("CREEC")* No. 16-16269, 867 F.3d 1093 (9th Cir. Aug. 9, 2017), indicating that the case was important and the parties needed to discuss it.

98.    Between November 3 and 6, 2017, Respondent, AID, Mr. Ritzenthaler, and the AG's office signed and filed a proposed order approving stipulation between said parties, awarding sanctions against certain plaintiffs, and returning cases to originating divisions.

99.    The Court approved the parties' agreement and entered its order on November 14, 2017.  Under the agreement:

a.   Respondent and his clients avoided the evidentiary hearing on sanctions set for November 20 and 21, 2017.

b.   Respondent agreed to withdraw the appeal of the dismissal of the consolidated parking-lot cases.

c.   The AG's office obtained a "consent to the entry of judgment – as a sanction pursuant to Rule 11, A.R.S. §12-349, and the inherent power of the Court – against [plaintiffs] in favor of the Consolidated Defendants in each of the consolidated cases for the defendant's reasonable attorneys' fees and costs (if any) in defending the case."

d.   Plaintiffs were ordered to pay the AG's Office $25,000 for an ADA and AzDA education and compliance fund.

e.   Plaintiffs were permanently enjoined from filing as plaintiff any actions in the state courts that allege violations of the ADA or AzDA.

f.   The State was to be dismissed as a defendant after receiving the payment of the $25,000, "other than [from *1639 40th Street*] CV

2016-090506 for purposes of enforcing this order (if necessary)."

g.  "The consolidated cases are returned to their originating divisions for the defendant'(s) in each case to file, if they choose, an application for reasonable attorneys' fees and cost (if any) against Plaintiff's in defending their case."

100.  On December 14, 2017, the State Bar received a bar charge from the AG's office.

101.  Assistant Attorney General Matthew Du Mee, heard a recording of a hearing that took place in *AID et al. v. Tarrian Properties LLC,* CV2016-090543 ("*Tarrian*").

102.  In that hearing, Respondent made a number of misrepresentations in an effort to mislead the Court and evade sanctions.

103.  Respondent made the following statement (the "statement") about Judge Talamante's order in the consolidated cases:

> I would also like to point out that counsel is correct in asserting that a new ruling has been issued by Judge Talamante, in which Judge Talamante, to the credit of both Judge Talamante and to the credit of the Attorney General, recognized that the

decisions of dismissal were wrong and that all applications for sanctions and attorneys' fees that were filed in that case were wrong, because Plaintiff had been correct all along. And on that basis, not only did Judge Talamante issue the order accepting the stipulation between the Attorney General and myself, but it specifically stated that any continuation of prosecution of Plaintiffs or of Plaintiffs' lawyers, namely, myself, for violation of any Arizona statutes would be improper and would not serve the ends of justice. And therefore he dismissed all sanctions motions with prejudice against the Plaintiffs and the Plaintiffs' attorneys. And again, I want to give the Attorney General a lot of credit for recognizing that [inaudible] the recent decision in the Ninth Circuit court of appeals that, frankly Your Honor, we were correct all along and defendants were wrong all along.

104. Respondent's statement is not truthful because Judge Talamante's order did not recognize that the decisions of dismissal were wrong.

105. Respondent's statement that Judge Talamante "dismissed all sanctions motions with prejudice against the Plaintiffs and the Plaintiffs' attorneys" is false and is a misrepresentation to the court.

106. Respondent's statement that Judge Talamante's order recognized "that all applications for sanctions and attorneys' fees that were filed in that case were wrong, because Plaintiff had been correct all along," is false and is a misrepresentation to the court.

107. Respondent's statement that Judge Talamante's order "specifically stated that any continuation of prosecution of Plaintiffs or of Plaintiffs' lawyers, namely, [Respondent], for violation of any Arizona statutes would be improper and would not serve the ends of justice," is false and a misrepresentation to the court.

108. In approximately eight cases, defendants in the returned cases did file applications for attorney's fees (the "applications"), and many also requested sanctions against Respondent.

109. Based on these applications, Respondent began filing Rule 60 motions with the individual judges once the cases were returned to their original divisions, requesting relief from judgment.

110. Judge Talamante had retained jurisdiction over *1639 40th Street*, "for the purpose of enforcing this order" and the AG's office was dismissed from all of the consolidated cases except for *1639 40th Street* "for the purpose of enforcing this order (if necessary)."

111.    On February 2, 2018, the AG's office filed an application for order to show cause ("the OSC") in *1639 40th Street* alleging that Respondent violated Judge Talamante's November 14, 2017, order.

112.    In three of the Rule 60 motions Respondent filed, the requested relief was to vacate Judge Talamante's dismissal of the consolidated ADA/AzDA cases.

113.    The OSC hearing was set for April 13, 2018.

114.    On April 5, 2018, Respondent filed a motion to continue the OSC hearing.

115.    On April 9, 2018, the Court:

    a.    denied Respondent's motion to continue the hearing,

    b.    vacated the April 13, 2018 return hearing,

    c.    denied plaintiffs cross motion for sanctions against "AG Brnovich,"

    d.    directed Respondent to affirm that Rule 60 motions were only filed in eight of the previously consolidated cases, and

    e.    ordered Respondent to not file any additional Rule 60 motions.

116.    In a May 14, 2018 minute entry order, Judge Talamante stated in part:

Notwithstanding that Plaintiff was seeking relief from a judgment issued by this Division in the consolidated case on April 27, 2017, Plaintiff improperly filed its Motion for Relief in the Defendant's individual cases. [...] First, Plaintiff filed its Motion without giving notice to the State of Arizona, ex. Rel. Mark Brnovich, the Defendant/Intervenor and did not provide a copy to the Defendant/Intervenor. The Court finds this to be a serious due process violation and is a sufficient basis for denial of the Motion. Plaintiff and the Defendant/Intervenor negotiated a settlement and submitted a Stipulated Order to the Court that resolved the Plaintiff's appeal of the April 27, 2017 Judgment. Not providing the Defendant/Intervenor with direct notice of the Motion for Relief is inexcusable.

117. On June 26, 2018, the State Bar sent a letter to Respondent's counsel at the time, Messrs. Sturr and Bendor, along with 26 documents; Respondent was asked to respond to four questions relating to the 26 documents.

118. Respondent was asked to provide the information requested in the June 26, 2018 letter, no later than July 20, 2018. Respondent failed to provide the requested information by the deadline.

119. On August 9, 2018, the State Bar sent Respondent's counsel another email asking for a response no later than August 16, 2018.

Page 25 of 69

120. On August 11, 2018, Messrs. Sturr and Bendor informed the State Bar they were withdrawing from all pending screening matters and said that Respondent would respond to the State Bar's request for information.

121. On August 29, 2018, the State Bar asked Respondent if he had sent his response to the June 26, 2018 letter.

122. On September 4, 2018, Respondent was informed that bar counsel and bar counsel's secretary had not received any responses to the June 26, 2018 letter. Respondent was reminded that failure to cooperate in a State Bar investigation is separate grounds for discipline and cited to ER 8.1 and Rule 54.

123. Respondent was given until September 7, 2018 to provide the requested information. Respondent failed to do so.

124. Based upon the foregoing Respondent violated Rule 42, ERs 3.1, 3.3(a), 3.4(c), 4.1(a), 4.4(a), 8.1(b), 8.4(c) and (d), and Rule 54(d), Ariz. R. Sup. Ct.

### COUNT THREE (File no. 18-1751/State Bar)

125. Paragraphs 3 through 44 are incorporated herein.

126. On September 5, 2017, US District Court Judge Neil V. Wake issued an order in *MidFirst Bank* dismissing Respondent's federal court parking-lot complaint ("dismissal order").

127. The lawsuit alleged minor violations of the ADA and the AzDA.

128. The lawsuit contained vague, non-specific allegations of ADA or AzDA parking sign violations ("parking-lot case").

129. The court noted in its dismissal order that Respondent and plaintiffs had "pursued upwards of 160 cookie-cutter lawsuits in federal court ...."

130. The court also strongly suggested that sanctions were appropriate, concluding that Respondent's "extortionate practice ha[d] become pervasive," and that he had engaged in "ethically suspect tactics."

131. The court also denied Respondent's request to remand the case to the state court, stating that "it is certain that Arizona courts would not waive the standing requirement and empower [Respondent's] unethical extortion of unreasonable attorney's fees from defendants."

132. On December 5, 2017, the AG's office filed a Motion to Intervene in *MidFirst Bank*.

133.  In its motion, the AG explained the basis for its request to intervene, which includes, but is not limited to Respondent:

      a.    misrepresenting and drastically exaggerating his actual and/or reasonable fees in determining a minimum of $5,000 in each one of his cookie-cutter complaints;

      b.    misrepresenting plaintiffs' actual damages in several suits, seeking $5,000 or more without any good-faith basis for doing so; and

      c.    filing numerous suits to extort settlements from defendants, improperly relying on the cost of litigation to coerce settlements.

### Gastelum Cases

134.  In 2016, Respondent began filing new ADA/AzDA lawsuits in the federal court with a new plaintiff, Fernando Gastelum.

135.  One such lawsuit is *Fernando Gastelum vs. Vendata* (Vendata). Unlike the parking-lot cases, Mr. Gastelum is the sole plaintiff and the complaints

allege violations related to hotel lodgings and hotel parking lot violations ("the hotel cases").

136.   On January 23, 2018, the AG's office filed a notice of supplemental evidence in support of its motion to intervene ("the supplemental evidence").

137.   The supplemental evidence was a copy of a settlement agreement and release, and excerpts from Mr. Gastelum's deposition, which was taken on November 17, 2017 in the *Vendata* case.

138.   Vendata paid Respondent $18,750 in "costs, expenses, compensatory damages, punitive damages, attorney's fees and equitable damages" to settle the case.

139.   Mr. Gastelum, as the plaintiff, received a payment of $350 from the *Vendata* settlement.

140.   As of November 17, 2017, Mr. Gastelum had received approximately $1,500 from other cases that Respondent had settled.

141.   Mr. Gastelum did not know the settlement amounts for the cases that Respondent settled and for which he was the named plaintiff.

142.   In plaintiff's application for fees, costs and expenses in *Gastelum v. Pride Hospitality, Inc.* ("fee application"), Respondent asked the court to award $18,330 in attorney's fees, $1,598.60 in costs, and $1,362.40 "[c]ommon pre-filing due diligence investigations allocated to this case…"

143.   In the ADA hotel cases when an offer of judgment had been accepted, Respondent filed applications for fees, costs and expenses.

144.   In the fee applications filed by Respondent in the Gastelum federal court hotel cases, each had identical terms including:

   a.   Respondent's hourly rate is $650.00 per hour,

   b.   Respondent represented Plaintiff pro bono, but can recover attorney's fees from the defendant at the rate of $650 per hour.

   c.   Respondent had unfettered discretion to settle the lawsuit, but the client's consent is required if the settlement amount is less than $350; and

   d.   one expense under "client expenses" was paying Mr. Gastelum $350 for mileage, time effort, reviews, collection of evidence, and other expenses as required.

Page 30 of 69

145. There was minimal difficulty and risk to Respondent in taking on these cases, as he had filed many similar cases against other defendants.

146. Respondent was not precluded from handling other work and he continued to file ADA lawsuits in the federal court.

147. There were no significant time constraints imposed on Respondent by Mr. Gastelum for resolution of the cases.

148. Respondent's rate of $650/hour is unreasonable because the cases Respondent claims gave him the extensive experience in ADA/AzDA litigation, were basically all dismissed.

149. Respondent charged $650 per hour for performing many tasks that involved purely administrative work such as issuing a summons, receiving and filing a proof of service of process, and entering time entries.

150. Mr. Gastelum received no benefit from the services provided by Respondent because he received only $350 per case, regardless of the amount of attorney fees awarded.

151. As of May 3, 2018, Respondent had collected approximately $384,000 in attorney's fees and costs in the Gastelum litigations.

152.    After May 3, 2018, Respondent expected to collect approximately an additional $288,000 in attorney's fees and costs in the Gastelum litigations.

153.    The settlement amounts in the Gastelum litigations had no connection to Mr. Gastelum's actual monetary damages.

154.    The settlement amounts in the Gastelum litigations had no connection to the legal services Respondent provided.

155.    On May 25, 2018, Judge G. Murray Snow ordered a consolidated hearing to consider Mr. Gastelum's standing in the hotel cases before him.  Mr. Gastelum failed to meet the requirements for standing in every case.

156.    Judge Snow concluded that Respondent and Mr. Gastelum were engaged in a "joint enterprise" to file suits against Phoenix area lodgings that they believe to be out of compliance with ADA standards.

157.    The suits were filed without reference to whether Mr. Gastelum actually intended to make future visits to those facilities or even if he potentially might be deterred from future visits by the type of non-compliance.

158.    Judge Snow dismissed all of the Gastelum hotel cases before him, based on the lack of standing.

159. Since Judge Snow's ruling, Respondent has filed at least four more ADA hotel cases in the federal court.

160. Respondent's scheme, or "joint enterprise" with Mr. Gastelum, put an unmanageable strain on the court, court personal, and court resources.

161. Based upon the foregoing Respondent violated Rule 42, ERs 1.2, 1.4, 1.5(a), 3.1, 8.4(c) and (d), Ariz. R. Sup. Ct.

### COUNT FOUR (File Nos. 16-0334 et al.)[2]

162. Paragraphs 3 through 44 are incorporated herein.

163. This count includes 15 complainants that were served with nearly identical ADA/AzDA complaints; all are Arizona small business owners.

164. All of the verified complaints contain vague, non-specific allegations of ADA or AzDA violations, such as inadequate parking signage, inadequate number of spaces, or insufficient disbursement of spaces.

165. All of the lawsuits contain demands for attorney's fees in an amount of no less than $5,000, regardless of how much time Respondent spent on an individual case.

---

[2]16-1309, 16-1987, 16-2069, 16-2209, 16-2346, 16-2595, 16-2602, 16-2604, 16-2667, 16-2741, 16-2788, 16-2793, 16-2800, 16-3689.

166.   Respondent was asked to provide an accounting of the time he spent on each case below, but failed to do so.

167.   All lawsuits requested the closure of the Complainants' businesses until Complainants fully complied with the ADA and/or the AzDA.

168.   The damages claimed, usually $5,000, were not supported by allegations in the complaints.

169.   Respondent failed to identify any disabled person who actually visited the Complainants' businesses.

170.   On September 26, 2016, most of the lawsuits were consolidated with other ADA/AzDA cases before Judge Talamante in CV2016-090506.

171.   On April 27, 2017, all of the consolidated cases were dismissed.

**A.    File no. 16-0334 - Complainant: Joann Burgess, opposing party**

172.   Paragraphs 3 through 44 are incorporated herein.

173.   Complainant Joann Burgess ("Burgess") owns a property at 3620 East Indian School Road that she rented to a tenant.

174.   The tenant hired a licensed contractor, acquired all the necessary permits, and passed all inspections.

175.  The contractor and the city both missed a small "van accessible" sign that was needed below the handicap sign on a parking space.

176.  On December 23, 2015, Respondent filed a cut-and-paste complaint alleging that the property had improper or non-compliant ADA parking lot signage, or inadequate number of spaces, or insufficient disbursement of spaces. *Vicki Barr v. Friedman-Indian School LLC*, CV2015-012099 ("*Friedman-Indian School LLC*").

177.  The tenant immediately put up the missing sign, but the complaint indicated attorney's fees needed to be paid, even if the problem was corrected.

178.  Other than the name of his client, Vicki Barr ("Ms. Barr") Respondent provided no specific details regarding the plaintiff or her particular disability.

