Peter Strojnik,
7847 N. Central Avenue
Phoenix, Arizona 85020
Telephone: (602) 524-6602
ps@strojnik.com

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

Peter Strojnik,

Plaintiff,

vs.

(1)    Driftwood Hospitality Management, LLC et al.

Defendants.

Case Nos:    2:20-cv-01532-PHX-DJH
2:20-cv-00343
2:20-cv-01434
CONSOLIDATED

**PLAINTIFF'S RESPONSE TO CONSOLIDATED DEFENDANTS' MOTIONS FOR VARIOUS FORMS OF SANCTIONS AND FEES, DKT. NOS. 52, 53 AND 56**

**and**

**CROSS-MOTION FOR SANCTIONS**

## INTRODUCTION AND SUMMARY

Consolidated Defendants are not the prevailing parties. They are the losing parties. Each Defendant removed its case from the Superior Court to the District Court claiming federal jurisdiction. Upon removal, each Consolidated Defendant had the burden of proving federal jurisdiction. Instead of even attempting to prove federal jurisdiction, each of Consolidated Defendant filed a Fed. R. Civ. P. Rule 12(b)(1) motion to dismiss for *lack* of federal jurisdiction.

District Court specifically agreed that Consolidated Defendants failed to carry their burden of proof. The Court dismissed the action for lack of jurisdiction.

District Court's removal and remand analysis in *Fressadi v. Glover,* D.C.Ariz. 2:16-cv-03260-DJH at Dkt. 343 is illustrative. In a similar fact pattern, District Court held that *Defendants* failed to carry *their* burden of proving removal jurisdiction (citing to

*Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 682 (9th Cir. 2006)). The case was remanded the case back to the Superior Court.

In *Fressadi,* District Court made an even more telling observation specifically applicable to the case at bar. The Court held that **"lack of jurisdiction [renders] any decree [by the district court] void and the continuation of the litigation in federal court [is] futile."**[1] (emphasis supplied).

For their failure to prove removal jurisdiction, Consolidated Defendants request attorneys' fees in the amount over $100,000,00. Consolidated Defendants are not only the losing parties, but they are also the agents of a fraudulent, premeditated deception of the Court, their own clients, and Plaintiff.  They lied to this Court regarding removal jurisdiction, later openly admitted that they lied, and with the hitherto unparalleled hubris now demand $100,000 for their unmitigated fraud.

## MEMORANDUM

**1.  *Burden of proving federal jurisdiction upon removal is on Defendants, not Plaintiff.***

The party seeking removal bears the burden of establishing federal jurisdiction. *Abrego Abrego v. The Dow Chem. Co.*, supra. *Fressadi v. Glover*, supra.

In cases removed from state court, the removing defendant has "always" borne the burden of establishing federal jurisdiction. *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir. 1992). ("The 'strong presumption' against removal jurisdiction means that the defendant

---

[1] The relevant quote appears here:

> Under 28 U.S.C. § 1441(a), a defendant in a state court action may remove the action to a federal forum if "the district courts of the United States have original jurisdiction" over the action. 28 U.S.C. § 1441(a) (2003). **The burden of demonstrating the existence of federal jurisdiction rests with the removing defendants. *Abrego Abrego v. The Dow Chemical Co*., 443 F.3d 676, 685 (9th Cir. 2006)** ("It is to be presumed that a cause lies outside [the] limited jurisdiction [of the federal courts] and the burden of establishing the contrary rests upon the party asserting jurisdiction.") (internal quotation marks and citation omitted)). … "**Because lack of jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile, the removal statute should be strictly construed and all doubts should be resolved in favor of remand**." *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1985). (Emphasis supplied)

always has the burden of establishing that removal is proper."). *See also Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009) ("The defendant bears the burden of establishing that removal is proper."). If there is any doubt as to the right of removal, a federal court must reject jurisdiction and remand the case to state court. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003).

Consolidated Defendants failed to prove federal jurisdiction. *See* Order, Dkt. 61.

**2.  *Defendants sabotaged their own contention of federal jurisdiction.***

Defendants' counsel are learned members of the Bar, each well versed in ADA defense and removal jurisdiction.

