Laurent R.G. Badoux (AZ SBN: 020753)
lbadoux@buchalter.com
BUCHALTER,
A Professional Corporation
16435 N. Scottsdale Road, Suite 440
Scottsdale, AZ 85254-1754
Telephone: 480.383.1800
Facsimile: 480.824.9400

Tracy A. Warren (Cal. SBN: 228013) (*admitted pro hac vice*)
twarren@buchalter.com
BUCHALTER,
A Professional Corporation
655 W. Broadway, Suite 1625
San Diego, CA  92101
Telephone: 619.219.5335

*Attorneys for Defendants Xenia Hotels and Resorts, Inc.,*
*XHR Phoenix Palms, LLC, and XHR Scottsdale Ranch, LLC*

J. Christian Word (VA SBN: 46008) (*admitted pro hac vice*)
christian.word@lw.com
LATHAM & WATKINS, LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: 202.637.2223

*Co-Counsel for Defendants Xenia Hotels and Resorts, Inc.,*
*XHR Phoenix Palms, LLC, and XHR Scottsdale Ranch, LLC*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Peter Strojnik, an individual,<br><br>    Plaintiff, *pro se*,<br><br>v.<br><br>Xenia Hotels and Resorts, Inc., a foreign corporation; XHR Phoenix Palms, LLC dba Royal Palms Hotel; XHR Scottsdale Ranch, LLC dba Hyatt Regency Scottsdale Resort and Spa at Gainey Ranch,<br><br>    Defendants. | Case Nos:  2:20-cv-01532-PHX-DJH<br>            2:20-cv-00343<br>            2:20-cv-01434<br>            CONSOLIDATED<br><br>**DEFENDANTS' RESPONSE TO MOTION FOR LEAVE TO CONDUCT DISCOVERY AND SUPPLEMENTAL SUPPORT FOR REQUESTED AWARD OF ATTORNEYS' FEES AND COSTS** |

Pursuant to the Court's August 18, 2021 Order [Doc. 83], Defendants Xenia Hotels and Resorts, Inc., XHR Phoenix Palms, LLC and XHR Scottsdale Ranch, LLC ("Defendants") hereby supplement their prior motion for attorney's fees and respond to the request of Plaintiff Peter Strojnik ("Strojnik" or "Plaintiff") for leave to conduct "discovery" as to Defendants' application for attorneys.

**A      Standards for Evaluating Reasonableness of Attorneys' Fees**

Plaintiff initiated this action in state court. Plaintiff raised eight (8) separate causes of action that represent a mixture of state and federal claims (e.g. ADA, Securities law violation). Although federal courts sitting in diversity tend to use state law jurisprudence when dealing with attorney's fees awards, when considering original jurisdiction issues and procedural sanctions, courts will look at federal jurisprudence.

As an initial matter, it is important to reiterate that the Private Securities Litigation Reform Act ("PSLRA") applies to the Securities Law claims on which Defendants completely prevailed. The PSLRA requires that "the court shall include in the record specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b)." 15 U.S.C. § 78u-4(c)(1). The imposition of sanction is automatic if the court finds that a party or attorney violated Rule 11(b), which Defendants contend Strojnik did. The sanctions to be awarded pursuant to the PSLRA are subject to an altogether different approach than the award of attorneys' fees. The presumption embodied in the PSLRA applies to the fees incurred by Defendants for the services of Latham & Watkins on the issue of compliance with Securities Laws.

Local Rule 54.2(c)(3)(A)-(M) incorporates the federal 12-factor test to assist the trial court in determining the reasonableness of the attorneys' fees sought for prevailing on the remainder of the claims. *See Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975); *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) (adopting 12-factor test); *see also Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)

(referring to the *Johnson* 12 factors and highlighting the special importance of the *success of the petitioning counsel* as well as the *lack of desirability of the litigation* as key elements).

### (1) LR 54.2(c)(3)(A); Time and Labor Required of Counsel:

Plaintiff feigns indignation at the amount of time devoted to his case by counsel for Defendants. In reality, Plaintiff has filed numerous actions against properties in the Hyatt portfolio all over the western United States, often filled with venomous accusations of intentional discrimination against individuals with disabilities, and allegations of efforts to lie and deceive the public at large. Plaintiff's own grandstanding and hyperbolic claims demand serious consideration, even if he is invariably the proverbial boy who cries wolf.