179.  Respondent did not provide any information regarding how the absence of the sign personally impacted his client.

180.  Respondent took advantage of the fact that it would have cost Burgess more to challenge the lawsuit than it would to pay Respondent's attorney's fees.

181. In a January 15, 2016, letter to Burgess' counsel, Mr. Allen, Respondent wrote that his "client is entitled to fees whereas your client will not be."

182. Respondent says that "the quoted portion of the letter is accurate. It referred exclusively to the federal ADA and was made in reliance on the Ninth Circuit's interpretation of that statute."

183. Respondent did not file the *Friedman-Indian School LLC* lawsuit in federal court; the action was filed in state court.

184. Respondent settled the case for $4,750.00.

185. Respondent's fee agreement with Ms. Barr contains the following:

    a.    it is an agreement to provide pro bono public services,

    b.    client authorizes attorneys to settle cases with a provision that all costs paid and attorney's fees incurred shall be paid directly to the attorneys,

    c.    all damages shall be paid directly to client,

    d.    client's damages will vary with the type of public accommodation denied to the client,

    e.    damages to clients will encompass primarily emotional damages. Emotional damages may be difficult to ascertain,

    f.    "Client advises Attorney's that emotional damages for failure to provide equal access to Client shall be no more than $500.00 per each case,"

    g.    "Client specifically authorizes Attorneys to settle the damages part at $500.00 per case unless otherwise advised by e-mail prior to settlement," and

    h.    "Attorney is authorized to settle any case at any amount provided that Client is paid damages in the sum of $500.00 from the settlement amount."

186.    Respondent settled with Burgess for $4,750.

187.    The check for the $4,750 was dated January 28, 2016, and was made payable to Respondent's trust account.

188.    Respondent was required to deposit the settlement check into his trust account, but he did not.

189.   In seven of the cases Respondent settled for Ms. Barr, he deposited the settlement checks into his operating account.

190.   In two of the cases he settled for Ms. Barr he deposited the checks into his trust account.

191.   Respondent paid Ms. Barr, $500 per case; or a total of $4,500 for nine cases.

192.   Based upon the foregoing Respondent violated Rule 42, ERs 1.2, 1.5(a), 1.15(a), 3.1, 8.4(d), and Rule 43, Ariz. R. Sup. Ct.

**B.    File no. 16-1309 - Complainant: Mike Wilson, opposing party**

193.   Paragraphs 3 through 44 are incorporated herein.

194.   Complainant Wilson ("Wilson") owns a condominium in a building where the parking lot is controlled by a condominium association.

195.   On March 24, 2016, Respondent filed a cut-and-paste complaint alleging that Wilson's property had improper or non-compliant ADA/AzDA parking lot signage, or inadequate number of spaces, or insufficient disbursement of spaces; *Advocates for Individuals with Disabilities, LLC and David Ritzenthaler v. SpongeBob 8120 LLC*, CV2016-092241 (*"SpongeBob"*).

196. Wilson was not given a chance to make any corrections to the property before Respondent filed the complaint.

197. By letter dated March 14, 2016, Respondent provided *SpongeBob's* statutory agent with the verified complaint, summons, certificate of arbitration, and discovery requests.

198. Wilson sent a certified letter to Respondent, using the address listed on the complaint, advising that he did not control the parking lot and was wrongly named as the defendant.

199. The certified letter was returned as undeliverable.

200. Wilson hired attorney Clint G. Goodman to represent him in the lawsuit, and Mr. Goodman filed a motion to dismiss.

201. Respondent did not respond to the motion and Mr. Goodman filed a motion to expedite ruling.

202. The court granted Wilson's motion to dismiss and Wilson's attorney filed for attorney's fees and costs.

203. On September 12, 2016, the court granted Wilson $288.85 in costs, which was paid by Respondent's client David Ritzenthaler on May 31, 2017.

204. On June 7, 2016, Respondent filed another cut-and-paste verified complaint alleging that another of Wilson's properties had improper or non-compliant ADA/AzDA parking lot signage; *Advocates for Individuals with Disabilities Foundation, Inc. v. 1255 Baseline LLC,* CV 2016-007046 (*"Baseline"*).

205. By letter dated June 7, 2016, Respondent provided *Baseline's* statutory agent with the verified complaint, summons, certificate of arbitration, and discovery requests.

206. Respondent's preparation and review of the complaint was minimal and deficient. The first paragraph of the complaint indicates that it is paragraph 47 and the title indicates it was filed in the United States District Court, when it was filed in Maricopa County Court Superior Court.

207. On August 9, 2016, Respondent filed a third lawsuit alleging that another of Wilson's properties had improper or non-compliant ADA/AzDA parking lot signage, or inadequate number of spaces, or insufficient disbursement of spaces. *Advocates for Individuals with Disabilities Foundation, Inc. v. Mesa Ridge Business Park 1, LLC,* CV 2016-011251, (*"Mesa Ridge"*).

208. By letter dated July 25, 2016, Respondent provided *Mesa Ridge's* statutory agent with the verified complaint, summons, certificate of arbitration, and discovery requests.

209. Respondent's preparation and review of the complaint was minimal and deficient. The complaint is almost exactly the same as the Amended Verified Complaint in the *Baseline* lawsuit, with the only difference being the named defendant, the date the tester visited the property, the number of violations found, and one footnote on page 7.

210. The Mesa Ridge complaint contains the same mistakes as the *Baseline* complaint. In paragraph 4(e) of both complaints, it states: "Because only injunctive and declaratory relief is requested, participation in the action by individual disabled individuals is not required"; compared to paragraph 42 in both complaints, which is a demand for damages of no less than $5,000.

211. On September 26, 2016, the three lawsuits were consolidated with other ADA/AzDA cases before Judge Talamante.

212. Based upon the foregoing Respondent violated Rule 42, ERs 1.5(a), 3.1, 8.4(d), Ariz. R. Sup. Ct.

C.    **File no. 16-1987 - Complainant: Dan Hofstadter, opposing party**

213.    Paragraphs 3 through 44 are incorporated herein.

214.    Complainant Hofstadter ("Hofstadter") managed Sol Hoff Company, LLC, which owned the Harmon Ranch Plaza in Chandler.

215.    On May 3, 2016, Respondent filed a cut-and-paste complaint alleging that the property had improper or non-compliant ADA/AzDA parking lot signage, or inadequate number of spaces, or insufficient disbursement of spaces; *Advocates for Individuals with Disabilities, LLC and David Ritzenthaler v. Sol Hoff Company LLC*, CV 2016-004654.

216.    Hofstadter was not given a chance to make any corrections to the property before Respondent filed the complaint.

217.    By letter dated April 21, 2016, Respondent provided Hofstadter with the verified complaint, summons, certificate of arbitration, and discovery requests.

218.    This was the second time Hofstadter had been sued by Respondent. The first lawsuit targeted Hofstadter's property at Guadalupe and McClintock in Tempe.

219. Hofstadter's buildings are of recent construction and were compliant with the ADA/AzDA at the time of occupancy.

220. On July 5, 2016, Respondent sent Hofstadter's attorney a letter offering to settle the matter for $7,500.

221. Hofstadter's attorney advised him to settle with Respondent, as it would be more cost efficient than going to court.

222. Hofstadter settled the case on September 9, 2016, for $3,700.

223. The $3,700 check was made payable to *Advocates for Individuals with Disabilities, LLC*.

224. Based upon the foregoing Respondent violated Rule 42, ERs 1.5(a), 3.1, 8.4(d), Ariz. R. Sup. Ct.

**D.    File no. 16-2069 - Complainant: Delfor Alvarez, opposing party**

225. Paragraphs 3 through 44 are incorporated herein.

226. Complainant Alvarez ("Alvarez") owns one office condo within the 40,000-square-foot Gilbert Mercy Medical Center.

227. Alvarez's business is a State Farm Insurance office.

228.   The parking lot contains numerous ADA/AzDA compliant spaces for handicapped patrons that are clearly marked and accessible.

229.   Alvarez did not design the complex, nor does he have a legal right to alter the exterior of the building or its parking facilities.

230.   On June 7, 2016, Respondent filed a cut-and-paste complaint alleging that the property had improper or non-compliant ADA/AzDA parking lot signage, or inadequate number of spaces, or insufficient disbursement of spaces; *Advocates for Individuals with Disabilities Foundation Inc. v. Delfor and Joann Alvarez,* CV 2016-007062.

231.   By letter dated June 7, 2016, Respondent provided Alvarez with the verified complaint, summons, certificate of arbitration, and discovery requests.

232.   Respondent's preparation and review of the complaint was minimal and deficient, and he erroneously alleges in the complaint that:

    a.   Alvarez has a history of failing to comply with the ADA/AzDA's mandate,

    b.   the property was not accessible to individuals with disabilities,

    c.   Alvarez's business offers public lodging,

d.    the complaint was filed in the District Court of Arizona.

233.    The complaint contains a request for attorney's fees of "no less than $5,000," and payment of costs and expenses, and monetary damages of "no less than $5,000."

234.    On June 21, 2016, Alvarez, after receiving the complaint, called Respondent and discussed the lawsuit.

235.    Alvarez followed up with an email to Respondent that same day, advising Respondent that he is not responsible for the common area parking lot.

236.    Alvarez told Respondent he should contact the management company about the allegations.

237.    Respondent assured Alvarez that he forwarded the email to his investigators to ensure that the allegations were appropriate under the current ADA and AzDA law.

238.    Respondent knew that the investigators,

a.    were untrained people hired from Craigslist to take pictures of businesses in specific zip codes, and

b.    were not knowledgeable about ADA and AzDA law.

239. On September 26, 2016, the lawsuit was consolidated with other ADA/AzDA cases before Judge Talamante.

240. Based upon the foregoing Respondent violated Rule 42, ERs 1.5(a), 3.1, 8.4(d), Ariz. R. Sup. Ct.

**E.    File no. 16-2209 - Complainant: Shanlyn Newman, opposing party**

241. Paragraphs 3 through 44 are incorporated herein.

242. Complainant Newman's ("Newman") business property is a chiropractic office and wellness center that has accommodated persons with disabilities on a daily basis for 16 years.

243. Newman learned after being sued that the handicap parking space needed to have a "Van Accessible" sign to be in compliance with the ADA and AzDA.

244. Newman would have made the appropriate alterations to the sign if she had been notified that it needed to be changed.

245. On May 10, 2016, Respondent filed a cut-and-paste complaint alleging that the property had improper or non-compliant ADA/AzDA parking lot signage, an inadequate number of handicapped parking spaces, or the handicapped

parking spaces were incorrectly disbursed; *Advocates for Individuals with Disabilities, LLC and David Ritzenthaler v. New Hillcrest LLC*, CV 2016-006614.

246. By letter dated May 4, 2016, Respondent provided Newman with the verified complaint, summons, certificate of arbitration, and discovery requests.

247. Respondent falsely alleges in the complaint that:

    a.    Newman has a history of failing to comply with the ADA/ AZDA's mandate, and

    b.    the property was not accessible to individuals with disabilities.

248. Newman hired attorney Cory Tyszka.

249. On June 1, 2016, Respondent sent Ms. Tyszka a settlement letter offering to settle the matter for $7,500.

250. Newman settled the case in June 2016 for $4,500. The check was made payable to AID.

251. On August 8, 2016, Respondent dismissed the complaint with prejudice.

252. Based upon the foregoing Respondent violated Rule 42, ERs 1.5(a), 3.1, 8.4(d), Ariz. R. Sup. Ct.

**F.    File no. 16-2346 - Complainant: Norma Perales, opposing party**

253.    Paragraphs 3 through 44 are incorporated herein.

254.    Complainant Perales ("Perales") is a member of the Ray Ranch condominium association, which is an office complex.

255.    Respondent filed a cut-and-paste complaint against the office complex and the individuals in the complex, seeking attorneys' fees of "no less than $5,000" as well as payment of costs and expenses; and monetary damages of "no less than $5,000."

256.    Complainant Perales' letter to the State Bar of Arizona reads as follows:

> Peter Strojnik Law firm has filled over 900 lawsuit to business and condominium associations in the last 6 months for ADA violations, he hopes most will settle for small amount to avoid exorbitant legal fees. The lawsuit presented to my association is poorly drafted does not indicate what violations, because they don't care because they can amend it if need it and they want people to settle. This is outrageous for small business and abuse of the system, we all happy to complain with any ADA regulations but we should not be made victims of unscrupulous lawyers for this (errors in original).

257.    On September 26, 2016, the lawsuit was consolidated with other ADA/AzDA cases before Judge Talamante.

258. Based upon the foregoing Respondent violated Rule 42, ERs 1.5(a), 3.1, 8.4(d), Ariz. R. Sup. Ct.

G.    **File no. 16-2595 - Complainant: Randy Shipley, opposing party**

259. Paragraphs 3 through 44 are incorporated herein.

260. On August 8, 2016, Complainant Shipley ("Shipley") received notice that a cut-and-paste complaint was filed against him regarding an ADA/AzDA violation. The complaint sought attorneys' fees of "no less than $5,000" as well as payment of costs and expenses; and monetary damages of "no less than $5,000." *Advocates for Individuals with Disabilities Foundation v. OOOC LLC*, CV2016-008790.

261. Shipley owns Deer Velley Auto Auctions. The address listed in Respondent's verified complaint is the back lot of the auction business where the cars to be auctioned are stored, along with other automotive parts; there is no public access to this lot and it is not open to the public.

262. Respondent falsely alleges in the complaint that:

    a.    Shipley has a history of failing to comply with the ADA/ AZDA's mandate,

b.     the property was not accessible to individuals with disabilities, and

c.     Shipley's business is a place of public accommodation.

263.   Shipley hired an attorney to represent him, and a motion to dismiss was filed on August 26, 2016.

264.   On September 26, 2016, the lawsuit was consolidated with other ADA/AzDA cases before Judge Talamante.

265.   Based upon the foregoing Respondent violated Rule 42, ERs 1.5(a), 3.1, 8.4(d), Ariz. R. Sup. Ct.

**H.     File no. 16-2602 - Complainant: Sharon Olsen, opposing party**

266.   Paragraphs 3 through 44 are incorporated herein.

267.   On May 11, 2016 Respondent filed a cut-and-paste complaint against Complainant Olsen ("Olsen") and her husband, personally, alleging that their property had improper or non-compliant ADA/AzDA parking lot signage, inadequate number of spaces, or insufficient disbursement of spaces; *Advocates for Individuals with Disabilities, LLC and David Ritzenthaler v. Sharon and James Olsen,* CV201600626.

268. Respondent sued Olsen and her husband individually, and not their corporation, because they own the property.

269. The complaint sought attorneys' fees and monetary damages of "no less than $5,000."

270. Olsen filed an answer on June 14, 2016.

271. A few days after Olsen received the lawsuit, she called and spoke with someone at Respondent's office, and informed that person that Respondent had previously represented her when he incorporated her business.

272. Olsen also consulted Respondent on other legal matters during the last several years.

273. On June 30, 2016, Fabian Zazueta, in-house counsel for AID, called and told Olsen that because Respondents had represented her before, Mr. Zazueta would be handling the litigation.

274. During that call, Mr. Zazueta offered to dismiss the lawsuit if Olsen agreed to be interviewed on camera saying that Respondent was involved in a good cause helping disabled people.

275.   Olsen has a disability; she has less than 60% use of her lungs and has had two knee replacements, and she told Mr. Zazueta that the offer appeared to be a form of bribery.

276.   Olsen took corrective action to fix the problems identified in the lawsuit.

277.   Within two weeks of receiving the lawsuit, Olsen hired a contractor and made the parking spaces the correct width and the ADA/AzDA signs were moved to the correct height.