In each of their notices of removal, each Consolidated Defendant contended that federal court had jurisdiction over Plaintiff's claims. Each represented that the contention of federal jurisdiction was warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law. Fed. R. Civ. P. 11(b)(2). Yet, almost immediately after removal, each Consolidated Defendant filed a motion to dismiss contending that the District Court really *lacked* jurisdiction. The two positions are diametrically inconsistent. Either Consolidated Defendants' contention of jurisdiction in the removal notices was true, or the subsequent contention of lack of jurisdiction was true. Both cannot be true. Asserting a contention that the district court has jurisdiction, and then arguing against its own position, is bad faith. At the very minimum, once the Consolidated Defendants realized that their contention of jurisdiction was wrong, i.e., when they filed their Motions to Dismiss for lack of jurisdiction, their obligation was to withdraw the notices of removal and agree to remove the entire case back to the Superior Court.

**3.  *The effect of Consolidated Defendants' wrongful removal on administration of justice is brutal and long reaching.***

The immediate effect of Defendant's failure to prove jurisdiction upon removal was the District Court order dismissing for lack of jurisdiction. Upon this finding, the District Court did not remand the matter back to the Superior Court as required by legal precedent in this District, *see* Dkt. nos. [60-1 through 60-5] (finding that the only option upon finding lack of standing in an ADA removed case is remand) and *Fressadi* at Dkt. 343. Instead,

the District Court dismissed Plaintiff's complaint with prejudice. According to *Fressadi,* any decree subsequent to the finding of lack of jurisdiction "[was] void and the continuation of the litigation in federal court futile".

Here, however, the District Court declined to follow her analysis in *Fressadi.* She conducted an analysis of the merits of Plaintiff's claims, reached a conclusion on the merits, analyzed Plaintiff's filings in the State Court and concluded that Plaintiff is a vexatious litigant.

The impact of District Court's decision is death knell to all who seek equal human rights for the disabled either in the District Court or in the Superior Court even where, as here, prior Superior Court decisions reach diametrically opposite conclusions. *See* Dkt. at 18-1 an 18-2 (Superior Court's denials of motions to declare Plintiff a vexatious litigant).

   a. ***The effect on improper removal on Consolidated Defendants themselves is grave: New Crescent Fees paid $38,518 to Mr. Leavitt, Driftwood paid $28,245 to Ms. Ryden and Xenia paid Ms. Warren $33,381(estimated)[2] :***

For their failure to prove removal jurisdiction, Driftwood paid their counsel $28,245.00, Dkt. at 52-1 and New Crescent paid their counsel $38,518, Dkt. at 54-1. Xenia's fees are extrapolated at $33,381. In total, Defendants' clients paid their lawyers over $100,000.00 for falsely representing that District Court had jurisdiction *when they knew all along that District Court did not have jurisdiction.*

This is also important in with respect to District Court's prior inquiry into Plaintiff's finances. Even assuming that the question regarding litigants' finances is somehow relevant, the salient question is not how much money *Plaintiff* made in ADA enforcement actions[3]. The salient question is *how much money did the defense lawyers make by knowingly filing a removal based on non-existent jurisdiction and then, irony of ironies, moved to dismiss for lack of jurisdiction.* Now we know. They made over one hundred thousand dollars.

///

---

[2] Extrapolated from New Crescent's and Driftwood's motions for fees.

[3] For Plaintiff, this number is a loss of 21,129.02. Dkt. 31.

4

> ***b. The true purpose of Defendants' improper removals was to avoid Superior Court's prior decisions finding (1) that Plaintiff has standing, (2) that his Complaints are not subject to Dismissal, and (3) that Plaintiff is not a vexatious litigant.***

All Consolidated Defendants knew that the Superior Court had issued judicially sound decisions regarding Plaintiff's standing. *See* Dkt. at 16-1 and 38-2 (denial of motion to dismiss under Ariz. R. Civ. P, 12(b)(1) and 12(b)(6)), Dkt. at 18-1 an 18-2 (denying motions to declare Plintiff a vexatious litigant). Consolidated Defendants' ulterior purposes of retaliation, interference, coercion and intimidation are evident[4].

Consolidated Defendants' practice is not uncommon. Many ADA defendants, as Consolidated Defendants here, rely on the finding by the Honorable District Court Judge Melinda Harmon that "a number of courts addressing Title III cases have been skeptical, and even hostile"[5] to ADA Testers. Here, Consolidated Defendants engaged in a furtive

---

[4] *See* 42 U.S.C. §12203 and 28 C.F.R. 36.206.