As a result, Defendant Hyatt has retained the Buchalter law firm to handle multiple actions filed by Plaintiff, and Attorney Tracy Warren has handled the coordination of all those matters to ensure consistency of pleadings, strategy and retention of institutional knowledge in addressing Plaintiff's litany of complaints. It is Plaintiff's very own prolix litigation that resulted in Attorney Warren overseeing the defense of this action, in addition to the involvement of undersigned counsel, Laurent Badoux, as lead local counsel, and of at least one associate throughout the span of this action to assist the shareholders in drafting pleadings and managing the case. Buchalter also used the services of legal research assistants to conduct case law and docket searches at a more cost-effective rate than if performed by counsel where warranted.

Further, Plaintiff contrived for this lawsuit a claim he had not raised in other ADA-accessibility-based lawsuits before, namely that Defendants, a public company, engaged in Securities fraud. That the claim proved as unmeritorious as any Plaintiff has ever raised did not mean that Defendants could ignore such significant allegations or treat them without proper regard. Defendants specifically retained attorneys from the firm of Latham & Watkins with top level expertise in Securities law.

This action proved as contentious as most Strojnik lawsuits, if not more, as the docket clearly establishes. In addition, once the Court consolidated this action with two other cases in evaluating common arguments that Plaintiff was engaged in vexatious litigation, counsel for the consolidated Defendants had to review pleadings filed against or by other parties in the consolidated action to ensure motions and submissions of common interest were properly accounted for.

This case, and the other two consolidated cases, represent the tipping point in this Court's recognition and sanctioning of Plaintiff's inappropriate litigation tactics. These Defendants and their counsel understood the importance of this case and left no stone unturned in ensuring the right outcome in this case.

**(2)     54.2(c)(3)(B); Novelty and Difficulty of Issues:**

Although it is true that Plaintiff's ADA claims largely all fail for similar elemental failures to connect purported accessibility issues with the existence of hurdle to his ability to visit and enjoy public accommodations, each and every case must be approached for the specific facts of the complaint and their application to the facility at issue. In addition, Plaintiff regularly introduces tangential tort claims in his various lawsuits in an effort to bolster claims for damages otherwise unavailable under the ADA. In the present case, Plaintiff took his creativity to a new level, by acquiring a nominal amount of Defendant Hyatt's publically traded stock in an effort to bootstrap a Securities law violation to his base accessibility claims.

Although Plaintiff contends that Defendants merely cobbled together filings in this case based upon existing work, the reality is that Plaintiff is substituting his mentality of how to file improper and vexatious lawsuit for the thought process of Defendants and their counsel. Defendants maintain that everything they have filed in this action is presented in the context of this litigation but imbued with elements of previously successful filings. Defendants' counsel have reviewed dozens of lawsuits filed by Plaintiff and decisions,

transcripts and findings in those lawsuits to ensure they can most effectively rebut any and all arguments Plaintiff raised, which they did effectively here and in other lawsuits.

### (3) 54.2(c)(3)(C); Required Skills:

Counsel for Defendants Warren and Badoux are experienced employment law practitioners, who have experienced not litigating ADA lawsuits under Title I and Title III, which, despite Strojnik's best efforts as a lawyer and a private litigant, remains a relatively niche practice sitting at an odd confluent of various areas of legal sub-specialization. The cases present unique legal issues of administrative law interpretation, constitutional standing and the interrelations of state and federal laws.