278.   On September 26, 2016, the lawsuit was consolidated with other ADA/AzDA cases before Judge Talamante.

279.   Based upon the foregoing Respondent violated Rule 42, ERs 1.5(a), 3.1, 8.4(d), Ariz. R. Sup. Ct.

**I.    File no. 16-2604 – Complainant: Danny Green, opposing party**

280.   Paragraphs 3 through 44 are incorporated herein.

281.   Complainant Green ("Green") is a property manager for commercial property.    Respondent  sued  members  of  associations  individually  when Respondent should have filed suit against the property management.

282. In June 2016, members from Green's association began to get notices of the ADA/AzDA lawsuits.

283. Respondent filed four lawsuits against four separate members of the association: 1) HPGRP Holdings LLC; 2) Pathfinder Holdings LLC; 3) Pathfinder TRF Six LLC; and 4) Red Zebra LLC.

284. Respondent had to amend the complaints because of erroneous information in the original complaints.

285. By the time Respondent moved to file an amended complaint, the association had already made the necessary repairs.

### HPGRP Holdings LLC

286. Ms. Cairns is the owner of HPGRP Holdings LLC. She has owned the property since 2004 and the business has operated from the same location since that time.

287. On June 10, 2016, Respondent filed a cut-and-paste complaint alleging that the property had improper or non-compliant ADA/AzDA parking lot signage, inadequate number of spaces, or insufficient disbursement of spaces;

*Advocates for Individuals with Disabilities Foundation v. HPGRP Holdings LLC,*
CV2016-007084.

288.  Respondent falsely alleges in the complaint that:

    a.    Cairns has a history of failing to comply with the ADA/ AZDA's mandate,

    b.    the property was not accessible to individuals with disabilities,

    c.    Cairns business offers public lodging, and

    d.    the complaint was filed in the District Court of Arizona.

289.  The complaint also sought attorneys' fees of "no less than $5,000" as well as payment of costs and expenses; and monetary damages of "no less than $5,000."

290.  The parking lot is the responsibility of the association and the association installed van accessible signs within a week or two of receiving the lawsuit.

291.  On September 26, 2016, the lawsuit was consolidated with other ADA/AzDA cases before Judge Talamante.

## Red Zebra LLC

292.  Mr. Staheli is an Arizona attorney, and acted as his own attorney in the matter, although he was represented by the association's attorney, Mr. Fletcher.

293.  Mr. Staheli is the owner of Red Zebra LLC., which in turn owns suites 106 and 107.  Mr. Staheli has owned the property since 2004 and the business has operated from the same location since that time.

294.  Mr. Staheli's wife, Dr. Mahshid Asrari, operates a dental office from suite number 106, and they lease the other suite to Dr. Iris Sadowsky who operates a medical practice.

295.  On June 10, 2016, Respondent filed a cut-and-paste complaint alleging that the property had improper or non-compliant ADA/ AZDA parking lot signage, inadequate number of spaces, or insufficient disbursement of spaces; *Advocates for Individuals with Disabilities Foundation v. Red Zebra LLC,* CV2016007106.

296.  Mr. Staheli never received any notice about being non-compliant with the ADA/AzDA, prior to receiving the lawsuit.

297. Respondent falsely alleges in the complaint that:

    a.    Complainant has a history of failing to comply with the ADA/AzDA's mandate,

    b.    the property was not accessible to individuals with disabilities,

    c.    Staheli's business offers public lodging, and

    d.    the complaint was filed in the District Court of Arizona.

298. The parking lot is the responsibility of the association and the association installed van accessible signs within a week or two of receiving the lawsuit.

299. The complaint sought attorneys' fees of "no less than $5,000" as well as payment of costs and expenses; and monetary damages of "no less than $5,000."

300. The association's attorney, Mr. Fletcher, informed Respondent that he had filed the lawsuit against the incorrect party. The lawsuit against Red Zebra was subsequently dismissed.

301.  Mr. Staheli paid attorney fees in the amount of $541 to Mr. Fletcher. Mr. Staheli calculated that if he were to get paid for the work he did, his fee would be approximately $866.

302.  Based upon the foregoing Respondent violated Rule 42, ERs 1.5(a), 3.1, 8.4(d), Ariz. R. Sup. Ct.

**J.    File no. 16-2667 - Complainant: Seth Fink, opposing party**

303.  Paragraphs 3 through 44 are incorporated herein.

304.  Complainant Fink's ("Fink") company, SDF Investments LLC, is private property and is not open to the public.  The property is in an industrial condo near Deer Valley airpark, and is used for storage.

305.  Fink never received any notice about being non-compliant with the ADA/AzDA prior to lawsuit being filed.

306.  August 5, 2016, Respondent filed a cut-and-paste complaint alleging that the property had improper or non-compliant ADA/AzDA parking lot signage, inadequate number of spaces, or insufficient disbursement of spaces; *Advocates for Individuals with Disabilities Foundation v. SDF Investments, LLC,* CV2016-011143.

307.    Fink was alerted to the filing when he received an advertising letter from an attorney telling him that he could represent Fink on the ADA/AzDA lawsuit filed against his LLC.

308.    Respondent falsely alleges in the complaint that:

    a.    Fink has a history of failing to comply with the ADA/ AZDA's mandate,

    b.    the property was not accessible to individuals with disabilities, and

    c.    the property is a place of public accommodation.

309.    The complaint sought attorneys' fees of "no less than $5,000" as well as payment of costs and expenses; and monetary damages of "no less than $5,000."

310.    Respondent dismissed the lawsuit without prejudice on September 20, 2016.

311.    Based upon the foregoing Respondent violated Rule 42, ERs 1.5(a), 3.1, 8.4(d), Ariz. R. Sup. Ct.

K.    **File no. 16-2741 - Complainant: Rene Gurrola, opposing party**

312.    Paragraphs 3 through 44 are incorporated herein.

313.    Complainant Gurrola ("Gurrola") has an office condo and the homeowners association ("HOA") owns the parking lot.    His business is a merchant service company with few clients in Arizona.

314.    Respondent filed a cut-and-paste complaint alleging that the property had improper or non-compliant ADA/AzDA parking lot signage, inadequate number of spaces, or insufficient disbursement of spaces; *Advocates for Individuals with Disabilities Foundation v. Hiltonia Family Trust*, CV2016-011100.

315.    By letter dated July 26, 2016, Respondent provided Gurrola with the verified complaint, summons, certificate of arbitration, and discovery requests.

316.    Gurrola never received any notice about being non-compliant with the ADA/AzDA, prior to receiving the lawsuit.

317.    After he received the lawsuit, Gurrola emailed Respondent and informed him that the HOA was the correct party to name in the lawsuit, since it is responsible for the parking lot.

318.  Gurrola did not receive a response.

319.  Gurrola conducted an internet search of Respondent and learned that Respondent was filing similar lawsuits.

320.  Gurrola then hired attorney Don Fletcher, who was handling about 40 similar ADA/AzDA lawsuits.

321.  Respondent falsely alleges in the complaint that:

    a.    Gurrola has a history of failing to comply with the ADA/AzDA's mandate,

    b.    the property was not accessible to individuals with disabilities, and

    c.    the property is a place of public accommodation.

322.  The complaint sought attorneys' fees of "no less than $5,000" as well as payment of costs and expenses; and monetary damages of "no less than $5,000."

323.  Gurrola alleges that Respondent failed to do his due diligence before filing the complaint:

> Had [Respondent] inspected his work carefully, he would have
> noticed that he is suing a second defendant at the same address;

Page 60 of 69

CV2016-011101 *Advocates for Individuals with Disabilities Foundation, Inc. vs. Jabil Properties, LLC.* It should have occurred to [Respondent] that one parking lot is not owned by two different parties and should have warranted further investigation. This raises questions as to intent of these law suits. Both law suits are consecutive filing numbers, and the addresses contain consecutive suite numbers; [Respondent] should have known he was suing two parties for the same violations in the same parking lot. Either [Respondent] was trying to collect funds from as many individuals as possible and not working in 'good faith', or his work was lacking due diligence and shoddy. Either case, [Respondent's] actions are a disservice to the public and has caused undue time, money, and energy on my behalf.

324. On September 26, 2016, the lawsuit was consolidated with other ADA/AzDA cases before Judge Talamante.

325. Based upon the foregoing Respondent violated Rule 42, ERs 1.5(a), 3.1, 8.4(d), Ariz. R. Sup. Ct.

## L.    File no. 16-2788 - Complainant: Teri Lorenzen, opposing party

326. Paragraphs 3 through 44 are incorporated herein.

327. Complainant Lorenzen ("Lorenzen") has a condo in Mesa where she operates her engineering company Tristar Design Inc., which is not open to the public. There is a common parking area that is owned and managed by the homeowners association ("HOA").

328. On August 5, 2016, Respondent filed a cut-and-paste complaint alleging that the property had improper or non-compliant ADA/ AZDA parking lot signage, inadequate number of spaces, or insufficient disbursement of spaces; *Advocates for Individuals with Disabilities Foundation v. TSD LLC*, CV2016-011108.

329. By letter dated August 19, 2016, Respondent provided Lorenzen with the verified complaint, summons, certificate of arbitration, and discovery requests.

330. Lorenzen contacted her HOA, the AG's office, and the State Bar of Arizona. Lorenzen learned that other members of the HOA had received similar lawsuits and that the HOA would intervene.

331. Lorenzen received a call on August 23, 2016 from AID employee Shawn Conway, who told her that the lawsuit was going to be amended;

332. Lorenzen was sent a settlement package offering to dismiss the lawsuit if she paid $7,500; she did not settle.

333. On September 26, 2016, the lawsuit was consolidated with other ADA/AzDA cases before Judge Talamante.

334.  Based upon the foregoing Respondent violated Rule 42, ERs 1.5(a), 3.1, 8.4(d), Ariz. R. Sup. Ct.

**M.    File no. 16-2793 - Complainant: May Hajbandeh, opposing party**

335.  Paragraphs 3 through 44 are incorporated herein.

336.  Complainant Hajbandeh ("Hajbandeh") and her husband's company, Henderson Industries LLC., owns a commercial building.

337.  On June 10, 2016, Respondent filed a cut-and-paste complaint alleging that the property had improper or non-compliant ADA/AzDA parking lot signage, inadequate number of spaces, or insufficient disbursement of spaces; *Advocates for Individuals with Disabilities Foundation v. Henderson Industries LLC,* CV2016-007083.

338.  Respondent failed to investigate before filing suit because if he had it would have shown that the business was 100% in compliance with ADA/AzDA and the business does not own the parking lot, only the building.

339.  Respondent falsely alleges in the complaint that:

a.    Hajbandeh has a history of failing to comply with the ADA/AzDA's mandate,

b.  the property was not accessible to individuals with disabilities,

c.  Hajbandeh's business offers public lodging, and

d.  the complaint was filed in the District Court of Arizona.

340.  The complaint sought attorneys' fees of "no less than $5,000" as well as payment of costs and expenses; and monetary damages of "no less than $5,000."

341.  By letter dated August 16, 2016, Respondent provided Hajbandeh with the verified complaint, summons, certificate of arbitration, and discovery requests.

342.  Hajbandeh never received any notice about being non-compliant with the ADA/ AZDA, prior to receiving the lawsuit.

343.  Hajbandeh is an Arizona attorney and she filed a response and a request that the complaint be dismissed.

344.  On September 26, 2016, the lawsuit was consolidated with other ADA/AzDA cases before Judge Talamante.

345.  Based upon the foregoing Respondent violated Rule 42, ERs 1.5(a), 3.1, 8.4(d), Ariz. R. Sup. Ct.

**N.**    **File no. 16-2800 - Complainant: Robert Wilder, opposing party**

346.    Paragraphs 3 through 44 are incorporated herein.

347.    Complainant Wilder ("Wilder") is the owner of Blue Ridge Holdings LLC. The limited liability company owns an office condominium and his wife, Dr. Susan Wilder, operates a medical practice from the location.

348.    Wilder has owned the property for approximately 12 years and the business is visited by approximately 50 people daily.

349.    On March 17, 2016, Respondent filed a cut-and-paste complaint alleging that the property had improper or non-compliant ADA/AzDA parking lot signage, inadequate number of spaces, or insufficient disbursement of spaces; *Advocates for Individuals with Disabilities, LLC and David Ritzenthaler v.* Blue Ridge Holdings *LLC* (CV2016-092115).

350.    Respondent falsely alleges in the complaint that:

    a.    Wilder has a history of failing to comply with the ADA/AzDA's mandate, and

    b.    the property was not accessible to individuals with disabilities.

351.    Wilder never received any notice about being non-compliant with the ADA/AzDA, prior to receiving the lawsuit.

352.    Respondent sued three other business condos at the same location. Wilder's lawyer represented all three condo owners, and advised Respondent that they had sued the individual condo owners who were not responsible for the parking lot where the violations dealing with handicap signage and spacing occurred.

353.    The complaint sought attorneys' fees and monetary damages of "no less than $5,000."

354.    On September 26, 2016, the lawsuit was consolidated with other ADA/AzDA cases before Judge Talamante.

355.    Based upon the foregoing Respondent violated Rule 42, ERs 1.5(a), 3.1, 8.4(d), Ariz. R. Sup. Ct.

**O.    File no. 16-3689 - Complainant: Art Miller, opposing party**

356.    Paragraphs 3 through 44 are incorporated herein.

357. Complainant Miller ("Miller") is the owner of Silverado Management LLC, which owns an office condominium. The office had been vacant for almost a year, and at the time of the lawsuit, it was for sale.

358. June 10, 2016, Respondent filed a cut-and-paste complaint alleging that the property had improper or non-compliant ADA/AzDA parking lot signage, inadequate number of spaces, or insufficient disbursement of spaces; *Advocates for Individuals with Disabilities Foundation v. Silverado Management LLC,* CV2016-007113.

359. The complaint sought attorneys' fees of "no less than $5,000" as well as payment of costs and expenses; and monetary damages of "no less than $5,000.

360. Respondent falsely alleges in the complaint that:

a.     Miller has a history of failing to comply with the ADA/AzDA's mandate,

b.     the property was not accessible to individuals with disabilities,

c.     Miller's business offers public lodging, and

d.     the complainant was filed in the District Court of Arizona.

Page 67 of 69

361. By letter dated June 7, 2016, 2016, Respondent provided Miller with the verified complaint, summons, certificate of arbitration, and discovery requests.

362. Miller contacted his attorney Alexandra Nash, and she informed him that the associations' attorney would be involved to resolve the lawsuit.

363. The association also hired someone to visit the property for the purpose of checking for compliance with the ADA/AzDA and making corrections.

364. The association re-striped the parking spaces, adjusted the height of the signs to the correct height, and installed van accessible signs.

365. On August 9, 2016, Miller sold his unit. At the time the lawsuit was filed, Miller's unit was in escrow and if the purchaser had not been a fellow Board member, it could have cost the sale of the unit.

366. Miller paid a portion of Ms. Nash's attorney fees; around $1,200 - $1,300.

367. On September 26, 2016, the lawsuit was consolidated with other ADA/ AZDA cases before Judge Talamante.

368. Based upon the foregoing Respondent violated Rule 42, ERs 1.5(a), 3.1, 8.4(d), Ariz. R. Sup. Ct.

DATED this __16th__ day of November, 2018.