[5] Some ableists allege scandalous and impertinent plots and tales as a furtive reconnaissance mission to determine whether the memorable observation by the Honorable Judge Melinda Harmon in *Gilkerson v. Chasewood Bank*, 1 F.Supp .3d 570, 596-97 (S.D. Tex., 2014) might apply in *this* court. In *Gilkerson,* Judge Harmon displayed the courage to state what most know from experience:

> Testers have been an accepted and successful means of enforcing civil rights statutes under the Fair Housing Act and Title VII of the Civil Rights Act of 1964, although **a number of courts addressing Title III cases have been skeptical, and even hostile**. *See* Lee, *Giving Disabled Testers Access to Federal Courts,* 19 Va. J. Soc. Pol'y & L. at 321–23; Johnson, *Testers Standing up for Title III of the ADA,* 59 Case W. Res. L.Rev. at 689–702. "As a result of both the Attorney General's limited resources and the limited remedies available to Title III plaintiffs, 'most suits are brought by a small number of private plaintiffs who view themselves as champions of the disabled.' " *Betancourt v. Federated Dept. Stores,* 732 F.Supp. 2d 693, 701 (W.D.Tex.2010) *quoting Molski v. Evergreen Dynasty Corp.,* 500 F.3d 1047, 1062 (9th Cir. 2007). (Emphasis supplied.)

Consolidated Defendants' strategy is dangerous. Consolidated Defendants are aware of a significant social undercurrent of the hostile skepticism toward ADA plaintiffs. Defendants relentlessly bid to awaken potential skepticism in this Honorable Court. By pursuing arousal cynicism, Consolidated Defendants artfully create an intolerable level of

reconnaissance mission to see whether *this* District Court would follow those who display skepticism and hostility toward ADA plaintiffs.

### c. District Court suffered unnecessary and significant waste of its judicial resources.

$100,000 in defense attorneys' fees, plus comparable effort on the part of Plaintiff, produces a lot of motions and a lot of paper.  The District Court has to read each page of each paper. District Court reviews significant volume of legal precedent to conduct a learned review. For every hour of Defendants' time spent drafting papers, the Court's analysis takes up equivalent time in review. Where, as here, Defendants avow that District Court has jurisdiction only to attack the district court's jurisdiction immediately afterward, they engage in the artful practice worthy of serious sanctions.

The "dubious practice [of removing a case from state court to district court and then moving to dismiss for lack of standing]" results "in a significant waste of federal judicial resources, much of which [is] avoidable". *Collier v. SP Plus Corporation*, 889 F. 3d 894, 897 (7th Cir. 2018) (citing cases).  Further, as this Court has previously noted, the removal statutes are designed to "deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party". Dkt. at 51-1 at 7:26 – 8:9)

### d. The effect on Plaintiff's continued fight for equal protection was devastating.

Consolidated Defendants' ulterior purpose of retaliation, interference, coercion and intimidation is inferred. Here, Defendants' clearly ascertainable strategy was to first claim jurisdiction and immediately thereafter file motions to dismiss for lack of jurisdiction. Such strategy is not only unethical and immoral, but it violates clear ADA prohibition against retaliation, interference, coercion and intimidation[6].

This Court may be well aware that immediately following its jurisdictional decision, the decision was circulated among ADA defense bar in a perverse victory dance.

---

distrust between ADA plaintiffs and the Courts. The creation of uncertainty and distrust is Consolidated Defendants' and their lawyers' end game.

[6] *See* 42 U.S.C. §12203 and 28 C.F.R. 36.206.

Mr. Leavitt immediately called his old friend at Channel 15, Mr. Biscobing, who blared it on the evening news[7].

Plaintiff has been disparaged for doing nothing more than asserting a constitutional right of equal treatment.

**4. Conclusion and prayer for relief.**

For the foregoing reasons, Plintiff respectfully requests that Consolidated Defendants' motions be denied, that the Court issue a monetary sanction against Consolidated Defendants and their counsel payable to a 301(c)(3) organization for the disabled in the amount equal to the fees expended in this action, and to refer counsel to the District Court's Standing Committee on ethics.

RESPECTFULLY SUBMITTED this 25th day of January, 2021.

**PETER STROJNIK**

_____
Plaintiff

ECF filed this 25th day of January 2021.

---

[7] Mr. Biscobing is local Channel 15's resident fake news "reporter" whose entire professional life has been invested in being profoundly wrong.

7