It is also important to note that dealing with Strojnik as an attorney and as a private litigant demands an additional layer of skills not often required in more civil litigation practices marked by personal respect among fellow practitioners. Counsel Warren and Badoux have sufficient experience and professionalism not to be intimidated by Strojnik's vitriolic rhetoric and often personal attacks. Over the course of his legal tribulations, Strojnik has not simply filed thousands of lawsuits across numerous jurisdictions against businesses small and large, but he has also threatened and sued opposing counsel who represented the businesses he entangled in his legal blackmail schemes, including most recently Lindsay Leavitt, one of the counsel in the consolidated cases (New Crescent). Strojnik sued the Arizona State Bar and the Arizona Supreme Court for having the temerity to make him accountable for his extortionate legal practices by taking away his law license. At every step of the way he has denigrated people and the judicial system, running roughshod over court rules and orders and general regard for civility. Litigating in these circumstances demands an expanded set of legal skills.

### (4) 54.2(c)(3)(D); Preclusion of Acceptance of Other Employment:

Counsel in this action were not precluded from accepting other engagement as a result of their handling of this action.

### (5) 54.2(c)(3)(E); Customary Fees:

Counsel for Defendant charged rates that are in keeping with fees charged to other clients for similar services. By way of example, the undersigned counsel's standard national rate is $510 but charged a reduced rate of $460 per hour to Defendants. As previously indicated in support of the original application for fees, the hourly rates of Buchalter attorneys working on this matter out of our San Diego office ($440 for Warren, $350 for Spear and $335 for Waltman) are commensurate with the legal markets in which they are based, or in Ms. Warren's case well below prevailing rates for attorneys with her experience in the San Diego area, and the specific expertise required of a case such as this. Likewise, because Securities Law is a niche practice involving complex issues, Defendants selected national experts from Latham & Watkins to handle this action. Has indicated in Christian Word's affidavit previously submitted for the Court's consideration, the firm's fees for services rendered is in keeping with market rate in this unique subset of the law.

### (6) 54.2(c)(3)(F); Fixed Fee:

Defendants are lodging their agreements with their outside counsel for the Court's consideration to be filed under seal, pursuant to an order of this Court. LR 5.6.

### (7) 54.2(c)(3)(G); Time Limitations:

The client did not impose time limitations on counsel and this factor is not applicable here.

### (8) 54.2(c)(3)(H); Monetary Value or Rights At Stake and Outcome Secured:

The value of the claims at issue and the public impact of a negative outcome, especially vis-à-vis Securities Law compliance were significant. In the context of settlement, even after this Court had granted dismissal, Strojnik refused to abandon demands that Defendants conduct consequential and expensive physical modification to

the Royal Palm property and pay him over $60,000 in other damages. These monetary costs and negative publicity, combined with the claim of violation of Securities Law for a publically-traded company raised the stakes significantly on securing a positive outcome for this case.

Furthermore, leading the way to get Strojnik declared a vexatious litigant, although perhaps not significant monetarily in the framework of this action alone, was a very important element of Defendants' desire to pursue an aggressive defense against an individual that has brought dozens of extortionate lawsuits against Hyatt properties in numerous jurisdictions.

**(9)   54.2(c)(3)(I); Experience, reputation and ability of counsel:**

Primary counsel for Defendants, Warren, Badoux and Word, are well-regarded lawyers within their community and areas of legal practice. They are frequent presenters on their respective topics of expertise, and have garnered recognition for their work and commitment to quality legal services. They are by any measure respected, experienced and eminently capable lawyers that Defendants selected with a recognition for their respective skills to bring about a successful resolution to Plaintiff's latest lawsuit.

**(10)   54.2(c)(3)(J); Undesirability of the Case:**

As indicated above, litigating against Plaintiff Strojnik is not a typical or frankly desirable situation for most attorneys or businesses. Buchalter counsel know first hand of Mr. Strojnik's tactics, his verbal bullying, harsh rhetoric, threats, propensity for filing frivolous motions, as best exemplified by his lawsuit for abuse of process against New Crescent and its attorney, Lindsay Levitt, personally, in state court, stemming from one of the consolidated matters here. *See Strojnik v. Leavitt et al.*, CV-2020-056297 (Maricopa County Superior Court May 11, 2021) (dismissing Strojnik's claim of abuse of process filed against opposing counsel in this matter, Lindsay Leavitt of Jennings Strouss) (copy attached to Badoux Declaration in support of original petition for fees).