STATE BAR OF ARIZONA

Shauna R. Miller
Senior Bar Counsel

Original filed with the Disciplinary Clerk of
the Office of the Presiding Disciplinary Judge
of the Supreme Court of Arizona
this __16th__ day of November, 2018.

by: __Karen E. Calcagno__
SRM:kec

EXHIBIT 4

## BEFORE THE PRESIDING DISCIPLINARY JUDGE

| | |
|---|---|
| IN THE MATTER OF A SUSPENDED MEMBER OF THE STATE BAR OF ARIZONA, | PDJ 2018-9105 |
| | [State Bar Nos. 16-0334, 16-1309, 16-1987, 16-2069, 16-2209, 16-2346, 16-2595, 16-2602, 16-2604, 16-2667, 16-2741, 16-2788, 16-2793, 16-2800, 16-2919, 16-3689, 17-3925, 18-1751.] |
| PETER STROJNIK, Bar No. 006464 | |
| Respondent. | JUDGMENT OF DISBARMENT |
| | FILED MAY 10, 2019 |

Pursuant to Arizona Rule of Supreme Court 57, the parties filed with the disciplinary clerk a Consent to Disbarment ("Consent") dated May 8, 2019. The Consent complies with Rule 57(a)(5) and is accepted by the Presiding Disciplinary Judge. The acceptance of a consent to disbarment constitutes a final disposition of all pending proceedings. Under Rule 57(a)(5)(A), any future application for reinstatement "will be treated as an application by a member who has been disbarred for professional misconduct, as set forth in the . . . complaint . . . ."

Mr. Strojnik has been under the force of an interim suspension order. Under Arizona Rule of Supreme Court 61(d), that order of interim suspension continued in force until final disposition of all pending proceedings against him. This judgment is the final disposition of these proceedings and the force of that order is lifted.

Now therefore,

**IT IS ORDERED** disbarring Respondent, **PETER STROJNIK, Bar No. 006464,** from the State Bar of Arizona effective immediately. His name is stricken from the roll of lawyers, and he is no longer entitled to the rights and privileges of a lawyer but remains subject to the jurisdiction of the court.

**IT IS FURTHER ORDERED** Respondent shall immediately comply with the requirements of Arizona Rule of Supreme Court 72, which include, but are not limited to, notification of clients and others and filing all notices and affidavits required.

**IT IS FURTHER ORDERED** vacating the hearing of May 20, 2019, as under Rule 57(a)(5)(C), no further disciplinary action shall be taken regarding the matters that are the subject of the charges upon which the Consent and this judgment of disbarment are based.

**IT IS FURTHER ORDERED** Respondent shall pay costs and expenses as approved by the Presiding Disciplinary Judge to the State Bar of Arizona.

**IT IS FURTHER ORDERED** lifting the force of the Order of Interim Suspension dated July 11, 2018 in File No. PDJ 2018-9018.

**DATED** this 10th day of May 2019.

_William J. O'Neil_
**William J. O'Neil, Presiding Disciplinary Judge**

Copies of the foregoing mailed/emailed
this 10th day of May 2019.

2

Shauna R. Miller
Senior Bar Counsel
State Bar of Arizona
4201 N. 24th Street, Suite 100
Phoenix, Arizona 85016-6266
Email: LRO@staff.azbar.org

Peter Strojnik
2375 E Camelback Rd Ste 600
Phoenix, AZ  85016-3493
Telephone: 602-524-6602
Email: ps@strojnik.com
Respondent

by: MSmith

OFFICE OF THE
PRESIDING DISCIPLINARY JUDGE
SUPREME COURT OF ARIZONA

MAY 0 8 2019

FILED

BY _____

Peter Strojnik
7847 N. Central Ave.
Phoenix, Arizona 85020
ps@strojnik.com
602-524-660

## BEFORE THE PRESIDING DISCIPLINARY JUDGE

| | |
|---|---|
| IN THE MATTER OF A SUSPENDED MEMBER OF THE STATE BAR OF ARIZONA, | **PDJ 2018-9105**<br>[State Bar No. 16-0334 et al.[1]] |
| **PETER STROJNIK,**<br>**Bar No. 006464,** | **CONSENT TO DISBARMENT** |
| Respondent. | |

I, PETER STROJNIK, 7847 North Central Avenue, Phoenix, Arizona 85020,

voluntarily consent to disbarment as a member of the State Bar of Arizona and

consent to the removal of my name from the roster of those permitted to practice

before this court, and from the roster of the State Bar of Arizona.

I acknowledge that a formal complaint has been made against me and that I

have read the complaint and the charges made against me. I further acknowledge

that I do not desire to contest or defend the charges, but wish to consent to

---

[1] 16-1309, 16-1987, 16-2069, 16-2209, 16-2346, 16-2595, 16-2602, 16-2604, 16-2667, 16-2741, 16-2788, 16-2793, 16-2800, 16-2919, 16-3689, 17-3925, 18-1751.

1

disbarment.  I have been advised of and have had an opportunity to exercise my right

to be represented in this matter by a lawyer.  I consent to disbarment freely and

voluntarily and not under coercion or intimidation.  I am aware of the rules of the

Supreme Court with respect to discipline, disability, resignation and reinstatement,

and I understand that any future application by me for admission or reinstatement as

a member of the State Bar of Arizona will be treated as an application by a member

who has been disbarred for professional misconduct, as set forth in the charges made

against me.  I have previously denied the allegations of any impropriety and enter

this Consent as a consequence of my ailing health and desire for peace.

    The State Bar has advised it will not file an objection to this consent.  A

proposed form of judgment of disbarment is attached.  Exhibit A.

    **DONE** this 8th day of May, 2019.

_____

Peter Strojnik

**SUBSCRIBED AND SWORN TO** before me this ___8th___ day of **May**,

2019, Peter Strojnik who satisfactorily proved his identity to me.

_____

Notary Public

2/28/2022

KAREN E. CALCAGNO
Notary Public - Arizona
Maricopa County
My Commission Expires
February 28, 2022

2

My Commission expires:

Nov. 28, 2022

Original filed with the Disciplinary Clerk of
the Office of the Presiding Disciplinary Judge
of the Supreme Court of Arizona
this 8th day of May, 2019.

Copy of the foregoing emailed/hand delivered
this 8th day of May, 2019, to:

The Honorable William J. O'Neil
Presiding Disciplinary Judge
Supreme Court of Arizona
1501 West Washington Street, Suite 102
Phoenix, Arizona 85007
E-mail: officepdj@courts.az.gov

Copy of the foregoing mailed/emailed
this 8th day of May, 2019, to:

Shauna Miller, Senior Bar Counsel
State Bar of Arizona
4201 N. 24th St., Suite 100
Phoenix, Arizona 85016-6266

Lawyer Regulation Records Manager
State Bar of Arizona
4201 N. 24th St., Suite 100
Phoenix, Arizona 85016-6266

by:_____
PS

EXHIBIT 5

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is made and entered into this ___ day of August, 2018 (the "Effective Date") by and between plaintiff Fernando Gastelum ("Plaintiff" or "Party") and 3600 NORTH SECOND AVENUE HOLDINGS, LLC ("Defendant" or "Party") ("Parties") in the complaint filed by Plaintiff in the United States District Court under cause number 2:17-CV-04379 ("Litigation").

## RECITALS

WHEREAS, Plaintiff filed a verified complaint (the "Complaint") in the United States District Court under case number 2:17-CV-04379 (the "Litigation") against Defendant pursuant to Title III of the Americans With Disabilities Act and Implementing Regulations and State Law counts (the "ADA") as alleged in the Complaint.

WHEREAS, the Parties agree that it is in their mutual interests to avoid the uncertainty and expense of this Litigation by reaching a settlement and accommodation of the certain matters encompassed herein, without any admission of law or fact.

NOW, THEREFORE, in consideration of the mutual covenants contained herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties covenant and agree as follows:

## TERMS AND RELEASES

1. **Compliance:** Defendant agrees to expend its best efforts to comply with 28 CFR § 36.302(e) within 10 months of the Effective Date.

2. **Settlement Payment:** Without admitting liability or fault, Defendant shall pay the sum of $3,950.00 (the "Payment") to Defendant within 10 calendar days of the Effective Date and shall be made payable to The Strojnik Firm, LLC and mailed to The Strojnik Firm, LLC, 2415 East Camelback Road, Suite 700, Phoenix, Arizona 85016.  Each Party shall be responsible for its own costs, expenses, and attorney's fees related to this Litigation.

3. **Mutual Release.** Each Party, on her/his/its own behalf, releases, discharges and acquits the other Party and to the fullest extent applicable, each of their respective members, managers, spouses, heirs, related and affiliated entities, employees, agents, parent companies, and predecessors as well as all of their insurers, attorneys, accountants, professional employer organizations, legal successors and assigns (all of whom are referred to throughout this Agreement collectively as the "Released Parties"), from any and all charges, complaints, claims, causes of action, debts, demands, sums of money, controversies, agreements, allegations, promises, damages and liabilities of any kind or nature whatsoever, both at law and equity, known or unknown, suspected or unsuspected, anticipated or unanticipated, relating to, whether directly or indirectly, the Property (defined below), including, without limitation, any ADA claims relating to the Property, or with respect to claims alleged in the Litigation.

4. **Dismissal with Prejudice:** Upon receipt of the Payment, Plaintiff shall dismiss the Litigation with prejudice, each Party to bear such Party's own costs and fees. The Stipulation for Dismissal with Prejudice and Order shall be prepared by Defendant reflecting new counsel's name "The Strojnik Firm, LLC" and the signature line for "Peter K. Strojnik" attorney for Plaintiff.

5.  **Covenant Not to Return:** Plaintiff agrees that he will not return to Defendant's property at 3600 N. 2nd Avenue, Phoenix, AZ (the "Property") and that he will not visit 3rd party or 1st party websites to reserve a room at the Property.

6.  **No Admission of Liability.** Each Party understands and acknowledges that this Agreement constitutes a compromise and settlement of any and all actual or potential disputed claims between them. No action taken by any Party hereto, either previously or in connection with this Agreement, shall be deemed or construed to be (a) an admission of the truth or falsity of any actual or potential claims or (b) an acknowledgment or admission by any Party of any fault or liability whatsoever to any Released Party (including each of the Parties) or to any third party. Each Party further affirms that each has acted in good faith and has dealt fairly with the other.

7.  **Authority.** The Parties represent one to the other that he/she/it has the authority to act on behalf the person or entity indicated below.

8.  **Representation of Good Faith and Fair Dealing:** The parties covenant one to the other that (1) this Agreement is fair, reasonable and entered in good faith and (2) that they will abide by the terms of this Agreement in good faith and will deal with each other fairly.

9.  **No Other Representations.** Each Party represents that she/he/it has had an opportunity to consult with an attorney, and by signing below represents and warrants that she/he/it has carefully read and fully understands the scope and effect of all the provisions of this Agreement. Each Party also represents that she/he/it has not relied upon any representations or statements made by any person or entity not specifically that is not set forth in this Agreement.

10. **Severability.** If any provision or any portion of any provision hereof or any surviving agreement made a part hereof becomes or is declared by a court of competent jurisdiction or arbitrator to be illegal, unenforceable, or void, this Agreement shall continue in full force and effect without said provision or portion of provision.

11. **Entire Agreement.** This Agreement's terms represents the entire agreement and understanding between the Parties concerning the subject matter of this Agreement.

12. **No Oral Modification.** This Agreement may only be amended in a writing signed by the Parties.

13. **Governing Law, Exclusive: Jurisdiction and Venue.** This Agreement shall be governed by the laws of the State of Arizona, without regard for choice-of-law provisions. Each Party consents to personal, subject matter and all other jurisdictional requirements and venue exclusively within the State of Arizona.

14. **Counterparts, Electronic Signatures and Effective Date.** This Agreement may be separately executed or electronically signed in separate counterparts and then exchanged by email/PDF, facsimile or delivery to the other Party or other Party(ies)' legal counsel. The sets of exchanged counterparts shall each have the same force and effect as a fully-signed original counterpart and shall constitute an effective, binding agreement on the part of each of the Parties once the exchanged signed counterparts have each been so received by the respective legal counsel for the Parties.

///

///

DATED as of the Effective Date.

**FERNANDO GASTELUM**

Fernando Gastelum
*Electronically*

**3600 NORTH SECOND AVENUE HOLDINGS, LLC**

By: Wells Fargo Bank, N.A., as Trustee, in trust for the registered holders of Banc of America Commercial Mortgage Inc. Commercial Mortgage Pass-Through Certificates, Series 2007-2

By: CWCapital Asset Management LLC, solely in its capacity as Special Servicer

By: _____
Name: Tim Gray
Title: Senior Vice President

EXHIBIT 6

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is made and entered into this 16th day of August, 2018 (the "Effective Date") by and between plaintiff Fernando Gastelum ("Plaintiff" or "Party") and CHAMPION HOTEL INVESTMENT OF PHOENIX ("Defendant" or "Party") ("Parties") in the complaint filed by Plaintiff in the United States District Court under cause number 2:17-cv-03834 ("Litigation").

### RECITALS

WHEREAS, Plaintiff filed the Litigation against Defendant pursuant to Title III of the Americans With Disabilities Act and Implementing Regulations and State Law counts as alleged in the Verified Complaint.

WHEREAS, the Parties agree that it is in their mutual interests to avoid the uncertainty and expense of this Litigation by reaching a settlement and accommodation of the certain matters encompassed herein, without any admission of law or fact.

NOW, THEREFORE, in consideration of the mutual covenants contained herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties covenant and agree as follows:

### TERMS AND RELEASES

1. **Compliance:** Defendant agrees to expend its best efforts to comply with 28 CFR § 36.302(e) within 6 months of the Effective Date.

2. **Settlement Payment:** Without admitting liability or fault, Defendant shall pay the sum of $3,950.00  The Payment shall be due within 30 calendar days of the Effective Date and shall be made payable to The Strojnik Firm, LLC and mailed to The Strojnik Firm, LLC, 2415 East Camelback Road, Suite 700, Phoenix, Arizona 85016.  Each Party shall be responsible for its own costs, expenses, and attorney's fees related to this Litigation.

3. **Mutual Release.** Each Party, on her/his/its own behalf, releases, discharges and acquits the other Parties and to the fullest extent applicable, each of their respective members, managers, spouses, heirs, related and affiliated entities, employees, agents, parent companies, and predecessors as well as all of their insurers, attorneys, accountants, professional employer organizations, legal successors and assigns (all of whom are referred to throughout this Agreement collectively as the "Released Parties"), from any and all charges, complaints, claims, causes of action, debts, demands, sums of money, controversies, agreements, allegations, promises, damages and liabilities of any kind or nature whatsoever, both at law and equity, known or unknown, suspected or unsuspected, anticipated or unanticipated, that could have been alleged in the Litigation.

4. **Dismissal with Prejudice:** Upon payment referenced in ¶ 2 above, this Litigation shall be dismissed with prejudice, each Party to bear such Party's own costs and fees. The Stipulation for Dismissal with Prejudice and Order shall be prepared by Defendant reflecting new counsel's name "The Strojnik Firm, LLC" and the signature line for "Peter K. Strojnik" attorney for Plaintiff.

5. **Covenant Not to Return:** Plaintiff agrees that he will not return to Defendant's property at 1500 N. 51st Avenue, Phoenix AZ (the "Property") and that he will not visit 3rd party or 1st party websites to reserve a room at the Property.

6. **No Admission of Liability.** Each Party understands and acknowledges that this Agreement constitutes a compromise and settlement of any and all actual or potential disputed claims between them. No action taken by any Party hereto, either previously or in connection with this Agreement, shall be deemed or construed to be (a) an admission of the truth or falsity of any actual or potential claims or (b) an acknowledgment or admission by any Party of any fault or liability whatsoever to the any Released Party (including each of the Parties) or to any third party. Parties further affirm that each has acted in good faith and has dealt fairly with the other.