In addition, this matter hit in the middle of a pandemic that has had devastating impact upon the hospitality industry and required Defendants to commit to a significant legal fee to bring about a favorable outcome and to ensure that Plaintiff would be deemed a vexatious litigant to curb his on-going abuses of the legal system.

This factor should weigh heavily in support of Defendants' fee application.

### (11)  54.2(c)(3)(K); Length and Nature of Client and Counsel Relationship:

Defendants have an established relationship with Buchalter, especially as to the defense of ADA accessibility lawsuits filed by Strojnik reaching over several years.

### (12)  54.2(c)(3)(L); Awards in Similar Action:

Plaintiff Strojnik has been sanctioned in other courts, and by this Court, and previously ordered to pay attorney's fees. Notably in *Strojnik v. 1017 Coronado, Inc.*, the Court ordered Strojnik to pay attorney's fees in a dismissed action approving rate for lead counsel of $500 per hour. 19-cv-02210 BAS-MSB (S.D. Cal. Jan. 12, 2021). To these Defendants' knowledge, no award against Strojnik involves an allegations of violations of Securities Law and/or an award of sanctions pursuant to the PSLRA.

### (13)  54.2(c)(3)(M); Miscellaneous Factors:

As further detailed in the Declarations of Laurent R.G. Badoux and Christian Word (Exhibits A and B, respectively to Defendants' Application for Fees, Doc. 79), which are incorporated by this reference, counsel for Defendants have consistently attempted to minimize duplication and to layer roles within their firm structure to ensure that the work is performed at the most appropriate experience and hourly price point appropriate. Undersigned counsel reviewed ELM Solutions 2018 Real Rate Report (Wolters Kluwer), a commonly used report of law firms effective billable rates in legal markets across the US (from Akron, OH to Winston, NC) for law firms seeking to benchmark their rates, which was the current edition at the time Defendants entered into their relationships with

legal counsel.

The Real Rates Report shows average effective rates for partners in the top quartile of the San Diego market to charge $875 per hour, while associates bill at $390 per hour on average. In New York, Partners of top quartile firms in general average $1201 per hour, while associates are billed out at $790 on average. In Phoenix, Partners in the top quartile billed their time at an average of $450 per hour, while associates charged $300 on average. These data points confirm that the fees charged to Defendants were commensurate with the prevailing rates, and, in Attorney Warren's case, deeply discounted.

The Declarations set forth each attorney performing the work, the hourly rate and the work performed. Based on these Declarations and the justification of those fees discussed in the following paragraphs, Defendants reiterate their requests for an award of attorneys' fees in the amount of $247,404.00, $110,068.00 to go to Buchalter, a Professional Corporation, and $137,336.00 to go to Latham & Watkins, LLP.

**B.     Conduct of Post-Judgment Discovery Is Unwarranted**

Defendants attached Declarations of Laurent R.G. Badoux and Christian Word (Exhibits A and B, respectively) to their original petition for fees. These Declarations are supported by itemized time entries for all individuals providing legal services to Defendants, leading to the total amount of attorneys' fees incurred by Defendants in this action. These entries are detailed with description for each such entry, and at least as to Buchalter's entries, preceded by ABA matter/billing codes. The Declarations for each of the lead counsel at both firms detail the general skill set and timekeeping practices of each firm and all attorneys performing work, their hourly rate and the work performed. Plaintiff has at his disposal all of the information he needs to examine the validity of the work performed.

Despite this information and obvious knowledge of exactly what was filed in this matter, Plaintiff seeks discovery on four points:

> "(1) the amount of money Xenia agreed to pay its attorneys; (2) the amount of money Xenia actually paid; (3) the relationship between Xenia's motions filed in this case and similar motions filed by Xenia's counsel in similar cases; and (4) the fees incurred and paid by Xenia's other clients in relation to their motions to dismiss and their motions to declare Plaintiff a vexatious litigant."

The first two requests are insular and not facially unreasonable. The same cannot be said of the third and fourth requests. As to the first request, in compliance with the Court's August 26, 2021 Order, Defendants' counsel are submitting in conjunction herewith their respective fee agreements with Defendants, which will address the arrangement for the payment of fees. As to the second request, to date, Defendants have paid the majority of their incurred attorneys' fees. Defendants are amenable to making such information available should the Court so require.