7. **Authority.** The Parties represent one to the other that he/she/it has the authority to act on behalf the person or entity indicated below.

8. **Representation of Good Faith and Fair Dealing:** The parties covenant one to the other that (1) this Agreement is fair, reasonable and entered in good faith and (2) that they will abide by the terms of this Agreement in good faith and will deal with each other fairly.

9. **No Other Representations.** Each Party represents that she/he/it has had an opportunity to consult with an attorney, and by signing below represents and warrants that she/he/it has carefully read and fully understands the scope and effect of all the provisions of this Agreement. Each Party also represents that she/he/it has not relied upon any representations or statements made by any person or entity not specifically that is not set forth in this Agreement.

10. **Severability.** If any provision or any portion of any provision hereof or any surviving agreement made a part hereof becomes or is declared by a court of competent jurisdiction or arbitrator to be illegal, unenforceable, or void, this Agreement shall continue in full force and effect without said provision or portion of provision.

11. **Entire Agreement.** This Agreement's terms represents the entire agreement and understanding between the Parties concerning the subject matter of this Agreement.

12. **No Oral Modification.** This Agreement may only be amended in a writing signed by the Parties.

13. **Governing Law, Exclusive: Jurisdiction and Venue.** This Agreement shall be governed by the laws of the State of Arizona, without regard for choice-of-law provisions. Each Party consents to personal, subject matter and all other jurisdictional requirements and venue exclusively within the State of Arizona.

14. **Counterparts, Electronic Signatures and Effective Date.** This Agreement may be separately executed or electronically signed in separate counterparts and then exchanged by email/PDF, facsimile or delivery to the other Party or other Party(ies)' legal counsel. The sets of exchanged counterparts shall each have the same force and effect as a fully-signed original counterpart and shall constitute an effective, binding agreement on the part of each of the Parties once the exchanged signed counterparts have each been so received by the respective legal counsel for the Parties.

DATED on the Effective Date.

**FERNANDO GASTELUM**

*Fernando Gastelum*
Fernando Gastelum
*Electronically*

**CHAMPION HOTEL INVESTMENT OF PHOENIX**

By: _____
    DAVID BUDDEMEYER

Its: _AUTHORIZED SIGNATORY_

Page **2** of **2**

EXHIBIT 7

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is made and entered into this 16th day of August, 2018 (the "Effective Date") by and between plaintiff Fernando Gastelum ("Plaintiff" or "Party") and CGD TEMPE, L.P. ("Defendant" or "Party") ("Parties") in the complaint filed by Plaintiff in the United States District Court under cause number 2:18-cv-00512 ("Litigation")

### RECITALS

WHEREAS, Plaintiff filed the Litigation against Defendant pursuant to Title III of the Americans With Disabilities Act and Implementing Regulations and State Law counts as alleged in the Verified Complaint.

WHEREAS, the Parties agree that it is in their mutual interests to avoid the uncertainty and expense of this Litigation by reaching a settlement and accommodation of the certain matters encompassed herein, without any admission of law or fact.

NOW, THEREFORE, in consideration of the mutual covenants contained herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties covenant and agree as follows:

### TERMS AND RELEASES

1. **Compliance:** Defendant agrees to expend its best efforts to comply with 28 CFR § 36.302(e) within 6 months of the Effective Date.

2. **Settlement Payment:** Without admitting liability or fault, Defendant shall pay the sum of $3,950.00. The Payment shall be due within 30 calendar days of the Effective Date and shall be made payable to The Strojnik Firm, LLC and mailed to The Strojnik Firm, LLC, 2415 East Camelback Road, Suite 700, Phoenix, Arizona 85016. Each Party shall be responsible for its own costs, expenses, and attorney's fees related to this Litigation.

3. **Mutual Release.** Each Party, on her/his/its own behalf, releases, discharges and acquits the other Parties and to the fullest extent applicable, each of their respective members, managers, spouses, heirs, related and affiliated entities, employees, agents, parent companies, and predecessors as well as all of their insurers, attorneys, accountants, professional employer organizations, legal successors and assigns (all of whom are referred to throughout this Agreement collectively as the "Released Parties"), from any and all charges, complaints, claims, causes of action, debts, demands, sums of money, controversies, agreements, allegations, promises, damages and liabilities of any kind or nature whatsoever, both at law and equity, known or unknown, suspected or unsuspected, anticipated or unanticipated, that could have been alleged in the Litigation.

4. **Dismissal with Prejudice:** Upon payment referenced in ¶ 2 above, this Litigation shall be dismissed with prejudice, each Party to bear such Party's own costs and fees. The Stipulation for Dismissal with Prejudice and Order shall be prepared by Defendant reflecting new counsel's name "The Strojnik Firm, LLC" and the signature line for "Peter K. Strojnik" attorney for Plaintiff.

5. **Covenant Not to Return:** Plaintiff agrees that he will not return to Defendant's property at 2100 S. Priest Drive, Tempe, AZ 85282 (the "Property") and that he will not visit 3rd party or 1st party websites to reserve a room at the Property.

6. **No Admission of Liability.**  Each Party understands and acknowledges that this Agreement constitutes a compromise and settlement of any and all actual or potential disputed claims between them.  No action taken by any Party hereto, either previously or in connection with this Agreement, shall be deemed or construed to be (a) an admission of the truth or falsity of any actual or potential claims or (b) an acknowledgment or admission by any Party of any fault or liability whatsoever to the any Released Party (including each of the Parties) or to any third party. Parties further affirm that each has acted in good faith and has dealt fairly with the other.

7. **Authority.**  The Parties represent one to the other that he/she/it has the authority to act on behalf the person or entity indicated below.

8. **Representation of Good Faith and Fair Dealing:**  The parties covenant one to the other that (1) this Agreement is fair, reasonable and entered in good faith and (2) that they will abide by the terms of this Agreement in good faith and will deal with each other fairly.

9. **No Other Representations**.  Each Party represents that she/he/it has had an opportunity to consult with an attorney, and by signing below represents and warrants that she/he/it has carefully read and fully understands the scope and effect of all the provisions of this Agreement.  Each Party also represents that she/he/it has not relied upon any representations or statements made by any person or entity not specifically that is not set forth in this Agreement.

10. **Severability.**  If any provision or any portion of any provision hereof or any surviving agreement made a part hereof becomes or is declared by a court of competent jurisdiction or arbitrator to be illegal, unenforceable, or void, this Agreement shall continue in full force and effect without said provision or portion of provision.

11. **Entire Agreement.**  This Agreement's terms represents the entire agreement and understanding between the Parties concerning the subject matter of this Agreement.

12. **No Oral Modification.**  This Agreement may only be amended in a writing signed by the Parties.

13. **Governing Law, Exclusive: Jurisdiction and Venue.**  This Agreement shall be governed by the laws of the State of Arizona, without regard for choice-of-law provisions.  Each Party consents to personal, subject matter and all other jurisdictional requirements and venue exclusively within the State of Arizona.

14. **Counterparts, Electronic Signatures and Effective Date.**  This Agreement may be separately executed or electronically signed in separate counterparts and then exchanged by email/PDF, facsimile or delivery to the other Party or other Party(ies)' legal counsel.  The sets of exchanged counterparts shall each have the same force and effect as a fully-signed original counterpart and shall constitute an effective, binding agreement on the part of each of the Parties once the exchanged signed counterparts have each been so received by the respective legal counsel for the Parties.

DATED on the Effective Date.

**FERNANDO GASTELUM**                           **CGD TEMPE, L.P.**

*Fernando Gastelum*
Fernando Gastelum
*Electronically*

By: _____
    DAVID BUDDEMEYER
Its: AUTHORIZED SIGNATORY

EXHIBIT 8

| | |
|---|---|
| **From:** | Peter Strojnik <ps@strojnik.com> |
| **Sent:** | Thursday, July 16, 2020 11:14 AM |
| **To:** | Hoiles, David G., Jr. (San Diego); Fitzgerald, Christine M. (San Diego) |
| **Subject:** | Strojnik v. 8757 RIO SAN DIEGO MISSION 3:20-CV-00384-DMS-MSB |
| **Attachments:** | 2020-07-14 R2M2DSAC.pdf; 2020-07-13 Driftwood Complaint WITH CV #.pdf |

**[EXTERNAL SENDER]**

We have now entered the standard ADA pattern: You filed a Motion to Dismiss, I responded (see attached), you will reply and then we wait.

If the case is ultimately dismissed in the District Court for lack of standing, I will appeal, if I lose that, I will file the case in the State Court that has different standing requirements, see *White v. Square*. I will also review and potentially add claims pursuant to Cal. Civ. Code §§1709 *et seq.* 1710(3), 17500 and Cal. Bus. & Prof. Code 17200 *et seq.* and some other claims that I continue to explore. Very interesting stuff!

All of this is very good for the litigation business; however, your client is not in the litigation business, it is in the lodging business, and this is very bad for the lodging business.

What is good for the lodging business but not so good for the legal business is settlement of claims. Therefore, I propose:

1. Good faith review of the Hotel for ADA compliance; and
2. Best efforts to remediate readily achievable remediations; and
3. Full release of the Hotel, ownership and affiliates relating to the allegations in the Complaint; and
4. Payment of costs, fees, expenses and all categories of damages in the amount of $18,750.00; and
5. Stipulation to dismiss with prejudice; and
6. This offer relates only to the property in issue.

If your client has any interest in releasing *other* lodging properties that it or its affiliated companies may have interest in, I am willing to release all such other properties have provided each agrees to items (1) and (2) above and pays $1,500.00 for costs, expenses, investigative and other fees. This offer does not include cases in which I have issued a pre-litigation letter or filed a complaint, as in the attached. This offer does not apply to the case filed in Maricopa County, attached.

I am looking forward to several exciting new developments in these cases.

--
Cordially,



Peter Strojnik
STROJNIK
7847 N. Central Ave.
Phoenix, AZ 85020

Telephone: 602-524-6602
e-mail ps@strojnik.com
Twitter: @strojnikpeter

This message and any attachments are solely for the intended recipient and may contain confidential or privileged information. If you are not the intended recipient, any disclosure, copying, use, or distribution of the information included in this message and any attachments is prohibited. If you have received this communication in error, please notify us by reply e-mail and immediately and permanently delete this message and any attachments.

Peter Strojnik (Sr.),
7847 N. Central Ave.
Phoenix, Arizona 85020
602-524-6602
ps@strojnik.com

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

Case No: 3:20-cv-00384-DMS-MSB

PETER STROJNIK,

　　　　　　　　　　Plaintiff,

vs.

8757 RIO SAN DIEGO MISSION
VALLEY OWNER, LLC

　　　　　　　　　　Defendant.

**PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION TO
DISMISS SECOND AMENDED
COMPLAINT [17]**

## INTRODUCTION

On June 3, 2020, the parties held a telephonic conference with the Court regarding the sufficiency of Plaintiff's Complaint. Agreement was reached that Plaintiff would file his Second Amended Complaint[1] ("SAC") and address each and every pleadings issue raised by Defendant.

As agreed, Plaintiff filed his SAC on June 9, 2020 [12].  SAC satisfied each and every one of Defendant's pleading concerns. Yet, on July 10, 2020, Defendant filed its Motion to Dismiss the very SAC that resolved all of Defendant's concerns.

The allegations in SAC have been found sufficient in (1) *Strojnik v. 574 Escuela, LLC.*(N.D. Cal. 3:18-cv-06777-JD at Dkt. 20), (2) *Strojnik v. GF Carneros Tenant* (N.D. Cal. 3:19-cv-03583-JSC at Dkt. 28) and *Strojnik v. Resort at Indian Springs, LLC* (N.D. Cal 5:19-cv-04616-SVK at Dkt. 35).  *See also* denial of motion to dismiss in *Johnson v.*

---

[1] First Amended Complaint only changed the Defendant identity; it did not make any substantive changes to the actual allegations.

1    *Alhambra & O Associates* (E.D. Cal. 2:19-cv-00103-JAM-DB at Dkt. 15).[2]  Strojnik's

2    complaints in general and the SAC in particular are based on the Complaint in *Civil Rights*

3    *Education and Enforcement Center v. Hospitality Properties Trust*, 867 F.3d 1093 (9th

4    Cir. 2017) (*CREEC*) that was found sufficient by the 9th Circuit Court of Appeals.

5        Plaintiff's SAC, facially challenged by Defendant's Complaint under Fed. R. Civ.

6    P. 12(b)(1) and 12(b)(6), is cautiously drafted to comply with jurisdictional pleading

7    requirements of *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975),

8    *Maya v. Centex Corp.,* 658 F.3d 1060, 1067 (9th Cir. 2011), *Wilson v. Kayo Oil Co.*, 563

9    F.3d 979 (9th Cir. 2009), *Civil Rights Education and Enforcement Center v. Hospitality*

10   *Properties Trust*, 867 F.3d 1093, 1099 (9th Cir. 2017) and Fed. R. Civ. P. 9(b).   Claims

11   for relief are similarly drafted in compliance with  *Ashcroft v. Iqbal,* 556 U.S. 662, 129

12   S.Ct. 1937, 173 L.Ed.2d 868 (2009) and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544,127

13   S.Ct. 1955, 167 L.Ed.2d 929 (2007).

14       The SAC is flawless. Defendant's Motion must be denied.

15                                        **ARGUMENT**

16   **A.  LEGAL STANDARDS**

17       **I.  Distinction Between Facial and Factual Challenges to Jurisdiction**

18       In *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 101, 118 S. Ct. 1003

19   (1998), the Supreme Court emphasized that a federal court must first establish as "an

20   antecedent" matter that it has jurisdiction.

21       A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction may

22   be "facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

23   Where a defendant makes a facial attack on jurisdiction, factual allegations of the

24   complaint are taken as true. *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d

25   1204, 1207 (9th Cir. 1996); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)

26   ("At the pleading stage, general factual allegations of injury resulting from the defendant's

27   conduct may suffice, for on a motion dismiss, [courts] presume that general allegations

28   ─────────────────
     [2] The  *Johnson* denial of motion to dismiss was particularly instructive because it based
     its denial of a motion to dismiss on the 9th Circuit Court of Appeals decision in *Maya v. Centex*
     *Corp.,* 658 F.3d 1060 (9th Cir. 2011) (*Centex*).

                                            2

embrace those specific facts that are necessary to support the claim.") (internal citation and quotations omitted). The plaintiff is then entitled to have those facts construed in the light most favorable to him or her. *Fed'n of African Am. Contractors*, 96 F.3d at 1207.

In contrast, a factual attack on subject matter jurisdiction occurs when, as here, a defendant challenges the actual lack of jurisdiction with affidavits or other evidence. *See Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). "When the defendant raises a factual attack, the plaintiff must support … jurisdictional allegations with 'competent proof,' under the same evidentiary standard that governs in the summary judgment context." *Leite*, 749 F.3d at 1121 (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 96-97 (2010)). The district court may resolve those factual disputes itself, unless "the existence of jurisdiction turns on disputed factual issues[.]" *Id.* at 1121-22 (citations omitted). "To the extent that the jurisdictional facts are disputed . . ., the parties should be allowed to conduct discovery for the limited purpose of establishing jurisdictional facts before the claims can be dismissed." *Siderman de Blake v. Republic of Argentina*, 965 F.2d 699, 713 (9th Cir. 1992)

Where a defendant brings a factual challenge, "a court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment." *White v. Lee,* 227 F.3d 1214, 1242 (9th Cir. 2000) (citation omitted). Once the moving party has made a factual challenge by offering affidavits or other evidence to dispute jurisdictional allegations in the complaint, the party opposing the motion must "present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *Colwell v. Dep't of Health & Human Servs.,* 558 F.3d 1112, 1121 (9th Cir. 2009) (quoting *St. Clair v. City of Chico,* 880 F.2d 199, 201 (9th Cir. 1989)).