The third request is a complete red herring. Strojnik has filed some two-dozen cases against Hyatt portfolio properties. He is fully aware of all motions counsel for Hyatt have filed in those cases, and there is no reason whatsoever to exchange discovery requests or conduct depositions on the issue of how other publically available filings, copies of which Strojnik received in due course, relate to the ones filed in this case.

The fourth request is unintelligible. It is unclear to what other clients of Xenia Plaintiff may be referring. More importantly, here again Plaintiff is the person who files all of these frivolous, inane lawsuits. He, better than anyone, knows what has been filed in his cases, and can draw any conclusion he deems fit as to the scope and similarity of other motions in similar cases (i.e. cases he has filed). Plaintiff has no legitimate reason to obtain information about fee arrangements in any other case than the one at bar. This request demonstrates that Strojnik is not simply engaging in an improper fishing expedition about unrelated data, which is bad enough, but actually seeks to cause delays and needless costs to Defendants and their counsel.

Not only are two of the requests for discovery improper, but the reason why the requests themselves are made is flawed. With feigned incredulity, Strojnik questions how Defendants could have incurred legal fees of any size to respond to his pleadings, while all that he feels needed to be done was cut and paste from the work other parties had done in the consolidated action. This grievance is misleading and disingenuous. It may shed light on how Strojnik generates his pleadings and motions, by cutting and pasting copiously, but it is not the way in which counsel for Defendants operate.

The Court elected to consolidate this action with the *Driftwood* and *New Crescent* matters, after these Defendants had requested dismissal of the lawsuit and requested that Strojnik be declared a vexatious litigant. Counsel in the other two matters had requested similar vexatious litigant orders, and the Court elected to consolidate the three matters. Thus, these matters were not in identical procedural postures by the time they were consolidated and nothing could be gleaned from one case to the other. Counsel did not enter into any formal cooperation agreement and did not work jointly on the preparation of any court submission, and the party-defendants in the consolidated actions are not "co-defendants," as Strojnik improperly characterizes them.

Defendants' attorneys' fees were also exacerbated by Strojnik's own conduct. Plaintiff himself, as he almost always does, was prolific in his motion practice, including filing an opposition to our request for judicial notice about cases to which he is a party, a very creative, albeit unsuccessful, All Writs Act motion against Defendants and counsel personally, a motion for a new trial and a motion for leave to amend.

As to this specific case, Plaintiff glosses over the fact that the allegations he raised involve a very unique legal claim of breach of Securities Law, which sets this lawsuit apart from all the others he has filed before. This unique element required a significant amount of additional work from Attorney Word and his colleagues at Latham & Watkins, whom Defendants hired because of their excellent track record in Securities Litigation. Although

it is convenient for Plaintiff to ignore this fact, filing a claim of violation of Securities Laws against a public company is a very big deal. Having elected to test a new legal theory for the sake of pumping his damages claim, Strojnik cannot be heard to complain about the legal costs he occasioned for these Defendants. Of course the claim of breach of Securities Laws is not present in the other two consolidated matters or any other cases Plaintiff has filed in this District to the best of counsel's knowledge, which certainly sets this matter apart.

Plaintiff also conveniently fails to address that on January 15, 2021, counsel submitted a compromise proposal after this Court's Order dismissing the lawsuit on January 6, 2021. In this proposal, attached to Attorney Badoux's Declaration [doc.79-1], Defendants offered Strojnik the opportunity to drop his request for reconsideration of the Court's Order and forego any appeal, in exchange for which Defendants would agree not to seek attorneys' fees against him. This proposal finishes with an offer to discuss any of its terms further if Strojnik had any questions.

Plaintiff did not inquire as to the amount of Defendants' attorneys' fees accrued to date, which counsel would have readily shared with him to prove the eminent reasonableness of the proposal. Attorney Word even took the time to discuss the PSLRA with Strojnik on the same day (January 15, 2021) since he lacked familiarity with its provisions and relevance as to the award of attorneys' fees and lodestar. Again, at no time did Strojnik inquire of Attorney Word what his hourly rate was as a Washington DC-based Securities Litigation practitioner for Latham & Watkins, or what any upward departure under the PSLRA could mean to him economically.