Here, Defendant does not produce any extrinsic evidence relating to jurisdiction; therefore, the challenge is facial.

**II. Elements of Proof under Rule 12(b)(1) and 12(b)(6) are Different.**

The standing inquiry requires a plaintiff to show (1) he suffered an "injury in fact; (2) there is a causal connection between that injury and the defendant's conduct; and (3) a favorable decision would likely redress the injury. *Civil Rights Educ. & Enforce. Ctr. v.*

*Hosp. Properties Trust* ("CREEC"), 867 F.3d 1093, 1098 (9th Cir. 2017) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)). When a plaintiff seeks injunctive relief, he must also "allege 'continuing, present adverse effects' stemming from the defendant's actions." *Id.* (quoting *City of Los Angeles v. Lyons,* 461 U.S. 95, 102 (1983)). Federal courts must "take a broad view of constitutional standing in civil rights cases, especially where, as under the ADA, private enforcement suits are the primary method of obtaining compliance with the act." *Doran v. 7-Eleven, Inc.,* 524 F.3d 1034, 1039-40 (9th Cir. 2008) ((quoting *Trafficante v. Metro Life Ins. Co.,* 409 U.S. 205, 209 (1972)).

On the other hand, to statement of an ADA claim requires plaintiff to show that  (1) he is an individual with a disability; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability. 42 U.S.C. §§ 12182(a)-(b); *Molski v. M.J. Cable, Inc.,* 481 F.3d 724, 730 (9th Cir. 2007); *Arizona ex rel. Goddard v. Harkins Amusement Enter. Inc.*, 603 F.3d 666, 670 (9th Cir. 2010).

### III.    Pleading Standards under Rule 12(b)(1) and 12(b)(6) are Different.

*Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (*Ashcroft*) and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544,127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (*Twombly*) apply to 12(b)(6) motions. *Twombly* and *Iqbal* addressed the pleading required to survive a motion to dismiss for failure to state a claim, and, distilled to their essence, impose two requirements. First, the reviewing court, though crediting factual assertions made in the pleadings, is not required to credit legal conclusions. *Ashcroft,* 129 S.Ct. at 1949-50 (citing *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955). Second, the complaint cannot survive a motion to dismiss unless it alleges facts that plausibly (not merely conceivably) entitle plaintiff to relief. *Id.* at 1950-51.

However, *Twombly* and *Iqbal* are ill-suited to application in the constitutional standing context because in determining whether plaintiff states a claim under 12(b)(6), the court necessarily assesses the merits of plaintiff's case. But the threshold question of whether plaintiff has standing (and the court has jurisdiction) is distinct from the merits of his claim. Rather, "[t]he jurisdictional question of standing precedes, and does not require, analysis of the merits." *Equity Lifestyle Props., Inc. v. Cnty. of San Luis Obispo,* 548 F.3d

1184, 1189 n. 10 (9th Cir. 2008); *see also Seldin,* 422 U.S. at 500, 95 S.Ct. 2197 (Standing "in no way depends on the merits of the contention that particular conduct is illegal.") (*Seldin*); *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946); *Catholic League for Religious and Civil Rights v. City & Cnty. of San Francisco,* 624 F.3d 1043, 1049 (9th Cir. 2010) (en banc) ("Nor can standing analysis, which prevents a claim from being adjudicated for lack of jurisdiction, be used to disguise merits analysis, which determines whether a claim is one for which relief can be granted if factually true.").

The proper 12(b)(1) analysis is subject to a different standard. *Maya v. Centex Corp.,* 658 F.3d 1060, 1067 (9th Cir. 2011) (quoting *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).) "For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." *Seldin,* 422 U.S. at 501, 95 S.Ct. 2197. "**At the pleading stage… we `presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'**" *Defenders of Wildlife,* 504 U.S. at 561, 112 S.Ct. 2130 (emphasis supplied) (quoting *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 889, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)); *see also Lucas v. S.C. Coastal Council,* 505 U.S. 1003, 1014 n. 3, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992) (cautioning that while at the summary judgment stage, the court "require[s] specific facts to be adduced by sworn testimony," a "challenge to a generalized allegation of injury in fact made at the pleading state ... would have been unsuccessful"). *See also Wilson v. Kayo Oil Co.*, 563 F.3d 979, 980 (9th Cir. 2009) (*Wilson*) (per curiam) (noting that the minimal allegations that a plaintiff intends to return is sufficient to defeat a motion to dismiss).

### IV.   Fed. R. Civ. P. 9(b) is Consistent with *Seldin, Mayo*  and *Wilson.*

Fed. R. Civ. P. 9(b) is consistent with *Seldin, Mayo* and *Wilson.* It provides that "intent (*to return*) … and other conditions of a person's mind (*being deterred*) may be alleged generally". Fed. R. Civ. P. 9(b).

Federal Rules of Civil Procedure were drawn under the authority of the act of June 19, 1934, U.S.C., Title 28, §723b [see 2072] (Rules in actions at law; Supreme Court authorized to make), and §723c [see 2072] (Union of equity and action at law rules; power

of Supreme Court) and also other grants of rule-making power to the Court. See Clark and Moore, *A New Federal Civil Procedure—I. The Background*, 44 Yale L.J. 387, 391 (1935). *Notes of Advisory Committee on Rules—1937 at ¶3.*

## V. The *CREEC* Pleading Standard is Also Consistent with *Seldin, Mayo, Wilson* and Fed. R. Civ. P. 9(b)

The Court in *Civil Rights Education and Enforcement Center v. Hospitality Properties Trust*, 867 F.3d 1093, 1099 (9th Cir. 2017) addressed the very jurisdictional issue facing the court here: The Court in *Civil Rights Education and Enforcement Center v. Hospitality Properties Trust*, 867 F.3d 1093, 1099 (9th Cir. 2017) addressed the very jurisdictional issue facing the court here. The Court confirmed that ADA plaintiffs may demonstrate a likelihood of future harm in one of two ways. They may either show (1) injury in fact coupled with an intent to return to the offending facility; or (2) deterrence from visiting or returning to the facility because of the ADA violation(s). *Id.* at 1098-99.

> A plaintiff experiences continuing adverse effects where a defendant's failure to comply with the ADA deters her from making use of the defendant's facility. *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 953 (9th Cir. 2011) (en banc). We have dubbed this the "deterrent effect doctrine." *Id.* at 949-50. "[W]hen a plaintiff who is disabled within the meaning of the ADA has actual knowledge of illegal barriers at a public accommodation to which he or she desires access, that plaintiff need not engage in the 'futile gesture' of attempting to gain access in order to show actual injury. . . ." *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1135 (9th Cir. 2002) (quoting 42 U.S.C. § 12188(a)(1)). "So long as the discriminatory conditions continue, and so long as a plaintiff is aware of them and remains deterred, the injury under the ADA continues." *Id.* at 1137.

***

**The Named Plaintiffs have alleged in the First Amended Complaint that they intend to visit the relevant hotels, but have been deterred from doing so by the hotels' non-compliance with the ADA. They further allege that they will visit the hotels when the non-compliance is cured.** Thus, the ADA violations have prevented them from staying at the hotels. Without such averments, they would lack standing. However, "construing the factual allegations

6

in the complaint in favor of the plaintiffs, " as we must at this preliminary stage, *Mont. Shooting Sports Ass'n v. Holder*, 727 F.3d 975, 979 (9th Cir. 2013), we conclude that the Named Plaintiffs have sufficiently alleged injury in fact. *Chapman*, 631 F.3d at 953. **Their harm is "concrete and particularized, " and their intent to visit the hotels once they provide equivalent shuttle service for the disabled renders their harm "actual or imminent, not conjectural or hypothetical."** (*Emphasis supplied*)

*CREEC* 867 F.3d at 1100-01.

## B. APPLICATION OF LEGAL STANDARDS TO THE COMPLAINT

Plaintiff's SAC alleges that:

- Plaintiff is an individual with a disability, ¶¶2, 4 - 10; and

- He visited San Diego on January 24-25, 2020, ¶17; and

- Defendant is a private entity that owns, leases, or operates a place of public accommodation, ¶11; and

- Plaintiff lodged at Defendant's competitor that was ADA non-compliant, but visited Defendant's place of lodging to determine whether it would be sufficient for his needs for future travel, ¶¶18-19; and

- Plaintiff was denied public accommodations by the defendant because of his disability, ¶¶ 13, 19, 20 (¶ 20 includes photographic evidence of 15 distinct barriers to accessibility, each followed by the description of the barrier and explanation how the barrier denied Plaintiff equal access based on his disability, see pp 4-21) and is therefore aware of the conditions at the Hotel; and

- Plaintiff is deterred from visiting the hotel again because of its illicit condition; and

- Plaintiff would prefer to stay at a Marriott property "because he is a member of Marriott Rewards and because Plaintiff owns 1 share of Marriott stock", ¶24; and

- Plaintiff has specific intent to lodge at Defendant's property when it becomes ADA compliant and specifically he intends "to travel from Phoenix through El Centro and Alpine into San Diego for a court hearing on July 24, 2020, and will

stay at Defendant's Hotel provided that Defendant or its counsel confirm that all accessibility barriers have been removed", ¶¶25-26, and

- As a direct and proximate result of ADA violations, Defendant's failure to remove accessibility barriers prevented Plaintiff from equal access to the Defendant's public accommodation, ¶29.

These allegations are based on the holdings in *Maya. Seldin, Defenders of Wildlife, Lujan, Lucas, Wilson, CREEC, and* Fed. R. Civ. P. 9(b). No more is required at the pleadings stage.

## C. UNRUH IS WELL PLED

The Unruh Civil Rights Act permits an ADA plaintiff to recover money damages if he prevails on his ADA claim. Cal. Civ. Code § 51(f). As pleaded, Plaintiff's Unruh Civil Rights claim is wholly derivative of his ADA claim, although the standing requirements are different. *White v. Square*, 7 Cal. 5th 1019 (2019). Since Defendant does not challenge Unruh and DPA claims on standing grounds, this issue is not addressed further.

## D. NEGLIGENCE IS WELL PLED.

Under California law, negligence is presumed if the plaintiff establishes the following elements: "(1) the defendant violated a statute of a public entity; (2) the violation was the proximate cause of the plaintiff's injury; (3) the injury resulted from an occurrence the nature of which the statute was designed to prevent; and (4) the plaintiff suffering the injury was among the class of persons for whose protection the statute was adopted." *Saylor v. Zeenat, Inc.*, No. Civ.S02-863WBS/DAD, at *2 (E.D. Cal. Aug. 13, 2002) (citing *Galvez v. Fields*, 88 Cal.App.4th 1410, 1420 (2001)).

*See also Strojnik v. Strojnik v. 574 Escuela, LLC.*(N.D. Cal. 3:18-cv-06777-JD at Dkt. 20) (Negligence well pled.)[3]

_____

[3] Some ADA defenders argue that the ADA is a civil rights legislation and not a safety regulation and, therefore, the negligence per se evidentiary doctrine does not apply. This is incorrect. While the ADA is a civil rights legislation, the implementing regulations are safety regulations. For example, a slope on an accessible parking spot can be no more than 1:48. The reason for this is that if the slope were more than 1:48, an individual in a

8

Here, Plaintiff has sufficiently alleged that Defendant violated the ADA; the violation proximately caused Plaintiff to be deterred from visiting the Property; the injury is one the ADA was designed to prevent; and Plaintiff, as a disabled person, is among the class of persons for whose protection the ADA was adopted. *See Saylor v. Zeenat, Inc.*, No. Civ.S02-863-WBS/DAD, 2002 WL 33928621, at *2 (E.D. Cal. Aug. 13, 2002).

The complaint sufficiently states Plaintiff's claims under Title III of the ADA, the Unruh Civil Rights Act, the CDPA, and negligence per se, and there is merit to the substantive allegations.

## CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons, Defendant's motion to dismiss must be denied. To the extent, however, that Plaintiff has misread the jurisdictional pleading requirements of *Seldin, CREEC, Mayo,* and Fed. R. Civ. P. 9(b), and the Parties' agreement on June 3, 2020, Plaintiff respectfully request leave to amend.

RESPECTFULLY SUBMITTED this 16th day of July 2020.

**PETER STROJNIK**

_____
Plaintiff

MAILED TO THE DISTRICT COURT this 16th day of July, 2020.

And emailed to:

David G. Hoiles, Jr. David.hoiles@jacksonlewis.com
Christine M. Fitzgerald Christine.fitzgerald@jacksonlewis.com
JACKSON LEWIS P.C.
225 Broadway, Suite 2000
San Diego, California 92101

Lawyers for Defendant

---

wheelchair may be unable to control the roll of the wheelchair into traffic if the slope were, say, 1:12.

9

Peter Strojnik,
7847 N. Central Avenue
Phoenix, Arizona 85020
Telephone: (602) 524-6602
ps@strojnik.com

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| PETER STROJNIK,<br><br>                                          Plaintiff,<br><br>         vs.<br><br>(1)     DRIFTWOOD HOSPITALITY MANAGEMENT, LLC; (2) UNITED HOTELS AND RESORTS, LLC; (3) CGD TEMPE LP,<br><br>                                          Defendant. | Case No: CV2020-054300<br>**COMPLAINT**<br><br>1.  **Americans with Disabilities Act**<br>2.  **Negligence**<br>3.  **Negligent Misrepresentation**<br>4.  **Failure to Disclose**<br>5.  **Fraud / Consumer Fraud**<br><br>**JURY TRIAL REQUESTED** |

## SYNOPSIS OF CLAIMS

1.  Plaintiff brings this action as an ADA Tester and a consumer of hotel lodging services. Hotels, motels and other places of lodging have developed a system of deceptive self-identification through the use of purchased brand names such as "Holiday Inn" and "DoubleTree by Hilton" while at the same time concealing the true identity of the hotel owners and operators. The intent and purpose of this deceptive identification is to mislead the lodging public into believing that they are booking a hotel room at a national brand name property when they are in fact booking a room with an unknown owner and an unknown operator.

2.  This Complaint describes the deceptive identification of a two hotels in Maricopa County: The Holiday Inn Phoenix West located at 1500 N. 51st Avenue, Phoenix, Arizona 85043 ("Holiday Inn") and Doubletree By Hilton Hotel located at 2100 South Priest Drive in Tempe, AZ 85282 ("Doubletree by Hilton").

3. "Holiday Inn" is neither owned nor operated by "Holiday Inn". It is operated by Defendant Driftwood Hospitality Management, LLC and owned by United Hotels and Resorts, LLC. The use of the brand "Holiday Inn" is purchased from the current ostensible owner of the brand, Intercontinental Hotels Group ("IHG").

4. "Doubletree by Hilton" is neither owned nor operated by Hilton. It is operated by Defendant Driftwood Hospitality Management, LLC and owned by CGD Tempe, LP. The use of the brand name "Doubletree by Hilton" is purchased from the current ostensible owner of the brand, Hilton Domestic Operating Company, Inc., for the purpose of misleading the consumers, including Plaintiff.

5. The Complaint further notes that in 1990 the U.S. Congress passed the Americans with Disabilities Act ("ADA") which requires public accommodations, including places of lodging such as Holiday Inn and Doubletree by Hilton to abide by certain well developed and clearly understood accessibility requirements. Places of lodging generally follow the business model that compares the costs of ADA remediation against the settlement and defense costs of occasional lawsuit, and the use of misrepresentations on their booking websites.