Instead, on January 16, 2021, Strojnik rejected the offer of compromise in writing and countered with a demand for expansive and expensive work at Royal Palms, forbearance of further action as to unrelated properties in Hyatt's portfolio, as well as payment of a compromise amount in (partial) satisfaction of his non-ADA damages of

$67,850.00.[1] Doc. 79-1  Having been offered a complete waiver of attorneys' fees as a measure of compromise, and having failed to inquire as to the monetary value of that offered waiver, Strojnik's request for leave to conduct discovery as to those fees is not only patently unmeritorious but also clearly designed to delay and turn the spotlight onto someone else. This is obviously a last gasp effort to give himself one last measure of satisfaction to conduct an unwarranted inquisition, the subject of which he did not care enough to apprise himself of before dismissing it out of hand when the opportunity was twice given. This attitude has also much to do with Strojnik's repeated belief that he is, in his own words, judgment proof.

      Not only was Plaintiff provided with the opportunity to informally become aware of the attorneys' fees Defendants had incurred well before Defendants filed their application for fees, but his request cannot be reconciled with the guidance of L.R. 54.2(g) and the Advisory Committee Notes, which make clear that conducting discovery on legal fees is not the norm. In this context it is important to rebut another hollow contentions by Strojnik, namely that Defendants' counsel fail to engage with him on the issue of his motion for post-judgment discovery.  None of the attorneys in this case received a phone call or an offer to meet and confer from Strojnik, whether by phone or email.  He simply unilaterally filed his motion asking for the Court's involvement.  Since the nature of his request was unclear, Defendants treated not as a motion to be responded to as a matter of course, but, like a motion for reconsideration, to be addressed if the Court so requested.  As mentioned above, had Strojnik inquired as to the amount of Defendants' attorneys' fees incurred, counsel would have cooperated with him.  No such request was made, regardless of what may be implied in Plaintiff's motion.

---

[1] Based upon review of other matters in which Strojnik has detailed his non-ADA claims, they are based primarily on commoditizing his time spent at the property he is suing at a general rate of $650 per hour.

The itemized time entries previously submitted tell the story of the work performed and charged to Defendants by counsel.  Strojnik is free to take issue with all of those entries and to reconcile them with the Defendants' submissions in this action.  Conducting discovery in this situation would only perpetuate Strojnik's consistent efforts to bully and personally attack counsel that undertake representation of defendants in his numerous lawsuits. The request at bar has more to do with Strojnik's declaration that he is "uniquely inimical to ableists," by which he refers to companies that he feels are insensitive to the plight of the disabled, and refuse to bow to his extortionate tactics, and those like counsel in this matter, who represent these companies willing to stand up to him.

Plaintiff's four-point request, supported by no legal precedent, is nothing but a ploy to extract yet one more pound of flesh in Strojnik's greed-fueled abuse of the legal system, masquerading as a last-gap, quixotic quest.  It must be denied and the Court should request that Plaintiff submit a substantive response, if he has any, to the application for fees based upon the detailed time entries submitted in support thereof. Doc. 79

For these reasons, Defendants renew their request for the entry of an attorneys' fee award for the amount of legal billed to Defendants by its outside counsel who prevailed in full on all elements of this action and secured from this Court the determination that Strojnik is a vexatious litigant.

DATED September 2, 2021.

**BUCHALTER,**
**A PROFESSIONAL CORPORATION**

By: */s/ Laurent R.G. Badoux*
　　　Laurent R.G. Badoux
　　　*Attorneys for Defendants Xenia Hotels and Resorts, Inc., XHR Phoenix Palms, LLC, and XHR Scottsdale Ranch, LLC*

I hereby certify that I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants, and mailed a copy of same to the following if non-registrants, this 2nd day of September, 2021, to:

Peter Strojnik, *pro se*
7847 N. Central Avenue
Phoenix, Arizona 85020
*Plaintiff*

By: __/s/ Lori Harpel__