6. Holiday Inn and Doubletree by Hilton prefer paying a sporadic litigation costs and settlement amounts versus incurring the costs of remediation because the former is cheaper than the latter. Both hotels have been previously sued for violating the ADA, to wit: *Gastelum v. Champion Hotel Investment of Phoenix,* (U.S. Dist. Az. Case No: 2:17-cv-03834-DJH) (Holiday Inn) and *Gastelum v. CGD Tempe, L.P.,* (U.S. Dist. Az. Case No: 2:18-cv-00512-GMS) (Doubletree by Hilton), but they have not remediated the ADA violations. Both Hotels engage in misrepresentations of accessible features at their booking websites. Both hotels perpetuate discrimination against the disabled in favor of profit. Both hotels maintain architectural and non-architectural barriers to accessibility.

7. Plaintiff brings this action pursuant to the (1) Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.* and corresponding regulations, 28 CFR Part 36 and Department of Justice Standards for Accessible Design ("ADA"), (2) Negligence, (3) Negligent Misrepresentation, (4) Failure to Disclose and (5) Fraud / Consumer Fraud.

2

**PARTIES**

8.  Plaintiff is a retired veteran and a disabled person as defined by the 2008 ADA Amendment Act, 28 C.F.R. 36.105 all as more fully developed below.

9.  Defendant Driftwood Hospitality Management, LLC, operates numerous lodging properties, including the Holiday Inn property at 1500 N. 51st Ave., Phoenix, Arizona and the DoubleTree by Hilton property at 2100 South Priest Drive in Tempe, AZ 85282.

10. Defendant United Hotels and Resorts, LLC owns the Holiday Inn property.

11. Defendant CGD Tempe, LP, owns the Doubletree by Hilton property.

12. Holiday Inn and Doubletree by Hilton are sometimes referred to jointly as "Hotels".

**PLAINTIFF'S DISABILITIES AS DEFINED BY THE 2008 ADA AMENDMENT ACT AND 28 C.F.R. 36.105**

13. At all times relevant hereto, Plaintiff suffered from the following physical disabilities: prostate cancer, genitourinary impairment, renal cancer, severe right-sided neural foraminal stenosis with symptoms of femoral neuropathy, missing right knee ameliorated with a prosthesis, limitation on the use of both shoulders, elbows and wrists, pleurisy, hyper blood pressure.

14. Plaintiff's physical infirmities alleged above do both of the following:

    a.  Affect neurological, musculoskeletal, respiratory, cardiovascular, reproductive and genitourinary body systems; and

    b.  Limit, without regard to mitigated or unmitigated measures, active or inactive state, remissive or non-remissive condition, the following major life activities: walking, standing, sitting, bending, sleeping, working, climbing stairs, kicking, jumping, twisting body, running, reaching, lifting, writing, working, twisting the wrist, shoulder and elbows, grasping, pushing, opening doors, breathing, getting in and out of a car, working, carrying stuff and other major life activities.

15. Plaintiff has a history of impairments stated in the preceding paragraph.

16. Plaintiff is regarded as having a physical conditions that limit major life activities.

17. Because of Plaintiff's disabilities, he requires the use of lodging facilities that are accessible to him and have the standard accessibility features of the construction related accessibility standards including those required by 42 U.S.C. Sec. 12101 et seq., 28 C.F.R. Part 36, the relevant Standards for Accessibility Design, as such laws and regulations relate to walking, standing, sitting, bending, sleeping, working, climbing stairs, kicking, jumping, twisting body, running, reaching, lifting, writing, working, twisting the wrist, shoulder and elbows, grasping, pushing, opening doors, breathing, getting in and out of a car, carrying stuff and working.



18. Plaintiff has been declared disabled and has been issued a government disability placard reproduced in the margin.

19. The following Table 1 indicates the relationship between Plaintiff's ADA disabilities and major life activities:

**RELATION BETWEEN PLAINTIFF'S ADA DISABILITY AND MAJOR LIFE ACTIVITIES**

| DISABILITY | | | | RELATION | |
|---|---|---|---|---|---|
| DESCRIPTION | DISABILITY PRONG | | | MAJOR LIFE ACTIVITY | 28 C.F.R. 36 REFERENCE |
| | Impairment | History Of | Reg'ed As | | |
| Prostate Cancer And Genitourinary Impairment | x | x | x | Abnormal cell growth, genitourinary, bladder, reproductive functions. | (c)(1)(ii) (d)(1)(iv) (d)(1) (v) (d)(1) (vi) (d)(1)(viii) (d)(2)((iii)(F) (e)(1)(2) (f)(1) |
| Renal Cancer | x | x | x | Abnormal cell growth, midsection twisting, turning, general movement. | (c)(1)(ii) (d)(1)(iv) (d)(1)(v) (d)(1)(vi) (d)(1)(viii) (d)(2)((iii)(F) |

4

| | | | | | (e)(1)(2) (f)(1) |
|---|---|---|---|---|---|
| Severe Right-Sided Neural Foraminal Stenosis With Symptoms Of Femoral Neuropathy | x | x | x | Walking, standing, sitting, bending, sleeping, working, climbing stairs, kicking, jumping, twisting body, running, climbing, carrying stuff and other major life activities | (c)(1)(i) (d)(1)(iv) (d)(1)(v) (d)(1)(vi) (d)(1)(viii) (d)(2)(iii)(D) (e)(1)(2) (f)(1) |
| Partially Missing Limb - Missing Right Knee | x | x | x | Walking, standing, sitting, bending, walking, sleeping, working, climbing stairs, kicking, jumping, running, twisting knee, carrying stuff, and other major life activities. | (c)(1)(i) (d)(1)(iv) (d)(1)(v) (d)(1)(vi) (d)(1)(viii) (d)(2)((iii)(D) (e)(1)(2) (f)(1) |
| Limitation On The Use Of Both Shoulders, Elbows And Wrists | x | x | x | Performing manual tasks, sleeping, reaching, lifting, writing, working, twisting the wrist, shoulder and elbows, grasping, pushing, opening doors, carrying stuff and working. | (c)(1)(i) (d)(1)(iv) (d)(1)(v) (d)(1)(vi) (d)(1)(viii) (e)(1)(2) (f)(1) |
| Pleurisy | x | x | x | Performing manual tasks, sleeping, walking, reaching, lifting, writing, working, carrying stuff, or physically functioning on any level. | (c)(1)(i) (d)(1)(iv) (d))1)(v) (d))1)(vi) (d)(2)((iii)(D) (e)(1)(2) (f)(1) |
| **Table 1** | | | | | |

20. Plaintiff has been declared permanently disabled by the Arizona Department of Transportation and is, therefore "regarded as" being disabled. The disabled placard

reproduced in the margin above entitles him to preferential parking, stopping and the use of passenger loading / drop of zone areas.

21. In their unmitigated, active state, Plaintiff's impairments require the use of a wheelchair as defined in 28 C.F.R. 36.104.

22. Plaintiff incorporates the entirety of 28 C.F.R. 36 and the Standards for Accesibility Design into this Complaint as if fully stated herein.

**PLAINTIFF'S ADA REQUIREMENTS FOR FULL AND EQUAL ENJOYMENT OF A HOTEL**

23. With respect to the disclosures required by 28 C.F.R. 36.302(e)(1)(ii) and with respect to the removal of actual, physical or architectural barriers to accessibility,  Plaintiff alleges:

   a. Plaintiff is ADA disabled as described above. The relationship between Plaintiff's impairments and major life activities is described in Table 1.

   b. Plaintiff's impairments are substantially limiting as this term is defined in the 2008 ADA Amendment Act and interpreted in 28 C.F.R. 36.105.

   c. Plaintiff alleges that the provisions of the 2008 ADA Amendment Act and 28 C.F.R. 35.105 relating to (1) ameliorative effects of mitigating measures (2) episodic impairments, (3) remissive impairments, (4) predictable assessments and (5) the interpretative definition of "substantially limiting" apply to Plaintiff.

   d. Because of and based on Plaintiff's impairments described above, Plaintiff requires a place of lodging  where he desires to book a room to both:

      1. Identify and describe accessible features and guest rooms offered through its reservations service in sufficient detail to permit Plaintiff assess independently whether Defendant's Hotel and guest rooms meet Plaintiff's accessibility needs; and

      2. Remediate architectural accessibility barriers that relate to Plaintiff's impairments.

e.  The identification of accessible features at the hotel through a hotel's reservation service is required because without such information, Plaintiff is unable to assess independently whether a hotel's condition meets Plaintiff's needs.

f.  The remediation of architectural accessibility barriers as they relate to Plaintiff's impairments is required because any encounter with architecturally inaccessible elements causes Plaintiff discomfort and pain when using, negotiating, overcoming or otherwise encountering such barriers.

g.  As a result, Plaintiff requires a hotel's booking services to disclose, and the hotel to remediate, all of the following accessibility requirements of the applicable Standards for Accessibility Design[1]:

(i) Operable parts [205[2], 309, 404,] such as doors, door opening and closing hardware, AC controls. An encounter with a non-compliant operable part causes Plaintiff to experience pain and discomfort when using, negotiating, overcoming or otherwise encountering such a barrier and deprive him of full and equal enjoyment of the hotel.

(ii) Knee and toe clearances [306] at counters, bars etc. An encounter with a non-compliant knee and toe clearance causes Plaintiff to experience pain and discomfort when using, negotiating, overcoming or otherwise encountering such a barrier and deprive him of full and equal enjoyment of the hotel.

(iii)    Reach ranges [308] in sales stores and other elements. An encounter with a non-compliant reach range causes Plaintiff to experience pain and discomfort when using, negotiating, overcoming or otherwise encountering such barriers and deprive him of full and equal enjoyment of the hotel.

---

[1] These requirements are based on Plaintiff's disability as defined in the 2008 ADA Amendment Act and 28 C.F.R. 36.105 in their active, inactive, remissive, non-remissive, mitigated or unmitigated states.

[2] Bracketed numbers refer to Standards for Accessibility Design.

7

(iv)    Accessible routes [402]. An encounter with a non-compliant accessible route causes Plaintiff to experience pain and discomfort when using, negotiating, overcoming or otherwise encountering such a barrier and deprive him of full and equal enjoyment of the hotel.

(v) Walking surfaces [403] on accessible routes. An encounter with a non-compliant walking surfaces causes Plaintiff to experience pain and discomfort when using, negotiating, overcoming or otherwise encountering such a barrier and deprive him of full and equal enjoyment of the hotel.

(vi)    Parking spaces, passenger loading ones, stairways and handrails [501, 502, 503, 504, 505]. An encounter with a non-compliant parking facilities, stairways and handrails causes Plaintiff to experience pain and discomfort when using, negotiating, overcoming or otherwise encountering such barriers and deprive him of full and equal enjoyment of the hotel.

(vii)    Toilet and bathing rooms, water closets and toilet compartments, lavatories and sinks, bathtubs, shower compartments, grab bars, seats, washing machines, clothes dryers and saunas and steam rooms [602, 603, 604, 606, 607, 608, 609, 610, 611 and 612]. An encounter with a non-compliant toilet and bathing rooms, water closets and toilet compartments, lavatories and sinks, bathtubs, shower compartments, grab bars, seats, washing machines, clothes dryers and saunas and steam rooms cause Plaintiff to experience pain and discomfort when using, negotiating, overcoming or otherwise encountering such barriers and deprive him of full and equal enjoyment of the hotel.

(viii)    Transient lodging guest rooms [806]. An encounter with a non-compliant transient lodging guest room causes Plaintiff to experience pain and discomfort when using, negotiating, overcoming or otherwise encountering such a barrier and deprive him of full and equal enjoyment of the hotel.

(ix)    Dining surfaces and work surfaces, benches, check out isles and sales and service counters [902, 903, 904]. An encounter with a non-compliant dining

8

surfaces and work surfaces, benches, check out isles and sales and service counters cause Plaintiff to experience pain and discomfort when using, negotiating, overcoming or otherwise encountering such barriers and deprive him of full and equal enjoyment of the hotel.

(x) Swimming pools and saunas [1009]. An encounter with non-compliant swimming pools or saunas causes Plaintiff to experience pain and discomfort when using, negotiating, overcoming or otherwise encountering such barriers and deprive him of full and equal enjoyment of the hotel.

**ALLEGATIONS RELATING TO HOLIDAY INN**

24. Driftwood holds itself out as the manager and operator of Holiday Inn.

25. On or about July 10, 2020, Plaintiff reviewed Driftwood's booking website diftwoodhospitality.com to visit and/or lodge at the Holiday Inn.

26. The Driftwood booking website referred Plaintiff to Holiday Inn Phoenix West Website:



| Holiday | Inn | | Phoenix-West |
| --- | --- | --- | --- |
| 1500 | North | 51st | Ave |
| Phoenix, AZ 85043 | | | |
| **Phone:** 602-484-9009 | | | |
| **Fax:** 602-484-0108 | | | |
| Website | | | |

27. Upon clicking on the "website" prompt for Holiday Inn, Plaintiff was taken to a website "westphoenixhotel.com" which is a Japanese prostitution recruitment website www.westphoenixhotel.com:



28. Plaintiff was shocked and dismayed by Holiday Inn website disclosed on the Driftwood's website.

29. Plaintiff's further efforts took him to the booking website for International Hotels Group PLC ("IHG") which disclosed that it owns the Holiday Inn brand:



30. The IHG website provides booking services for Holiday Inn.  Plaintiff found the following information on the IHG booking website relative to 28 C.F.R. 36.302(e)(1)(ii) required disclosures for Holiday Inn:

| 28 C.F.R. 36.302(e)(1)(ii) DISCLOSURES |
|---|
| https://www.ihg.com/holidayinn/hotels/us/en/phoenix/phxaz/hoteldetail |

https://www.ihg.com/hotels/us/en/find-hotels/hotel/list?fromRedirect=true&qAms=null&qSrt=sAV&qDest=Phoenix,%20AZ,%20United%20States&qCiD=22&qCiMy=062020&qCoD=23&qCoMy=062020&setPMCookies=true&srb_u=1



**Hotel Areas with Accessible Routes from Accessible Public Entrance**

- Registration Area
- Accessible Guest Rooms
- Business Center
- Meeting Room
- Exercise Facility
- Pool

**Provided by Hotel**

- Accessible Self-Parking
- Van Accessible Self Parking
- Ramp Access
- Portable Bathtub Seats
- Closed Caption TVs
- Telephone with TDD
- Visual Alarm/Alert in Guest Rooms
- Visual Alarm/Alert in Public Spaces
- Communication Kits with Visual Alarms

**ROOMS**

https://www.ihg.com/holidayinn/hotels/us/en/find-hotels/hotel/rooms?qDest=1500%20North%2051st%20Avenue,%20Phoenix,%20AZ,%20US&qCiMy=62020&qCiD=11&qCoMy=62020&qCoD=12&qAdlt=1&qChld=0&qRms=1&qRtP=6CBARC&qSlH=PHXAZ&qAkamaiCC=US&qSrt=sDD&qBrs=re.ic.in.vn.cp.vx.hi.ex.rs.cv.sb.cw.ma.ul.ki.va.ii.sp.nd.ct.sx&qAAR=6CBARC&qWch=1&qSmP=1&setPMCookies=true&qRad=30&qRdU=mi&srb_u=1&qSHBrC=HI

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24



**ONLY 1 ROOM CATEGORY AVAILABLE. THERE ARE AT LEAST 4 MORE CATEGORIES:**

("2 BEDS" COVERS 2 DOBLE BEDS AND TWO QUEEN BEDS CATEGORIES)

**Table 2**

31. IHG disclosed the information relating to Holiday Inn in its capacity as the agent
(IHG) for principal ("Holiday Inn").

32. The reproduction of relevant booking websites in Table 2 above demonstrates a
failure to identify and describe accessible features and guest rooms offered through

25
26
27
28

13

its reservations service in sufficient detail to permit Plaintiff to assess independently whether Defendant's Hotel or guest room meet Plaintiff's accessibility needs.

33. The booking website also discloses that the alleged accessible rooms at the Holiday Inn are not dispersed among various categories of guest rooms as documented in Table 2.

34. Therefore, Plaintiff called Holiday Inn and inquired whether it was ADA compliant. The booking clerk confirmed that it was.

35. On or about July 11, 2020, Plaintiff personally visited Holiday Inn and personally encountered the following photographically documented conditions at the Hotel. Below each photograph is a vernacular description of the barrier that denied Plaintiff the 'full and equal' access that would satisfy the injury-in-fact requirement (i.e., that he personally suffered discrimination under the ADA on account of his disability).



**PERSONAL BARRIER ECOUNTERS 2020-07-11**

Identification.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





Accessible parking slope too steep.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



No marked passenger loading zone.



Passenger loading zone too steep.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





Improperly configured check in counter.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





Inaccessible bar.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



No access from parking to lobby – no curb ramps.



No van accessible marking anywhere.

**Table 3.**

36. IHG's disclosures made on Holiday Inn's booking website, Table 2, were (1) inadequate and (2) false with respect to, inter alia, allegedly accessible "public entrance", "registration desk", "accessible self-parking" and "van accessible self-parking" as documented in Table 3.

37. Plaintiff is deterred from booking a room at the Holiday Inn because the violations documented above are directly related to his disabilities by the application and use of common sense as suggested by the United States Supreme Court in *Ashcroft v. Iqbal,* 556 U.S. 662 (2009)

38. Each of the above conditions constitute a violation of the ADA and deprived Plaintiff of full and equal access and enjoyment of the Holiday Inn.

39. The removal of barriers is readily achievable.

40. Plaintiff's injury will be redressed by the removal of barriers as requested below.

### ALLEGATIONS RELATING TO DOUBLETREE BY HILTON

41. On or about July 11, 2020, Plaintiff consulted DoubleTree by Hilton website at https://www.hilton.com/en/hotels/phxmpdt-doubletree-phoenix-tempe.

42. Plaintiff discovered the following statements and representations there:

| **28 C.F.R. 36.302(e)(1)(ii) DISCLOSURES**<br>**https://www.hilton.com/en/hotels/phxmpdt-doubletree-phoenix-tempe/** |
|---|
| *Accessible Amenities*<br><br>**Available accessible features include:**<br><br>• Accessible<br>• Accessible business center<br>• Accessible concierge desk<br>• Accessible elevators<br>• Accessible exercise facility<br>• Accessible guest rooms with mobility features with entry or passage doors that provide 32" of clear width<br>• Accessible hotel restaurant<br>• Accessible meeting rooms<br>• Accessible parking<br>• Accessible parking spaces for cars in the self-parking facility<br>• Accessible public entrance<br>• Accessible registration desk |

- Accessible route from the accessible public entrance to the accessible guestrooms
- Accessible route from the accessible public entrance to the registration area
- Accessible route from the hotel's accessible entrance to the meeting room/ballroom area
- Accessible route from the hotel's accessible public entrance to at least one restaurant
- Accessible route from the hotel's accessible public entrance to the business center
- Accessible route from the hotel's accessible public entrance to the exercise facilities
- Accessible route from the hotel's accessible public entrance to the spa
- Accessible route from the hotel's accessible public entrance to the swimming pool
- Accessible swimming pool
- Accessible transportation with advance notice
- Assistive listening devices for meetings upon request
- Closed captioning on televisions or closed captioning decoders
- Hotel complies with ADA Guidelines
- Hotel complies with the Americans with Disabilities Act of 1990
- Public Areas/Facilities accessible for physically challenged
- Roll-in Shower
- Rooms accessible to wheelchairs (no steps)
- Service animals welcome
- TTY for guest use
- Van-accessible parking in the self-parking facility
- Visual alarm for hearing impaired

**The following features aren't available:**

- Valet only parking

<div style="background-color:#990000;color:white;text-align:center;font-weight:bold">ROOMS</div>





**Table 4.**

43. The representations in the above Table 4 state that DoubleTree by Hilton is a fully accessible hotel.

44. The representations in Table 4 admit that the ostensibly accessible rooms at the DoubleTree by Hilton are not properly dispersed among various categories of rooms.

45. Plaintiff visited DoubleTree by Hilton and noted the following ADA deficiencies:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**PERSONAL BARRIER ECOUNTERS**
**2020-07-11**

Identification

Inaccessible to fireplace sitting area

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



Improperly configured handrails.



Inaccessible gift shop items.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



Inaccessible to Milagro



Improperly configured handrails to Milagro.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



Over 20 lbs to open.



Inaccessible restaurant – bar sitting area.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28


Inaccessible bar.


Only one grab bar in accessible toilet.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28


More than 5 lbs to open.


Improperly configured handrails throughout.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



All latches to bodies of water too  high.



Open risers throughout.



Handicapped parking visually too steep.

**Table 5.**

46. The list of unavailable accessibility features is false and incomplete, as documented in Table 5.

47. The representations that DoubleTree by Hilton is "accessible" with "accessible hotel restaurant" and "accessible parking" and "accessible registration desk" and that "Hotel complies with ADA guidelines" and that it complies "with the Americans with Disabilities Act of 1990" are false as documented in Table 5.

48. Plaintiff  is deterred from booking a room at the DoubleTree by Hilton because the violations documented above are directly related to his disabilities by the application and use of common sense as suggested by the United States Supreme Court in *Ashcroft v. Iqbal,* 556 U.S. 662 (2009)

49. Each of the above conditions constitute a violation of the ADA and deprived Plaintiff of full and equal access and enjoyment of the DoubleTree by Hilton.

50. The removal of barriers is readily achievable.

51. Plaintiff's injury will be redressed by the removal of barriers as requested below.

**ALLEGATIONS RELATING TO INTENTIONALITY**

52. Defendants have been subject to a previous ADA actions but have not remediated ADA violations.

53. Defendants made a conscious decision to not comply with the ADA and to discriminate against persons with disabilities because, in their business judgment, payment of lawsuit damages is cheaper than integration through ADA compliance.

54. Defendants made a conscious decision to mislead the traveling public of the ownership, management and operations of their Hotels under deceptive names, i.e., Holiday Inn and DoubleTree by Hilton.

55. Factors for consideration include:

   a. Defendants' conduct is and has been reprehensible; and

   b. The severity of the harm likely to result, i.e. segregation of persons with disabilities, has been achieved through greed for net profit; and

   c. Defendants' actions actually segregate Plaintiff and other disabled individuals from the non-disabled rest traveling public; and

   d. The duration of Defendant's misconduct is of long duration; and

   e. Defendants' were and are fully aware of their own illicit maintenance of segregationist hotels; and

   f. Particularly where compensatory damages may be low, "the need for punishment or deterrence may be increased by reason of the very fact that the defendant will have no liability for compensatory damages". *Sanchez v. Clayton*, 117 N.M. 761, 767, 877 P.2d 567, 573 (1994) (citing to 1 Dan B. Dobbs, *Law of Remedies* § 3.11(10), at 515-16 (2d ed. 1993))).

56. These factors recommend that only the most severe sanctions against Defendants will assure compliance with the ADA, integration of disabled individuals into the mainstream of social life, and assure that Defendants' and others similarly situated stop deceiving the public consumers, including Plaintiff, with false representations of their places of lodging.

**COUNT I**
**(Americans with Disabilities Act)**

57. Plaintiff realleges all allegations heretofore set forth.

33

58. Defendants are owners and operators of Holiday Inn and DoubleTree by Hilton as more fully developed above.

59. Defendant have violated the requirements of the ADA, including 28 C.F.R. 36 and the relevant Standards for Accessibility Design as more fully stated above.

**WHEREFORE,** Plaintiff prays for relief against each Defendant as follows:

    A. Relief described in 42 U.S.C. §2000a – 3; and

    B. Relief described in 42 U.S.C. § 12188(a) and (b) and, particularly -

    C. Injunctive relief order to alter Defendant's place of public accommodation to make it readily accessible to and usable by all individuals with disabilities; and

    D. Requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by Subchapter III of the ADA; and

    E. Equitable nominal damages; and

    F. For costs, expenses and attorney's fees; and

    G. All remedies provided for in 28 C.F.R. 36.501(a) and (b); and

    H. All other relief susceptible of proof based on the allegations.

<div align="center">

**COUNT II**
**(Negligence and Negligence Per Se)**

</div>

60. Plaintiff realleges all allegations heretofore set forth.

61. Defendants owed Plaintiff a duty to remove ADA accessibility barriers so that Plaintiff as a disabled individual would have full and equal access to Defendants' Hotels.

62. Defendants has been subject to previous ADA actions in the United States District Court for the District of Arizona *Gastelum v. Champion Hotel Investment of Phoenix,* (U.S. Dist. Az. Case No: 2:17-cv-03834-DJH) (Holiday Inn) and *Gastelum v. CGD Tempe, L.P.,* (U.S. Dist. Az. Case No: 2:18-cv-00512-GMS) (Doubletree by Hilton), but they have not remediated the ADA violations.

63. The ADA is a civil rights legislative pronouncements while the enforceable implementing regulation are safety pronouncements. *See,* e.g. 28 C.F.R. 36 and 2010 Standards for Accessibility Design.

64. Every time that Plaintiff is required to negotiate a non-compliant element in Defendant's Hotel, Plaintiff suffers pain and physical discomfort that the regulation is designed to prevent.

65. Plaintiff personally experienced the violations of enforceable implementing regulations and personally experienced paid, discomfort and suffering as a result of Defendants' violations of implementing regulations.

66. Plaintiff suffered physical and emotional damages in an amount to be proven at trial but in no event less than $35,000.00.

67. The implementing regulations were designed for the specific purpose of preventing, in part, the types of injuries suffered by Plaintiff.

68. Defendants breached this duty.

69. Defendants' knowing, and intentional discrimination has worked counter to our Nation's goals enumerated in 42 U.S.C. 12101(a), causing Plaintiff injury.

70. By engaging in negligent conduct described herein, Defendants engaged in intentional, aggravated and outrageous conduct.

71. Defendants consciously, knowingly and intentionally pursued a course of conduct knowing that it created a substantial risk of significant harm to Plaintiff.

72. Defendant is liable to Plaintiff for punitive damages in an amount to be proven at trial sufficient, however, to deter these Defendants and others similarly situated from pursuing similar acts, and in no event less than $235,000.00.

**WHEREFORE,** Plaintiff prays for relief as follows:

    A. For finding of negligence; and

    B. For damages in the amount of no less than $35,000.00; and

    C. For punitive damages in the amount of no less than $235,000.00; and

    D. For such other and further relief as the Court may deem just and proper.

<div align="center">

**COUNT III**
**(Negligent Misrepresentation)**

</div>

73. Plaintiff realleges all allegations heretofore set forth.

74. Defendants failed to exercise reasonable care or competence in obtaining or communicating the information regarding ADA compliance to Plaintiff through their booking website as alleged above.

75. Defendants supplied false information to Plaintiff for guidance in Plaintiff's business transaction, to wit: the renting of a hotel room.

76. Defendants' false statements were made in the course of Defendants' business in which Defendants have a pecuniary interest, to wit: renting of rooms.

77. Plaintiff justifiably relied on Defendants' false representation.

78. Plaintiff has suffered pecuniary losses as a result of his reliance on Defendants' false information regarding ADA compliance, to wit: he spent time, effort and resources in an amount to be proven at trial, but in no event less than $35,000.00.

79. Defendant either intended to cause injury to Plaintiff or defendant consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Plaintiff.

80. Defendant is liable to Plaintiff for punitive damages in an amount to be proven at trial sufficient, however, to deter these Defendants and others similarly situated from pursuing similar acts, but in no event less than $235,000.00.

**WHEREFORE,** Plaintiff prays for relief as follows:

    A. For finding of negligent misrepresentation; and

    B. For damages in an amount requested; and

    C. For punitive damages in the amount requested; and

    D. For such other and further relief as the Court may deem just and proper.

### COUNT IV
### (Failure to Disclose)

81. Plaintiff realleges all allegations heretofore set forth.

82. Defendants were under a duty to Plaintiff to exercise reasonable care to disclose matters required to be disclosed pursuant to 28 C.F.R. 36.302(e)(1)(ii) as more fully alleged above.

83. Defendants was under a duty to disclose matters to Plaintiff that Defendants knew were necessary to be disclosed to prevent Plaintiff to be misled by partial disclosures of ADA compliance as more fully alleged above.

84. The compliance with the ADA is a fact basic to the transaction.

85. Defendants failed to make the necessary disclosures.

86. As a direct consequence of Defendants' failure to disclose, Plaintiff visited the Hotels, but is deterred from booking a room there because of their non-compliance with the ADA.

87. Plaintiff has been damaged by Defendant's non-disclosure in an amount to be proven at trial, but in no event less than $35,000.00.

88. Defendants either intended to cause injury to Plaintiff or defendant consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Plaintiff.

89. Defendants are liable to Plaintiff for punitive damages in an amount to be proven at trial sufficient, however, to deter these Defendants and others similarly situated from pursuing similar acts but in no event less than $235,000.00

**WHEREFORE,** Plaintiff prays for relief as follows:

    A. For finding of that Defendant failed to disclose information; and

    B. For damages in the amount requested; and

    C. For punitive damages in the amount requested; and

    D. For such other and further relief as the Court may deem just and proper.

## COUNT V
### (Fraud -Common Law and Consumer)

90. Plaintiff realleges all allegations heretofore set forth.

91. Defendants made representations as alleged above.

92. The representations were material.

93. The representations were false.

94. Defendants knew that the representations were false or were ignorant to the truth or falsity thereof.

95. Defendants intended that Plaintiff rely on the false representations.

96. Plaintiff reasonably relied on the misrepresentations.

97. Plaintiff has a right to rely on the misrepresentations.

98. Plaintiff was consequently and proximately damaged by Defendant's misrepresentations.

99. Defendants' misrepresentations were made in connection with the sale or advertisement of merchandise with the intent that Plaintiff rely on it.

100. Renting of hotel rooms is "merchandise" as this term is defined in A.R.S. §44-1521(5).

101. Plaintiff suffered an injury resulting from the false misrepresentation(s) and was damaged thereby in an amount of no less than $35,000.00.

102. Defendant either intended to cause injury to Plaintiff or defendant consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Plaintiff.

103. Defendant is liable to Plaintiff for punitive damages in an amount to be proven at trial sufficient, however, to deter this Defendant and others similarly situated from pursuing similar acts but in no event less than $235,000.00.

**WHEREFORE,** Plaintiff prays for relief as follows:

        A. For finding of that Defendant failed to disclose information; and

        B. For damages in the amount requested; and

        C. For punitive damages in the amount requested; and

        D. For such other and further relief as the Court may deem just and proper.

**REQUEST FOR TRIAL BY JURY**

Plaintiff respectfully requests a trial by jury in issues triable by a jury.

RESPECTFULLY SUBMITTED this 13th day of July, 2020.

**PETER STROJNIK**

_____
Peter Strojnik
Plaintiff